1  Michael W. Sobol (State Bar No. 194857)
   Roger N. Heller (State Bar No. 215348)
2  Nicole D. Sugnet (State Bar No. 246255)
   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
3  275 Battery Street, 29th Floor
   San Francisco, CA  94111
4  Telephone:  (415) 956-1000

5  John A. Yanchunis (*pro hac vice application to be submitted*)
   Rachel Soffin (*pro hac vice application to be submitted*)
6  MORGAN & MORGAN
   COMPLEX LITIGATION GROUP
7  201 North Franklin Street, 7th Floor
   Tampa, FL  33602
8  Telephone: (813) 223-5505

9  Jean Sutton Martin (*pro hac vice application to be submitted*)
   LAW OFFICE OF JEAN SUTTON MARTIN PLLC
10 2018 Eastwood Road, Suite 225
   Wilmington, North Carolina  28403
11 Telephone:  (910) 292-6676

12 *Attorneys for Plaintiffs and the Proposed Class*

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15

16 MARCUS A. ROBERTS, KENNETH A.        Case No. 3:15-cv-3418
   CHEWEY AND ASHLEY M. CHEWEY,
17 on behalf of themselves and all others  **CLASS ACTION**
   similarly situated,
18                                        **ORIGINAL COMPLAINT FOR:**
                 Plaintiffs,             **VIOLATION OF BUSINESS &**
19                                        **PROFESSIONS CODE § 17200;**
   v.                                    **VIOLATION OF BUSINESS &**
20                                        **PROFESSIONS CODE § 17500;**
   AT&T MOBILTY LLC,                     **VIOLATION OF THE CONSUMER LEGAL**
21                                        **REMEDIES ACT ("CLRA"), CALIFORNIA**
                 Defendant.              **CIVIL CODE §1750, *ET SEQ*;**
22                                        **NEGLIGENT MISREPRESENTATION;**
                                         **MISREPRESENTATION;**
23                                        **FRAUDULENT CONCEALMENT;**
                                         **BREACH OF EXPRESS WARRANTY; AND**
24                                        **UNJUST ENRICHMENT.**
25                                         **JURY TRIAL DEMANDED**
26
27
28

Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey, on behalf of themselves and all others similarly situated, file this Class Action Complaint against Defendant AT&T Mobility LLC and for their causes of action respectfully allege as follows:

**INTRODUCTION**

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers who have been harmed by Defendant's deceptive and unfair trade practice of marketing its wireless service plans as being "unlimited," when in fact those plans are subject to a number of limiting conditions that either are not disclosed or inadequately disclosed to consumers.

2.      Defendant lured consumers into purchasing smartphones, wireless data cards and mobile service plans by aggressively promoting "unlimited" data service plans without disclosing, or adequately disclosing, that its so-called "unlimited" plans are actually limited. Defendant failed to disclose to consumers, including Plaintiffs and the Class, that it "throttles" (*i.e.*, intentionally slows) the data speed on cellular phones or wireless cards when the consumer has approached or exceeded Defendant's internally proscribed data usage limits.  These internally proscribed data usage thresholds are not adequately disclosed to consumers.

3.      Defendant's throttling practices alleged herein have the effect of significantly limiting consumers' access to data and services, rendering internet access and other wireless functions on their phones difficult or impossible, and thus unreasonably interfering with the supposedly "unlimited" service that the consumers paid for.

4.      Defendant's throttling of the data speed of its unlimited data plan customers is of such a degree that consumers, including Plaintiffs and the Class, are effectively unable to access data for the remainder of a billing cycle.

5.      As a result of Defendant's deceptive and material representations, bad faith, and unfair and unlawful conduct alleged herein, Plaintiffs and members of the proposed Class have suffered damages, including, without limitation, payment for services that were not as advertised.

6.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the products or services identified herein so as to halt the

- 2 -

1   dissemination of deceptive and misleading advertising, to correct the deceptive and misleading

2   perception Defendant has created in the minds of consumers, and to obtain redress for those

3   consumers who have purchased AT&T "unlimited" data service plans.  Plaintiffs seek injunctive

4   and monetary relief for themselves and the proposed Class.

5                                       **THE PARTIES**

6          7.      Plaintiff Marcus A. Roberts is a citizen and resident of San Mateo County,

7   California.

8          8.      Plaintiffs Kenneth A. Chewey and Ashley M. Chewey are citizens and residents of

9   Placer County, California.

10         9.      Defendant AT&T Mobility LLC is a Delaware limited liability company with its

11  principal office or place of business at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319.

12  AT&T Mobility LLC transacts or has transacted business in this district and throughout the

13  United States.

14         10.     Whenever reference in this Complaint is made to any act of Defendant, or other

15  corporate Defendant as may be named in the future, the allegation shall be deemed to mean that

16  the officers, directors, agents, representatives, subsidiaries, affiliates and employees of the

17  Defendant did or authorized the act while actively engaged in the management, direction, or

18  control of the affairs of the corporate Defendant, and while acting within the course and scope of

19  their employment.

20                              **JURISDICTION AND VENUE**

21         11.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the

22  amount in controversy, exclusive of interest and costs, exceeds the sum of value of $5,000,000,

23  and this is a class action in which there are members of the proposed Class who are citizens of a

24  state different from Defendant.

25         12.     Venue is proper pursuant to 28 U.S.C. §1391 in that Plaintiff Marcus Roberts

26  resides in this District; many of the acts and transactions giving rise to this action occurred in this

27  District; Defendant is authorized to conduct business in this District, has intentionally availed

28  itself of the laws and markets within this District through distribution and sale of its products in

this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

### GENERAL ALLEGATIONS

**A.     Defendants Falsely Advertises Certain Service Plans as Providing "Unlimited" Data.**

13.     Defendant markets and cells wireless service plans to 121.8 million subscribers in the United States.  Such service plans include wireless data, allowing subscribers to use their phones to browse websites, send and receive emails, use smartphone applications, watch videos and stream music, and use GPS navigation.

14.     Prior to 2010, Defendant offered service plans that purported to include "unlimited" data.  Defendant aggressively promoted its "unlimited" plan in order to capture the burgeoning smartphone market.  Between 2007 and 2010, AT&T was the sole service plan provider for the Apple iPhone and, upon information and belief, Defendant's offer of an unlimited data plan was a requirement of its deal with Apple.

15.     Defendants' advertising and packaging of its phones and "unlimited" service plans featured the word "unlimited" in prominent font.  Examples of Defendant's advertisements and representations regarding its "unlimited" data plans include the following:

1266725.1

ORIGINAL COMPLAINT
CASE NO. 3:15-CV-3418

1
2
3
4
5
6
7

| **AT&T Nation** | $59.99 | $79.99 | $99.99 | $119.99 | $169.99 | $219.99 |
|---|---|---|---|---|---|---|
| Minutes | 450 | 900 | 1350 | 2000 | 4000 | 6000 |
| Unlimited Data (email/web) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Visual Voicemail | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| SMS Text Messaging | 200 | 200 | 200 | 200 | 200 | 200 |
| Night & Weekend Minutes | 5000 | Unlimited | Unlimited | Unlimited | Unlimited | Unlimited |
| Rollover Minutes* | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Unlimited Mobile to Mobile | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Additional Minutes | 45¢/min | 40¢/min | 35¢/min | 25¢/min | 25¢/min | 20¢/min |

INCLUDED FEATURES: Nationwide Long Distance and Roaming, Voicemail, Call Forwarding, Call Waiting, 3-WayCalling and Caller ID.

8

## AT&T Plans for iPhone 3G (U.S. Coverage Packages)

9

### AT&T Nation™



| | UNLIMITED Data (Email/Web) | Visual Voicemail | Rollover* UNLIMITED Mobile to Mobile | | UNLIMITED UNLIMITED Data (Email/Web) Visual Voicemail |
|---|---|---|---|---|---|
| Anytime Minutes | 450 | 900 | 1350 | | UNLIMITED |
| Night & Weekend Minutes | 5000 | UNLIMITED | UNLIMITED | | — |
| Additional Minutes | .45¢ | .40¢ | .35¢ | | N/A |
| Per Month | $69.99 | $89.99 | $109.99 | | $129.99 |

16

### AT&T FamilyTalk™
Includes 2 Lines

| | UNLIMITED Data (Email/Web) | Visual Voicemail | Rollover* | UNLIMITED Mobile to Mobile | UNLIMITED Nights & Weekends | | UNLIMITED UNLIMITED Data (Email/Web) Visual Voicemail |
|---|---|---|---|---|---|---|---|
| Shared Anytime Minutes | 700 | 1400 | 2100 | 3000 | 4000 | 6000 | UNLIMITED |
| Additional Minutes | .45¢ | .40¢ | .35¢ | .25¢ | .20¢ | .20¢ | N/A |
| Per Month | $129.99 | $149.99 | $169.99 | $209.99 | $259.99 | $359.99 | $259.99 |
| Additional iPhone Line | $39.99 per line (up to 3 additional lines). | | | | | | $129.99 |

23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12



13      16.     While Defendant stopped offering the "unlimited" plan in June 2010, it allowing

14  existing subscribers to the unlimited plan to be "grandfathered" into those plans, expressly

15  representing that such subscribers would continue to enjoy "unlimited" data.

16      17.     Defendant made this offer in the hopes that its "unlimited" subscribers would not

17  switch to another service plan provider.  Thus was particularly important to Defendant when, in

18  2011, it ceased to be the sole service provider for the Apple iPhone and given that many

19  competing smartphones offered by competing service providers had been introduced in the

20  market by that time.

21      18.     Defendant's offer was effective: upon information and belief, millions of

22  subscribers kept their unlimited plans rather than switching to a new plan.  In fact, these

23  subscribers value their purportedly "unlimited" data so much that they continually elect to forego

24  opportunities to receive phone upgrades for little or no cost.  Accepting such phone upgrade

25  offers often require customers to give up their "unlimited" data plans.  Defendant's "unlimited"

26  data promise is thus material to consumers.

27      19.     In stark contrast to the representations in makes to its "unlimited" data subscribers,

28  Defendant discloses the exact monthly allotment of data that subscribers will be able to use (*e.g.*,

3 GB) with respect to their "tiered" mobile data plans.  Defendant also states that additional fees will apply if a subscriber exceeds the monthly allowance.

**B.     Defendant Imposes Secret Data Caps on and Regularly Throttles "Unlimited" Subscribers' Service Plans.**

20.     Despite its representations that "unlimited" plan subscribers would continue to have access to "unlimited" data, in 2011, Defendant began to "throttle" (*i.e.* slow down) the data speed, usually without warning, once those subscribers exceed secret data usage caps.  The speeds at which Defendant throttles its subscribers are so slow that they are unable to use their phones for certain intended and advertised purposes, such as streaming video or music or even browsing webpages.

21.     Defendant throttles its customers once they reach the secret data usage caps no matter if Defendant's network is not congested at the time and is capable of handling the customers' data usage at regular speeds.

22.     Once throttled, customers' data speeds remain throttled until the next month.

23.     Defendant initially had different data usage caps applicable to residents of different cities.  In some places, Defendant's data usage cap was as low as 2GB.

24.     Beginning in 2012, Defendant implemented a secret data usage cap of 3GB for all devices using Defendant's 3G network (e.g., iPhone 3G, 3GS, 4) and HSPA+ network (e.g., iPhone 4S), and 5 GB per billing cycle for devices using Defendant's LTE network (e.g., iPhone 5, 5S, 6, 6 Plus).

**C.     Defendant does Not Adequately Disclose its Throttling Practice or Secret Data Usage Caps to its "Unlimited" Subscribers.**

25.     Defendants' marketing of its unlimited mobile data plans—both prior to and after Defendant transitioned to offering tiered plans to new customer—has failed to disclose Defendant's throttling practices, and indeed the limits applied pursuant to Defendant's throttling practices are wholly inconsistent with Defendant's repeated and emphasized representations that its unlimited mobile data plans are "unlimited."

ORIGINAL COMPLAINT
CASE NO. 3:15-CV-3418

26.     Defendant fails to adequately disclose its data usage limits to customers or to disclose the extremely slow speeds at which customers will be throttled and how that will impact their data service.

27.     Defendant's Wireless Customer Agreement applicable to all service plans, including "unlimited" data plans, does not disclose its data usage caps applicable to "unlimited" subscribers or its practice of throttling.  Instead, it merely prohibits the usage of data for certain activities, such as tethering phones to a computing device so that the computing device may use the phones' data.

28.     The only disclosure Defendant made regarding throttling prior to implementing its throttling practice was the following brief statement included in some customers' July or August 2011 monthly bill:

**Important Update for Unlimited Data Plan Customers**

To provide the best possible network experience, starting 10/01/11, smartphone customers with unlimited data plans whose usage is in the top 5% of users can still use unlimited data but may see reduced data speeds for the rest of their monthly billing cycle.  We'll alert you if you near the top 5%.  To avoid slowed speeds you may use Wi-Fi or choose a tiered data plan.  Details @ att.com/dataplans.

29.     This statement does not adequately disclose or even truthfully describe Defendant's throttling practice.  It misrepresents that only the top 5% of users will be throttled, when in fact any user that exceeds Defendant's secret data caps of 3GB or 5GB will be throttled. It also misrepresents that Defendant will alert customers as they reach those data limits, when it often throttles customers without ever alerting them to the fact.  Further, it fails to disclose the speeds at which customers' data will be reduced and how such speeds will impact customers' ability to use data.

30.     On its website, under the heading "Info for smartphone customers with legacy unlimited data plans," Defendant continues to mislead customers to this day about the nature of its throttling practice:

In line with common industry standards, we have implemented network management practices to assure that our network resources are used for the benefit of all our mobile broadband customers

especially during periods when network demand exceeds available network resources (also known as "congestion").

One such practice applies when a minority of smartphone customers on unlimited data plans using 3G, 4G, or 4G LTE smartphones exceed certain data usage thresholds in a billing period (3GB for 3G/4G smartphones and 5GB for 4G LTE smartphones). When affected by this practice, these customers ***may*** experience reduced data speeds and increased latency ***during periods of congestion*** as compared to other customers using the same cell site. (emphasis added).

31.     Instead of truthfully disclosing the exact nature of its throttling practice, Defendant's website "disclosure" implies that any throttling "might" occur during periods of network congestion, when it fact Defendant ***always*** throttles "unlimited" subscribers' data once they exceed the data thresholds regardless of whether the network is congested at the time.

32.     Even the few text messages or emails that Defendant sends to some subscribers as they approach or exceed the secret data usage caps not adequately disclose Defendant's throttling practice.  They do not disclose the secret data caps or the speeds at which subscribers will be throttled.

33.     Defendant's "unlimited" misrepresentations and its failure to adequately disclose its secret data caps and throttling practice was, and is, a deceptive act or practice. In making and disseminating the statements regarding its "unlimited" data plans as alleged herein, Defendant should have known that its advertisements were untrue, deceptive and misleading.

**D.     Defendant's Practice of Throttling "Unlimited" Subscribers' Data is Contrary to those Subscribers' Expectations.**

34.     Reasonable consumers are likely to be misled by Defendant's promise of "unlimited" data, particularly in combination with Defendant's advertisements that encourage customers to use smartphones and data plans in typical ways such as browsing the internet, streaming or downloading music and videos, running apps, and using GPS navigation.

35.     Once customers discover the truth about Defendants' "unlimited" plans, customers are outraged by Defendants' lies and bad faith practices.  Thousands of customers have complained to Defendant and have submitted complaints to third party consumer protection entities such as the Better Business Bureau and consumeraffairs.com.

36.     Upon information and belief, Defendant has conducted internal research and focus groups revealing that customers believe the word "unlimited" to mean no restrictions on data, and that Defendant's practice of throttling data is inconsistent with its "unlimited" representations. Nevertheless, Defendant continues to represent that its "unlimited" plans provide unlimited data.

37.     The imposition of data usage thresholds and speed reductions is antithetical to the term "unlimited."  Defendant was aware that its continued use of the word "unlimited" to describe its data plans was likely to, and did, mislead and deceive consumers.

**E.     Defendant Faces a $100 Million Fine from the FCC for Misleading Consumers Regarding "Unlimited" Data.**

38.     In a Notice of Apparent Liability for Forfeiture and Order adopted June 3, 2015 ("NAL")[1], the Federal Communications Commission ("FCC") found that Defendant:

a.      [used] the misleading and inaccurate term "unlimited" to label a data plan that was in fact subject to prolonged speed reductions after a customer used a set amount of data; and

b.      [failed] to disclose the express speed reductions that it applied to "unlimited" data plan customers once they hit a specified data threshold.

39.     In the NAL, the FCC further stated that any disclosures of such practice by Defendant were insufficient to overcome the misleading and inaccurate statements about the unlimited plan and, as a result, consumers were deprived "of sufficient information to make informed choices about their broadband service."

40.     The NAL imposes on Defendant liability for forfeiture "in the amount of one hundred million dollars ($100,000,000) for willful and repeated violations of Section 8.3 of the Commission's rules, 47 C.F.R. § 8.3."

**F.     Defendant's Goal in Throttling is to Encourage Customers to Switch to Limited Plans in Order to Make More Money.**

41.     Defendant's goal in implementing its throttling program is to make more money. Ultimately, it desires to push grandfathered subscribers off of the "unlimited" plans onto the

---

[1] https://www.fcc.gov/document/att-mobility-faces-100m-fine-misleading-consumers-0

"tiered" service plans that are either more expensive than the grandfathered plans or that hit subscribers with overage fees once they exceed the set data thresholds.

42.     As one article noted, "unlimited" plan subscribers were faced with the choice of continuing to "pay $30 for 'unlimited' service where you're actually only getting 2 GB of data before your phone becomes useless, or sign up for a 3GB tier for the same price so you're in line to get socked with the usage overages of tomorrow." *See*

*http://www.dslreports.com/shownews/118235* (last accessed on 7/22/15).

43.     Defendant's goal is exemplified by certain unfair practices Defendant imposes only on its "unlimited" plan subscribers.  For example, Defendant restricts the popular iPhone application FaceTime—which allows telephone calls via video—such that it may be used only over Wi-Fi, and not over its cellular network, for "unlimited" subscribers.  In contrast, Defendant's tiered plan subscribers are allowed to access Defendant's cellular network when using FaceTime.

44.     In addition, Defendant does not throttle its tiered plan subscribers' data at any time.  Indeed, Defendant continues to throttled "unlimited" plan subscribers at secret data caps of 3GB or 5GB even though it offers tiered service plans with up to 50GBs of data per month.

45.     Defendant profits from misleading consumers about its "unlimited" service plans and throttling "unlimited" subscribers' data in numerous ways. By representing its plans as encompassing "unlimited" data, Defendant is able to induce customers into keeping their "unlimited" plans rather than switching to a different service provider.  In addition, Defendant has induced customers to switch to tiered plans to avoid throttling, which often either cost more money (depending on the amount of data provided for in the plan) or which come with overage charges once a customer exceeds the data limits subject to those plans.  Further, Defendant has collected substantial early termination fees from "unlimited" subscribers who cancelled service after being throttled.

46.     Plaintiffs and Class Members have been damaged, including by paying for products and services which were not delivered as represented, and by paying more than they otherwise would have paid.

## INAPPLICABLE OR UNENFORCEABLE ARBITRATION CLAUSE

47.     Section 2 of Defendant's Wireless Customer Agreement purports to require that certain disputes be individually arbitrated.  Section 2 is unenforceable because it is substantively and procedurally unconscionable and/or is against public policy.

48.     To the extent that Defendant asserts that Plaintiffs' and Class members' claims are subject to an arbitration agreement or a class action waiver, Plaintiffs and the Class seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

## CLASS ACTION ALLEGATIONS

49.     As detailed below in the individual counts, Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

50.     Plaintiffs seek to represent the following  "Class":

> All consumers in the United States who purchased an unlimited data plan from AT&T Mobility LLC and whose data usage was throttled prior to the expiration of the plan.

51.     Plaintiffs also seek to represent the following "California Subclass":

> All consumers residing in California who purchased an unlimited data plan from AT&T Mobility LLC and whose data usage was throttled prior to the expiration of the service plan.

Excluded from the above Class and California Subclass are Defendant and its officers, directors and employees.

52.     *Numerosity*.  Members of the Class and California Subclass are so numerous that joinder of all members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are at least hundreds of thousands of putative Class members throughout the United States and at least hundreds of thousands of California Subclass members.

53.     *Existence and Predominance of Common Questions of Law and Fact*.  This action involves common questions of law and fact, which predominate over any questions

affecting individual Class or California Subclass members.  These common legal and factual questions include, but are not limited to, the following:

a.      whether Defendant's conduct described herein violates the California Business & Professions Code § 17200 and/or § 17500, *et. seq.*;

b.      whether Defendant's marketing of its service plans as being "unlimited" constitutes deceptive and unfair trades practice in violation of the California Business & Professions Code § 17200 and § 17500, *et. seq.*;

c.      whether Defendant breached its express warranties with Plaintiffs and the Class and California Subclass;

d.      whether Defendant has been unjustly enriched to the detriment of Plaintiffs and the Class and California Subclass;

e.      whether Plaintiffs and the Class and California Subclass have sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such damages;

f.      whether Plaintiffs and the Class and California Subclass are entitled to restitution and, if so, what is the proper measure of restitution; and

g.      whether Plaintiffs and Class and California Subclass members are entitled to declaratory and injunctive relief.

54.      ***Typicality***.  Plaintiffs' claims are typical of the claims of the members of the Class and California Subclass because, *inter alia*, all Class and California Subclass members were injured through the common misconduct described above and were subject to Defendant's deceptive "unlimited" data plan representations.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and California Subclass.

55.      ***Adequacy of Representation***.  Plaintiffs will fairly and adequately protect the interests of the members of the Class and California Subclass.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class and California Subclass.

56. **_Superiority_**.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation and the significant costs attendant to litigation on this scale compared to the relatively small damages suffered by individual Class members.  Further, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, a class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.  Trial of Plaintiffs' and Class members' claims is manageable as a class action, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.  Without a class action, the Class members will continue to suffer damages and Defendant's violations of law will proceed without remedy while Defendant continues to retain and reap the proceeds of its wrongful conduct.

57. Defendant has acted and refused to act on grounds generally applicable to the Class and California Subclass by engaging in deceptive and misleading representations and material omissions regarding its unlimited data plans that misled Plaintiffs and the Class and California Subclass, thereby making appropriate final injunctive relief with respect to the classes as a whole.

## PLAINTIFF SPECIFIC FACTS

**Plaintiff Marcus Roberts**

58. In 2008, Plaintiff Marcus Roberts purchased an iPhone 3G with an "unlimited" data plan through Defendant.

59. Prior to making his purchase, Plaintiff Marcus Roberts had viewed and heard advertisements for the unlimited data plan sold with the iPhone.  All of the advertisements indicated that he would receive "unlimited" data without restriction.  There was no indication that

his data usage would be throttled when he reached a particular data usage threshold.  Plaintiff Marcus Roberts did not view, nor was he aware of, any arbitration agreements or class action ban as part of his purchase and use of the iPhone 3G and the "unlimited" data plan.

60.     Plaintiff Marcus Roberts read and relied on, in purchasing his iPhone 3G, subsequent versions of the iPhone, and unlimited data plan, Defendant's representations that the plan would provide "unlimited" data service.

61.     In approximately 2012, Plaintiff Marcus Roberts began noticing that by approximately the middle of the month his internet connection was much slower and his ability to download was hampered severely.  He believed the slowed speed was due to overall service issues by Defendant, as his friends with service through other carriers seemingly had faster service.

62.     From 2008 – 2014, Plaintiff Marcus Roberts upgraded to newer versions of the iPhone.  Each such time, Defendant offered to "grandfather" him in, allowing him the opportunity to continue with his unlimited mobile data plan, rather than requiring him to switch to Defendant's tiered mobile data plans required for new customers.  In making these subsequent device purchases and in continuing to subscribe to the unlimited data plan through Defendant, Plaintiff Marcus Roberts continued to rely on Defendant's representation that the data plan was "unlimited."

63.     After he experienced slowed data speeds in 2012, Plaintiff Marcus Roberts continued experiencing slowed data speeds with that phone and with the subsequent versions of the iPhone that he purchased.

64.     On or about July 6, 2015, Plaintiff Marcus Roberts received a text stating that he had used 75% of his allotted 5GB of data usage and that he may experience reduced speeds when using data services. This text was the first such notice he had received from Defendant.

65.     Upon receipt of this text, Plaintiff Marcus Roberts called Defendant to question why he had received such a message given that he had purchased an "unlimited" data plan.  Defendant's representative on the phone told him, for the first time,  that, even though he had an

"unlimited" data plan, his data usage was actually restricted in that it would be throttled when he reached 5GB of data usage..

66.     Defendant failed to adequately advise Plaintiff Marcus Roberts of the limits that Defendant's throttling program imposed on his supposedly unlimited mobile data plan.

67.     When Plaintiff Marcus Roberts purchased and renewed his "unlimited" data plan with Defendant, he reasonably believed that he would have unlimited data service, and not be subject to data usage restrictions or throttling when he reached an internally-mandated data usage threshold..

68.     Plaintiff Marcus Roberts was harmed by Defendant's misleading representations and omissions, including by paying for products and services that were not as advertised and by paying more for his products and services than he otherwise would have paid.

**Plaintiffs Kenneth and Ashley Chewey**

69.     Plaintiffs Kenneth and Ashley Chewey were existing customers of Defendant when they purchased an iPhone 3G with a family share plan with "unlimited" data in approximately late 2009.

70.     Prior to making their purchase, Plaintiffs Kenneth and Ashley Chewey had viewed and heard advertisements for the unlimited data plan sold with the iPhone.  All of the advertisements indicated that with the family share plan, they would receive "unlimited" data without restriction.  There was no indication that their data usage would be throttled when they reached a particular data usage threshold.  Plaintiffs Kenneth and Ashley Chewey did not view, nor were they aware of, any arbitration agreements or class action ban as part of their purchase and use of the iPhone 3G and the "unlimited" data family share plan.

71.     Plaintiffs Kenneth and Ashley Chewey read and relied, in purchasing their iPhone 3G and family share plan with unlimited data, on Defendant's representations that the plan would provide "unlimited" data service.

72.     In approximately 2011, Plaintiffs Kenneth and Ashley Chewey began noticing that by around the middle of the month, their internet connection for their iPhone was significantly

1    slower, to the point where their ability to access the internet using the device was hampered

2    severely.

3          73.     After Plaintiff Kenneth Chewey noticed this slowing, he called Defendant to

4    inquire about the issue.  He was told by a representative for Defendant that the problem was due

5    to his being in a high congestion area or his attempting to access the internet during a congested

6    time of day.  The representative affirmatively stated to Plaintiff Kenneth Chewey that the problem

7    was not due to throttling by Defendant.

8          74.     Subsequent to the conversation with Defendant's customer service representative,

9    the data service for Plaintiffs Kenneth and Ashley Chewey has slowed on other occasions,

10   including sometimes to the point that there is no internet connection at all.

11         75.     Each time they have renewed their service plan with Defendant, they have chosen

12   to continue to have an unlimited data plan instead of a tiered data plan.  In continuing to subscribe

13   to the unlimited data plan through Defendant, Plaintiffs Kenneth and Ashley Chewey continued

14   to rely on Defendant's representation that the data plan was "unlimited."

15         76.     On or about July 7, 2015, only seven (7) days into the current billing cycle,

16   Plaintiff Kenneth Chewey received two text messages stating that he was reaching a data usage

17   limit.  This message was confusing to him, because he had understood from Defendant's

18   representations that his data service was unlimited pursuant to his "unlimited" plan.

19         77.     When Plaintiffs Kenneth and Ashley Chewey purchased and renewed their family

20   share plan with "unlimited" data, they reasonably believed that they would have unlimited data

21   service, and not be subject to data usage restrictions or throttling when they reached an internally-

22   mandated data usage threshold.

23         78.     Plaintiffs Kenneth and Ashley Chewey were harmed by Defendant's misleading

24   representations and omissions, including by paying for products and services that were not as

25   advertised and by paying more for their products and services than they otherwise would have

26   paid.

27

28

1266725.1

ORIGINAL COMPLAINT
CASE NO. 3:15-CV-3418

# FIRST CAUSE OF ACTION

(Violation of Business & Professions Code § 17200 *et seq.*)
(On Behalf of the California Subclass)

79.     Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

80.     Plaintiffs assert this cause of action on behalf of themselves and the California Subclass.

81.     California Business & Professions Code § 17200 *et seq.* prohibits unfair competition that is any unfair, unlawful, or a fraudulent business practice.

82.     Defendant violated the "unlawful" prong of the UCL by making material misrepresentations that its data plans offer "unlimited" data, when in fact Defendant regularly throttles customers' data, in violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

83.     Defendant's practice of regularly throttling customers' "unlimited" data violated the "unfair" prong of the UCL because it was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Subclass members. Defendant's practice was also contrary to legislatively declared and public policy and the harm it caused to consumers outweighed its utility, if any.

84.     Defendant violated the "fraudulent" prong of the UCL by making material misrepresentations that its data plans were "unlimited" when they were not, and by failing to disclose and actively concealing material information regarding its practice of regularly throttling customers' data.  These material misrepresentations and nondisclosures were likely to mislead consumers.

85.     Defendant's misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

86.     Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

- 18 -

87.     Plaintiffs and the California Subclass members reasonably relied on Defendant's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Defendant's service plans, phones and other products had they known the truth.

88.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiffs and the California Subclass members lost money or property.

89.     Defendant's conduct caused substantial injury to Plaintiffs and California Subclass members.  Accordingly, Plaintiffs seek an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money that Plaintiffs and California Subclass members paid for Defendant's service plans, phones, and other products and/or restitutionary disgorgement of profits.  Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## SECOND CAUSE OF ACTION

(Violation of Business & Professions Code § 17500 *et seq.*)
(On Behalf of the California Subclass)

90.     Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

91.     Plaintiffs assert this cause of action on behalf of themselves and the California Subclass.

92.     Defendant has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 et seq., including by making material misrepresentations that its data plans were "unlimited" when they were not, and by failing to disclose and actively concealing material information regarding its practice of regularly throttling customers' data.

93.     Defendant's misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

94.     Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

95.     Plaintiffs and the California Subclass members reasonably relied on Defendant's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Defendant's service plans, phones and other products had they known the truth.

96.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the California Subclass members lost money or property.

97.     Defendant's conduct caused substantial injury to Plaintiffs and California Subclass members.  Accordingly, Plaintiffs seek an order enjoining Defendant from committing such practices, and seek the full amount of money that Plaintiffs and California Subclass members paid for Defendant's service plans, phones, and other products and/or restitutionary disgorgement of profits.  Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

### THIRD CAUSE OF ACTION

(Violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.)
(On Behalf of California Subclass)

98.     Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

99.     Plaintiffs assert this cause of action on behalf of themselves and the California Subclass.

100.    Defendant is a "person" within the meaning of Civil Code §§1761(c).

101.    Plaintiffs and the California Subclass members are "consumers," as defined by Cal. Civ. Code §1761(d).

102.    The data service plans, phones, and other products that Defendant marketed and sold constitute "goods" and "services," as defined by Cal. Civ. Code §1761(a) and (b).

1      103.    Plaintiffs' and California Subclass members' purchases of Defendant's service

2   plans, phones, and other products constitute "transactions," as defined by Cal. Civ. Code

3   § 1761(e).

4      104.    Plaintiffs and California Subclass members purchased Defendant's service plans,

5   phones, and other products for personal, family, and household purposes as meant by Cal. Civ.

6   Code § 1761(d).

7      105.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of

8   the transactions at issue occurred in this county.  Plaintiffs' declarations establishing that this

9   Court has proper venue for this action are attached as Exhibit A.

10      106.    Defendant deceived consumers in that it misrepresented that its service plans

11   offered "unlimited" data and also failed to disclose or actively concealed that it would regularly

12   throttle customers' data.

13      107.    Defendant's misrepresentations, active concealment, and failures to disclose

14   violated the CLRA in the following manner:

15          a.    Defendant misrepresented that its service plans, phones, and other products

16   had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

17          b.    Defendant misrepresented that its service plans, phones, and other products

18   were of a particular standard, quality, and/or grade when they were of another (Cal. Civ. Code

19   § 1770(a)(7));

20          c.    Defendant advertised its service plans, phones, and other products with an

21   intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

22          d.    Defendant misrepresented that its service plans, phones, and other products

23   conferred or involved rights, remedies, or obligations that they did not have (Cal. Civ. Code

24   § 1770(a)(14));

25          e.    Defendant misrepresented that its service plans, phones, and other products

26   were supplied in accordance with previous representations when they were not (Cal. Civ. Code

27   § 1770(a)(16));

28

1    f.    Defendant inserted unconscionable provisions in its consumer agreements,

2    including an arbitration clause with a class action waiver provision, in violation of §1770(a)(19).

3    108.    Defendant's misrepresentations and nondisclosures regarding its "unlimited" data

4    plans and its practice of regularly throttling customers' data were material to Plaintiffs and

5    California Subclass members because a reasonable person would have considered them important

6    in making purchase decisions and because Defendant had a duty to disclose the truth.

7    109.    Plaintiffs and California Subclass members reasonably relied upon Defendant's

8    material misrepresentations and nondisclosures, and would not have purchased, or would have

9    paid less money for, Defendant's service plans, phones and other products had they known the

10   truth.

11   110.    As a direct and proximate result of Defendant's material misrepresentations and

12   nondisclosures, Plaintiffs and the California Subclass have been irreparably harmed.

13   111.    On behalf of the California Subclass, Plaintiffs seek injunctive relief in the form of

14   an order enjoining Defendant from making such material misrepresentations and failing to

15   disclose or actively concealing its practice of throttling customers' data.  Plaintiffs also seek

16   attorneys' fees and costs.

17   112.    In accordance with Cal. Civ. Code § 1782(a), on July 23, 2015, 2015, Plaintiffs'

18   counsel served Defendant with notice of their CLRA violations by certified mail, return receipt

19   requested.  A true and correct copy of that notice is attached as Exhibit B.

20   113.    If Defendant fails to provide appropriate relief for their CLRA violations within 30

21   days of Plaintiffs' notification letter, Plaintiffs will amend this complaint to seek compensatory

22   and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

23   **FOURTH CAUSE OF ACTION**

24   (Negligent Misrepresentation)
     (On Behalf of the Class)
25

26   114.    Plaintiffs incorporate by reference all allegations set forth in this Class Action

27   Complaint as though fully set forth herein.

28   115.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

1      116.     During the relevant time period of this lawsuit, Defendant made express

2 statements that the wireless data plans purchased by Plaintiffs and members of the Class were

3 "unlimited."

4      117.     Defendant used false and misleading statements to induce customers, to purchase

5 "unlimited" data plans.

6      118.     Plaintiffs and members of the Class justifiably relied upon Defendant's false and

7 misleading statements or omissions in deciding whether to purchase Defendant's wireless data

8 plans, phones and other products during the relevant time period of this lawsuit.

9      119.     As a direct and proximate result of the above described practices, Plaintiffs and

10 members of the Class sustained damages in an amount to be proven at trial.

11 **FIFTH CAUSE OF ACTION**

12 (Misrepresentation)
(On Behalf of the Class)

13

14      120.     Plaintiffs incorporate by reference all allegations set forth in this Class Action

15 Complaint as though fully set forth herein.

16      121.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

17      122.     During the relevant time period of this lawsuit, Defendant made express

18 statements that the wireless data plans purchased by Plaintiffs and members of the Class were

19 "unlimited."

20      123.     Upon information and belief, Defendant knew that it had represented that the

21 wireless data plans purchased by Plaintiffs and members of the Class were "unlimited," and that

22 this was false and misleading.

23      124.     As such, Defendant used false and misleading statements to induce customers to

24 purchase its wireless data plans.

25      125.     Plaintiffs and members of the Class justifiably relied upon Defendant's false and

26 misleading statements in deciding whether to purchase wireless data service, phones and other

27 products from Defendant.  As a direct and proximate result of the above described practices,

28 Plaintiffs and members of the Class sustained damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Fraudulent Concealment)
(On Behalf of the Class)

126.    Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

127.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

128.    Defendant intentionally misrepresented or concealed the following material facts from Plaintiffs and the Class:

    a.    Failing to disclose that its "unlimited" wireless data plans were not "unlimited"; and,

    b.    Misrepresenting that its wireless data plans were "unlimited."

129.    Plaintiffs and the Class relied on these representations and omissions in purchasing Defendant's unlimited wireless data plans, phones and other products.

130.    Defendant performed the wrongful acts, concealed the information and made the affirmative representations during the relevant time period of this lawsuit with the intent of gaining its own financial advantage to the disadvantage of Plaintiffs and the Class.

131.    As a result of Defendant's wrongful conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses and non-economic losses, all in an amount to be proven at trial.

132.    Defendant's wrongful acts alleged herein were done maliciously, oppressively and with the intent to mislead and defraud.  Accordingly, Plaintiffs and the Class are entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION

(Breach of Express Warranty/Breach of Contract)
(On Behalf of the Class)

133.    Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

1266725.1

ORIGINAL COMPLAINT
CASE NO. 3:15-CV-3418

134. Plaintiffs, and each member of the Class, formed a contract with Defendant at the time they purchased an "unlimited" data plan from Defendant.  The terms of that contract include the promises and affirmations of fact made by Defendant through their marketing materials and statements, as described above, which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other.

135. All conditions precedent to Defendant' liability under this contract have been performed by Plaintiffs and the Class.

136. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a product which provided the promised benefits as described above.

137. As a result of Defendant's breach of its contract and warranties, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

(Unjust Enrichment)
(On Behalf of the Class)

138. Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

139. Plaintiffs and the Class have conferred a benefit upon Defendant by purchasing Defendant's service plans, phones, and other products, which did not perform as promised and/or did not have the attributes and benefits promised by Defendant.

140. By their deceptive, misleading and unlawful conduct alleged herein, Defendant has unjustly received and retained benefits at the expense of Plaintiffs and the Class, including funds that Plaintiffs and the Class paid to Defendant for service plans, phones and other products.

141. Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as result of its deceptive, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and the Class.

1   142.   Plaintiffs and the Class have suffered financial loss as a direct result of

2   Defendant's conduct.

3   143.   Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or

4   the imposition of a constructive trust upon all profits, benefits and other compensation obtained

5   by Defendant, and for such other relief that this Court deems proper, as a result of their deceptive,

6   misleading and unlawful conduct.

7   **PRAYER FOR RELIEF**

8   **WHEREFORE**, as a result of the foregoing, Plaintiffs Marcus Roberts, Kenneth Chewey

9   and Ashley Chewey, on behalf of themselves and all others similarly situated, pray for relief as

10  follows:

11  1.   Declaring this action to be a proper class action, certifying the proposed Class and

12  California Subclass, appointing Plaintiffs as class representatives, and appointing Plaintiff's

13  counsel as class counsel;

14  2.   An order that Defendant is permanently enjoined from its improper conduct and

15  practices as alleged;

16  3.   A judgment awarding Plaintiffs and Class and California Subclass members

17  restitution, including, without limitation, restitutionary disgorgement of all profits and unjust

18  enrichment that Defendant obtained as a result of its unlawful, unfair, and fraudulent business

19  practices and conduct;

20  4.   A judgment awarding Plaintiffs and Class and California Subclass members actual

21  damages;

22  5.   A judgment awarding Plaintiffs and Class and California Subclass members

23  exemplary damages for Defendant's knowing, willful, and intentional conduct;

24  6.   Pre-judgment and post-judgment interest;

25  7.   Attorneys' fees, expenses, and the costs of this action; and

26  8.   All other and further relief as this Court deems necessary, just, and proper.

27  **JURY DEMAND**

28  Plaintiffs demand a trial by jury on all issues so triable.

1

2    Dated: July 24, 2015                     Respectfully submitted,

3                                             LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

4

5                                             By: _____

6                                                 Michael W. Sobol

7                                             LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                                              Michael W. Sobol
                                              California State Bar No. 194857
8                                             275 Battery Street, 29th Floor
                                              San Francisco, CA  94111
9                                             (415) 956-1000
                                              (415) 956-1008 (fax)
10

11                                            MORGAN & MORGAN
                                              COMPLEX LITIGATION GROUP
                                              John A. Yanchunis*
12                                            Florida Bar No. 324681
                                              Rachel Soffin*
13                                            Florida Bar No. 0018054
                                              201 North Franklin Street 7th Floor
14                                            Tampa, Florida  33602
                                              (813) 223-5505
15                                            (813) 223-5402 (fax)

16                                            LAW OFFICE OF JEAN SUTTON MARTIN PLLC
                                              Jean Sutton Martin*
17                                            North Carolina Bar No. 25703
                                              2018 Eastwood Road, Suite 225
18                                            Wilmington, North Carolina  28403
                                              (910) 292-6676
19                                            (888) 316-3489 (fax)

20                                            ***Attorneys for Plaintiffs and the Proposed Class***

21                                            *Pro Hac Vice application to be submitted*

22

23

24

25

26

27

28

1266725.1                                    - 27 -                          ORIGINAL COMPLAINT
                                                                             CASE NO. 3:15-CV-3418