1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   Nicole D. Sugnet (State Bar No. 246255)
    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
3   275 Battery Street, 29th Floor
    San Francisco, CA  94111
4   Telephone:  (415) 956-1000

5   John A. Yanchunis*
    Rachel Soffin*
6   MORGAN & MORGAN
    COMPLEX LITIGATION GROUP
7   201 North Franklin Street, 7th Floor
    Tampa, FL  33602
8   Telephone: (813) 223-5505

9   Jean Sutton Martin*
    LAW OFFICE OF JEAN SUTTON MARTIN PLLC
10  2018 Eastwood Road, Suite 225
    Wilmington, North Carolina  28403
11  Telephone:  (910) 292-6676

12  *Attorneys for Plaintiffs and the Proposed Class*

13  *\* Pro Hac Vice application to be submitted*

14  [*LIST OF ADDITIONAL COUNSEL ON SIGNATURE PAGE*]

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17  MARCUS A. ROBERTS,                    Case No. 3:15-cv-3418-EMC
    KENNETH A. CHEWEY,
18  ASHLEY M. CHEWEY, AND                 **CLASS ACTION**
    JAMES KRENN, on behalf of
19  themselves and all others similarly   **AMENDED COMPLAINT FOR:**
    situated,                             **(1) VIOLATION OF BUSINESS & PROFESSIONS
20                                              CODE § 17200;**
                Plaintiffs,               **(2) VIOLATION OF BUSINESS & PROFESSIONS
21                                              CODE § 17500;**
    v.                                    **(3) VIOLATION OF THE CONSUMER LEGAL
22                                              REMEDIES ACT ("CLRA"), CALIFORNIA
    AT&T MOBILTY LLC,                          CIVIL CODE §1750, *ET SEQ*;**
23                                        **(4) NEGLIGENT MISREPRESENTATION;**
                Defendant.                **(5) MISREPRESENTATION;**
24                                        **(6) FRAUDULENT CONCEALMENT;**
                                          **(7) BREACH OF EXPRESS WARRANTY;**
25                                        **(8) UNJUST ENRICHMENT; AND**
                                          **(9) VIOLATIONS OF THE ALABAMA
26                                              DECEPTIVE TRADE PRACTICES ACT, ALA.
                                              CODE 1975 §8-19-3 *ET SEQ***
27
                                          Jury Trial Demanded
28

AMENDED COMPLAINT
                                          CASE NO. 3:15-CV-3418

Plaintiffs Marcus A. Roberts, Kenneth A. Chewey, Ashley M. Chewey, and James Krenn, on behalf of themselves and all others similarly situated, file this Class Action Complaint against Defendant AT&T Mobility LLC and for their causes of action respectfully allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers who have been harmed by Defendant's deceptive and unfair trade practice of marketing its wireless service plans as being "unlimited," when in fact those plans are subject to a number of limiting conditions that either are not disclosed or inadequately disclosed to consumers.

2.      Defendant lured consumers into purchasing smartphones, wireless data cards and mobile service plans by aggressively promoting "unlimited" data service plans without disclosing, or adequately disclosing, that its so-called "unlimited" plans are actually limited. Defendant failed to disclose to consumers, including Plaintiffs and the Class, that it "throttles" (*i.e.*, intentionally slows) the data speed on cellular phones or wireless cards when the consumer has approached or exceeded Defendant's internally proscribed data usage limits.  These internally proscribed data usage thresholds are not adequately disclosed to consumers.

3.      Defendant's throttling practices alleged herein have the effect of significantly limiting consumers' access to data and services, rendering internet access and other wireless functions on their phones difficult or impossible, and thus unreasonably interfering with the supposedly "unlimited" service that the consumers paid for.

4.      Defendant's throttling of the data speed of its unlimited data plan customers is of such a degree that consumers, including Plaintiffs and the Class, are effectively unable to access data for the remainder of a billing cycle.

5.      As a result of Defendant's deceptive and material representations, bad faith, and unfair and unlawful conduct alleged herein, Plaintiffs and members of the proposed Class have suffered damages, including, without limitation, payment for services that were not as advertised.

6.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the products or services identified herein so as to halt the

dissemination of deceptive and misleading advertising, to correct the deceptive and misleading perception Defendant has created in the minds of consumers, and to obtain redress for those consumers who have purchased AT&T "unlimited" data service plans.  Plaintiffs seek injunctive and monetary relief for themselves and the proposed Class and Subclasses.

## THE PARTIES

7.     Plaintiff Marcus A. Roberts is a citizen and resident of San Mateo County, California.

8.     Plaintiffs Kenneth A. Chewey and Ashley M. Chewey are citizens and residents of Placer County, California.

9.     Plaintiff James Krenn is a citizen and resident of Alabama.

10.     Defendant AT&T Mobility LLC is a Delaware limited liability company with its principal office or place of business at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319. AT&T Mobility LLC transacts or has transacted business in this district and throughout the United States.

11.     Whenever reference in this Complaint is made to any act of Defendant, or other corporate Defendant as may be named in the future, the allegation shall be deemed to mean that the officers, directors, agents, representatives, subsidiaries, affiliates and employees of the Defendant did or authorized the act while actively engaged in the management, direction, or control of the affairs of the corporate Defendant, and while acting within the course and scope of their employment.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the amount in controversy, exclusive of interest and costs, exceeds the sum of value of $5,000,000, and this is a class action in which there are members of the proposed Class who are citizens of a state different from Defendant.

13.     Venue is proper pursuant to 28 U.S.C. §1391 in that Plaintiff Marcus Roberts resides in this District; many of the acts and transactions giving rise to this action occurred in this District; Defendant is authorized to conduct business in this District, has intentionally availed

itself of the laws and markets within this District through distribution and sale of its products in this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

A.      **Defendants Falsely Advertises Certain Service Plans as Providing "Unlimited" Data.**

14.      Defendant markets and cells wireless service plans to 121.8 million subscribers in the United States.  Such service plans include wireless data, allowing subscribers to use their phones to browse websites, send and receive emails, use smartphone applications, watch videos and stream music, and use GPS navigation.

15.      Prior to 2010, Defendant offered service plans that purported to include "unlimited" data.  Defendant aggressively promoted its "unlimited" plan in order to capture the burgeoning smartphone market.  Between 2007 and 2010, AT&T was the sole service plan provider for the Apple iPhone and, upon information and belief, Defendant's offer of an unlimited data plan was a requirement of its deal with Apple.

16.      Defendants' advertising and packaging of its phones and "unlimited" service plans featured the word "unlimited" in prominent font.  Examples of Defendant's advertisements and representations regarding its "unlimited" data plans include the following:

| AT&T Nation | $59.99 | $79.99 | $99.99 | $119.99 | $169.99 | $219.99 |
|---|---|---|---|---|---|---|
| Minutes | 450 | 900 | 1350 | 2000 | 4000 | 6000 |
| Unlimited Data (email/web) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Visual Voicemail | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| SMS Text Messaging | 200 | 200 | 200 | 200 | 200 | 200 |
| Night & Weekend Minutes | 5000 | Unlimited | Unlimited | Unlimited | Unlimited | Unlimited |
| Rollover Minutes* | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Unlimited Mobile to Mobile | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Additional Minutes | 45¢/min | 40¢/min | 35¢/min | 25¢/min | 25¢/min | 20¢/min |

INCLUDED FEATURES: Nationwide Long Distance and Roaming, Voicemail, Call Forwarding, Call Waiting, 3-WayCalling and Caller ID.

## AT&T Plans for iPhone 3G (U.S. Coverage Packages)

### AT&T Nation™



| UNLIMITED Data (Email/Web) \| Visual Voicemail \| Rollover* UNLIMITED Mobile to Mobile | | | UNLIMITED Data (Email/Web) Visual Voicemail |
|---|---|---|---|
| Anytime Minutes | 450 | 900 | 1350 | UNLIMITED |
| Night & Weekend Minutes | 5000 | UNLIMITED | UNLIMITED | — |
| Additional Minutes | .45¢ | .40¢ | .35¢ | N/A |
| Per Month | $69.99 | $89.99 | $109.99 | $129.99 |

### AT&T FamilyTalk™
Includes 2 Lines

| UNLIMITED Data (Email/Web) \| Visual Voicemail \| Rollover* UNLIMITED Mobile to Mobile \| UNLIMITED Nights & Weekends | | | | | | UNLIMITED Data (Email/Web) Visual Voicemail |
|---|---|---|---|---|---|---|
| Shared Anytime Minutes | 700 | 1400 | 2100 | 3000 | 4000 | 6000 | UNLIMITED |
| Additional Minutes | .45¢ | .40¢ | .35¢ | .25¢ | .20¢ | .20¢ | N/A |
| Per Month | $129.99 | $149.99 | $169.99 | $209.99 | $259.99 | $359.99 | $259.99 |
| Additional iPhone Line | $39.99 per line (up to 3 additional lines). | | | | | | $129.99 |

AMENDED COMPLAINT
CASE NO. 3:15-CV-3418



17.     While Defendant stopped offering the "unlimited" plan in June 2010, it allowing existing subscribers to the unlimited plan to be "grandfathered" into those plans, expressly representing that such subscribers would continue to enjoy "unlimited" data.

18.     Defendant made this offer in the hopes that its "unlimited" subscribers would not switch to another service plan provider.  This was particularly important to Defendant when, in 2011, it ceased to be the sole service provider for the Apple iPhone and given that many competing smartphones offered by competing service providers had been introduced in the market by that time.

19.     Defendant's offer was effective: Upon information and belief, millions of subscribers kept their unlimited plans rather than switching to a new plan.  In fact, these subscribers value their purportedly "unlimited" data so much that they continually elect to forego opportunities to receive phone upgrades for little or no cost.  Accepting such phone upgrade offers often require customers to give up their "unlimited" data plans.  Defendant's "unlimited" data promise is thus material to consumers.

20.     In stark contrast to the representations in makes to its "unlimited" data subscribers, Defendant discloses the exact monthly allotment of data that subscribers will be able to use (*e.g.*,

3 GB) with respect to their "tiered" mobile data plans.  Defendant also states that additional fees will apply if a subscriber exceeds the monthly allowance.

**B.**     **Defendant Imposes Secret Data Caps on and Regularly Throttles "Unlimited" Subscribers' Service Plans.**

21.     Despite its representations that "unlimited" plan subscribers would continue to have access to "unlimited" data, in 2011, Defendant began to "throttle" (*i.e.* slow down) the data speed, usually without warning, once those subscribers exceed secret data usage caps.  The speeds at which Defendant throttles its subscribers are so slow that they are unable to use their phones for certain intended and advertised purposes, such as streaming video or music or even browsing webpages.

22.     Defendant throttles its customers once they reach the secret data usage caps no matter if Defendant's network is not congested at the time and is capable of handling the customers' data usage at regular speeds.

23.     Once throttled, customers' data speeds remain throttled until the next month.

24.     Defendant initially had different data usage caps applicable to residents of different cities.  In some places, Defendant's data usage cap was as low as 2GB.

25.     Beginning in 2012, Defendant implemented a secret data usage cap of 3GB for all devices using Defendant's 3G network (e.g., iPhone 3G, 3GS, 4) and HSPA+ network (e.g., iPhone 4S), and 5 GB per billing cycle for devices using Defendant's LTE network (e.g., iPhone 5, 5S, 6, 6 Plus).

**C.**     **Defendant does Not Adequately Disclose its Throttling Practice or Secret Data Usage Caps to its "Unlimited" Subscribers.**

26.     Defendants' marketing of its unlimited mobile data plans—both prior to and after Defendant transitioned to offering tiered plans to new customer—has failed to disclose Defendant's throttling practices, and indeed the limits applied pursuant to Defendant's throttling practices are wholly inconsistent with Defendant's repeated and emphasized representations that its unlimited mobile data plans are "unlimited."

27.     Defendant fails to adequately disclose its data usage limits to customers or to disclose the extremely slow speeds at which customers will be throttled and how that will impact their data service.

28.     Defendant's Wireless Customer Agreement applicable to all service plans, including "unlimited" data plans, does not disclose its data usage caps applicable to "unlimited" subscribers or its practice of throttling.  Instead, it merely prohibits the usage of data for certain activities, such as tethering phones to a computing device so that the computing device may use the phones' data.

29.     The only disclosure Defendant made regarding throttling prior to implementing its throttling practice was the following brief statement included in some customers' July or August 2011 monthly bill:

**Important Update for Unlimited Data Plan Customers**

> To provide the best possible network experience, starting 10/01/11, smartphone customers with unlimited data plans whose usage is in the top 5% of users can still use unlimited data but may see reduced data speeds for the rest of their monthly billing cycle.  We'll alert you if you near the top 5%.  To avoid slowed speeds you may use Wi-Fi or choose a tiered data plan.  Details @ att.com/dataplans.

30.     This statement does not adequately disclose or even truthfully describe Defendant's throttling practice.  It misrepresents that only the top 5% of users will be throttled, when in fact any user that exceeds Defendant's secret data caps of 3GB or 5GB will be throttled. It also misrepresents that Defendant will alert customers as they reach those data limits, when it often throttles customers without ever alerting them to the fact.  Further, it fails to disclose the speeds at which customers' data will be reduced and how such speeds will impact customers' ability to use data.

31.     On its website, under the heading "Info for smartphone customers with legacy unlimited data plans," Defendant continues to mislead customers to this day about the nature of its throttling practice:

> In line with common industry standards, we have implemented network management practices to assure that our network resources are used for the benefit of all our mobile broadband customers

especially during periods when network demand exceeds available network resources (also known as "congestion").

One such practice applies when a minority of smartphone customers on unlimited data plans using 3G, 4G, or 4G LTE smartphones exceed certain data usage thresholds in a billing period (3GB for 3G/4G smartphones and 5GB for 4G LTE smartphones). When affected by this practice, these customers ***may*** experience reduced data speeds and increased latency ***during periods of congestion*** as compared to other customers using the same cell site. (emphasis added).

32.     Instead of truthfully disclosing the exact nature of its throttling practice, Defendant's website "disclosure" implies that any throttling "might" occur during periods of network congestion, when it fact Defendant ***always*** throttles "unlimited" subscribers' data once they exceed the data thresholds regardless of whether the network is congested at the time.

33.     Even the few text messages or emails that Defendant sends to some subscribers as they approach or exceed the secret data usage caps not adequately disclose Defendant's throttling practice.  They do not disclose the secret data caps or the speeds at which subscribers will be throttled.

34.     Defendant's "unlimited" misrepresentations and its failure to adequately disclose its secret data caps and throttling practice was, and is, a deceptive act or practice. In making and disseminating the statements regarding its "unlimited" data plans as alleged herein, Defendant should have known that its advertisements were untrue, deceptive and misleading.

**D.     Defendant's Practice of Throttling "Unlimited" Subscribers' Data is Contrary to those Subscribers' Expectations.**

35.     Reasonable consumers are likely to be misled by Defendant's promise of "unlimited" data, particularly in combination with Defendant's advertisements that encourage customers to use smartphones and data plans in typical ways such as browsing the internet, streaming or downloading music and videos, running apps, and using GPS navigation.

36.     Once customers discover the truth about Defendants' "unlimited" plans, customers are outraged by Defendants' lies and bad faith practices.  Thousands of customers have complained to Defendant and have submitted complaints to third party consumer protection entities such as the Better Business Bureau and consumeraffairs.com.

37.     Upon information and belief, Defendant has conducted internal research and focus groups revealing that customers believe the word "unlimited" to mean no restrictions on data, and that Defendant's practice of throttling data is inconsistent with its "unlimited" representations. Nevertheless, Defendant continues to represent that its "unlimited" plans provide unlimited data.

38.     The imposition of data usage thresholds and speed reductions is antithetical to the term "unlimited."  Defendant was aware that its continued use of the word "unlimited" to describe its data plans was likely to, and did, mislead and deceive consumers.

**E.     Defendant Faces a $100 Million Fine from the FCC for Misleading Consumers Regarding "Unlimited" Data.**

39.     In a Notice of Apparent Liability for Forfeiture and Order adopted June 3, 2015 ("NAL")[1], the Federal Communications Commission ("FCC") found that Defendant:

a.     [used] the misleading and inaccurate term "unlimited" to label a data plan that was in fact subject to prolonged speed reductions after a customer used a set amount of data; and

b.     [failed] to disclose the express speed reductions that it applied to "unlimited" data plan customers once they hit a specified data threshold.

40.     In the NAL, the FCC further stated that any disclosures of such practice by Defendant were insufficient to overcome the misleading and inaccurate statements about the unlimited plan and, as a result, consumers were deprived "of sufficient information to make informed choices about their broadband service."

41.     The NAL imposes on Defendant liability for forfeiture "in the amount of one hundred million dollars ($100,000,000) for willful and repeated violations of Section 8.3 of the Commission's rules, 47 C.F.R. § 8.3."

**F.     Defendant's Goal in Throttling is to Encourage Customers to Switch to Limited Plans in Order to Make More Money.**

42.     Defendant's goal in implementing its throttling program is to make more money. Ultimately, it desires to push grandfathered subscribers off of the "unlimited" plans onto the

---

[1] https://www.fcc.gov/document/att-mobility-faces-100m-fine-misleading-consumers-0

"tiered" service plans that are either more expensive than the grandfathered plans or that hit subscribers with overage fees once they exceed the set data thresholds.

43.     As one article noted, "unlimited" plan subscribers were faced with the choice of continuing to "pay $30 for 'unlimited' service where you're actually only getting 2 GB of data before your phone becomes useless, or sign up for a 3GB tier for the same price so you're in line to get socked with the usage overages of tomorrow." *See* http://www.dslreports.com/shownews/118235 (last accessed on 7/22/15).

44.     Defendant's goal is exemplified by certain unfair practices Defendant imposes only on its "unlimited" plan subscribers. For example, Defendant restricts the popular iPhone application FaceTime—which allows telephone calls via video—such that it may be used only over Wi-Fi, and not over its cellular network, for "unlimited" subscribers. In contrast, Defendant's tiered plan subscribers are allowed to access Defendant's cellular network when using FaceTime.

45.     In addition, Defendant does not throttle its tiered plan subscribers' data at any time. Indeed, Defendant continues to throttled "unlimited" plan subscribers at secret data caps of 3GB or 5GB even though it offers tiered service plans with up to 50GBs of data per month.

46.     Defendant profits from misleading consumers about its "unlimited" service plans and throttling "unlimited" subscribers' data in numerous ways. By representing its plans as encompassing "unlimited" data, Defendant is able to induce customers into keeping their "unlimited" plans rather than switching to a different service provider. In addition, Defendant has induced customers to switch to tiered plans to avoid throttling, which often either cost more money (depending on the amount of data provided for in the plan) or which come with overage charges once a customer exceeds the data limits subject to those plans. Further, Defendant has collected substantial early termination fees from "unlimited" subscribers who cancelled service after being throttled.

47.     Plaintiffs and Class Members have been damaged, including by paying for products and services which were not delivered as represented, and by paying more than they otherwise would have paid.

**INAPPLICABLE OR UNENFORCEABLE ARBITRATION CLAUSE**

48.     Section 2 of Defendant's Wireless Customer Agreement purports to require that certain disputes be individually arbitrated.  Section 2 is unenforceable because it is substantively and procedurally unconscionable and/or is against public policy.

49.     To the extent that Defendant asserts that Plaintiffs' and Class members' claims are subject to an arbitration agreement or a class action waiver, Plaintiffs and the Class seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

**CLASS ACTION ALLEGATIONS**

50.     As detailed below in the individual counts, Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

51.     Plaintiffs seek to represent the following  "Class":

> All consumers in the United States who purchased an unlimited data plan from AT&T Mobility LLC and whose data usage was throttled prior to the expiration of the plan.

52.     Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and  Ashley M. Chewey also seek to represent the following "California Subclass":

> All consumers residing in California who purchased an unlimited data plan from AT&T Mobility LLC and whose data usage was throttled prior to the expiration of the service plan.

53.     Plaintiff James Krenn also seeks to represent the following "Alabama Subclass":

> All consumers residing in Alabama who purchased an unlimited data plan from AT&T Mobility LLC and whose data usage was throttled prior to the expiration of the service plan.

Excluded from the above Class, California Subclass and Alabama Subclass are Defendant and its officers, directors and employees.

54.     ***Numerosity***.  Members of the Class, California Subclass and Alabama Subclass are so numerous that joinder of all members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are at least hundreds

of thousands of putative Class members throughout the United States and at least hundreds of thousands of California Subclass and Alabama Subclass members.

55.     ***Existence and Predominance of Common Questions of Law and Fact***.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class, California Subclass or Alabama Subclass members.  These common legal and factual questions include, but are not limited to, the following:

a.     whether Defendant's conduct described herein violates the California Business & Professions Code § 17200 and/or § 17500, *et. seq.*;

b.     whether Defendant's marketing of its service plans as being "unlimited" constitutes deceptive and unfair trades practice in violation of the California Business & Professions Code § 17200 and § 17500, *et. seq.*;

c.     whether Defendant's marketing of its service plans as being "unlimited" constitutes deceptive and unfair trade practices in violation of the Alabama Deceptive Trade Practices Act, Ala. Code §8-19-3 *et. seq.*;

d.     whether Defendant breached its express warranties with Plaintiffs and the Class, California Subclass and Alabama Subclass;

e.     whether Defendant has been unjustly enriched to the detriment of Plaintiffs and the Class,  California Subclass and Alabama Subclass;

f.     whether Plaintiffs and the Class, California Subclass and Alabama Subclass have sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such damages;

g.     whether Plaintiffs and the Class, California Subclass and Alabama Subclass are entitled to restitution and, if so, what is the proper measure of restitution; and

h.     whether Plaintiffs and Class, California Subclass and Alabama Subclass members are entitled to declaratory and injunctive relief.

56.     ***Typicality***.  Plaintiffs' claims are typical of the claims of the members of the Class, California Subclass and Alabama Subclass  because, *inter alia*, all Class,  California Subclass and Alabama Subclass members were injured through the common misconduct described above and

were subject to Defendant's deceptive "unlimited" data plan representations.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class, California Subclass and Alabama Subclass.

57.    ***Adequacy of Representation***.  Plaintiffs will fairly and adequately protect the interests of the members of the Class, California Subclass and Alabama Subclass.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, California Subclass and Alabama Subclass .

58.    ***Superiority***.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation and the significant costs attendant to litigation on this scale compared to the relatively small damages suffered by individual Class members.  Further, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, a class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.  Trial of Plaintiffs' and Class members' claims is manageable as a class action, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.  Without a class action, the Class members will continue to suffer damages and Defendant's violations of law will proceed without remedy while Defendant continues to retain and reap the proceeds of its wrongful conduct.

59.    Defendant has acted and refused to act on grounds generally applicable to the Class, California Subclass and Alabama Subclass  by engaging in deceptive and misleading representations and material omissions regarding its unlimited data plans that misled Plaintiffs

and the Class, California Subclass and Alabama Subclass, thereby making appropriate final

injunctive relief with respect to the classes as a whole.

### PLAINTIFF SPECIFIC FACTS

**Plaintiff Marcus Roberts**

60.     In 2008, Plaintiff Marcus Roberts purchased an iPhone 3G with an "unlimited"

data plan through Defendant.

61.     Prior to making his purchase, Plaintiff Marcus Roberts had viewed and heard

advertisements for the unlimited data plan sold with the iPhone.  All of the advertisements

indicated that he would receive "unlimited" data without restriction.  There was no indication that

his data usage would be throttled when he reached a particular data usage threshold.  Plaintiff

Marcus Roberts did not view, nor was he aware of, any arbitration agreements or class action ban

as part of his purchase and use of the iPhone 3G and the "unlimited" data plan.

62.     Plaintiff Marcus Roberts read and relied on, in purchasing his iPhone 3G,

subsequent versions of the iPhone, and unlimited data plan, Defendant's representations that the

plan would provide "unlimited" data service.

63.     In approximately 2012, Plaintiff Marcus Roberts began noticing that by

approximately the middle of the month his internet connection was much slower and his ability to

download was hampered severely.  He believed the slowed speed was due to overall service

issues by Defendant, as his friends with service through other carriers seemingly had faster

service.

64.     From 2008 – 2014, Plaintiff Marcus Roberts upgraded to newer versions of the

iPhone.  Each such time, Defendant offered to "grandfather" him in, allowing him the opportunity

to continue with his unlimited mobile data plan, rather than requiring him to switch to

Defendant's tiered mobile data plans required for new customers.  In making these subsequent

device purchases and in continuing to subscribe to the unlimited data plan through Defendant,

Plaintiff Marcus Roberts continued to rely on Defendant's representation that the data plan was

"unlimited."

65.     After he experienced slowed data speeds in 2012, Plaintiff Marcus Roberts continued experiencing slowed data speeds with that phone and with the subsequent versions of the iPhone that he purchased.

66.     On or about July 6, 2015, Plaintiff Marcus Roberts received a text stating that he had used 75% of his allotted 5GB of data usage and that he may experience reduced speeds when using data services. This text was the first such notice he had received from Defendant.

67.     Upon receipt of this text, Plaintiff Marcus Roberts called Defendant to question why he had received such a message given that he had purchased an "unlimited" data plan. Defendant's representative on the phone told him, for the first time, that, even though he had an "unlimited" data plan, his data usage was actually restricted in that it would be throttled when he reached 5GB of data usage.

68.     Defendant failed to adequately advise Plaintiff Marcus Roberts of the limits that Defendant's throttling program imposed on his supposedly unlimited mobile data plan.

69.     When Plaintiff Marcus Roberts purchased and renewed his "unlimited" data plan with Defendant, he reasonably believed that he would have unlimited data service, and not be subject to data usage restrictions or throttling when he reached an internally-mandated data usage threshold..

70.     Plaintiff Marcus Roberts was harmed by Defendant's misleading representations and omissions, including by paying for products and services that were not as advertised and by paying more for his products and services than he otherwise would have paid.

**Plaintiffs Kenneth and Ashley Chewey**

71.     Plaintiffs Kenneth and Ashley Chewey were existing customers of Defendant when they purchased an iPhone 3G with a family share plan with "unlimited" data in approximately late 2009.

72.     Prior to making their purchase, Plaintiffs Kenneth and Ashley Chewey had viewed and heard advertisements for the unlimited data plan sold with the iPhone.  All of the advertisements indicated that with the family share plan, they would receive "unlimited" data without restriction.  There was no indication that their data usage would be throttled when they

1   reached a particular data usage threshold.  Plaintiffs Kenneth and Ashley Chewey did not view,

2   nor were they aware of, any arbitration agreements or class action ban as part of their purchase

3   and use of the iPhone 3G and the "unlimited" data family share plan.

4           73.     Plaintiffs Kenneth and Ashley Chewey read and relied, in purchasing their iPhone

5   3G and family share plan with unlimited data, on Defendant's representations that the plan would

6   provide "unlimited" data service.

7           74.     In approximately 2011, Plaintiffs Kenneth and Ashley Chewey began noticing that

8   by around the middle of the month, their internet connection for their iPhone was significantly

9   slower, to the point where their ability to access the internet using the device was hampered

10  severely.

11          75.     After Plaintiff Kenneth Chewey noticed this slowing, he called Defendant to

12  inquire about the issue.  He was told by a representative for Defendant that the problem was due

13  to his being in a high congestion area or his attempting to access the internet during a congested

14  time of day.  The representative affirmatively stated to Plaintiff Kenneth Chewey that the problem

15  was <u>not</u> due to throttling by Defendant.

16          76.     Subsequent to the conversation with Defendant's customer service representative,

17  the data service for Plaintiffs Kenneth and Ashley Chewey has slowed on other occasions,

18  including sometimes to the point that there is no internet connection at all.

19          77.     Each time they have renewed their service plan with Defendant, they have chosen

20  to continue to have an unlimited data plan instead of a tiered data plan.  In continuing to subscribe

21  to the unlimited data plan through Defendant, Plaintiffs Kenneth and Ashley Chewey continued

22  to rely on Defendant's representation that the data plan was "unlimited."

23          78.     On or about July 7, 2015, only seven (7) days into the current billing cycle,

24  Plaintiff Kenneth Chewey received two text messages stating that he was reaching a data usage

25  limit.  This message was confusing to him, because he had understood from Defendant's

26  representations that his data service was unlimited pursuant to his "unlimited" plan.

27          79.     When Plaintiffs Kenneth and Ashley Chewey purchased and renewed their family

28  share plan with "unlimited" data, they reasonably believed that they would have unlimited data

service, and not be subject to data usage restrictions or throttling when they reached an internally-mandated data usage threshold.

80.     Plaintiffs Kenneth and Ashley Chewey were harmed by Defendant's misleading representations and omissions, including by paying for products and services that were not as advertised and by paying more for their products and services than they otherwise would have paid.

**Plaintiff James Krenn**

81.     Plaintiff James Krenn purchased an iPhone 3 with an "unlimited" data plan through Defendant in approximately the fall of 2008.

82.     Prior to making his purchase, Plaintiff James Krenn had viewed and heard advertisements for the unlimited data plan sold with the iPhone.  All of the advertisements indicated that he would receive "unlimited" data without restriction.  There was no indication that his data speed would be throttled when he reached a particular data usage threshold.  Plaintiff James Krenn did not view, nor was he aware of, any arbitration agreements or class action ban as part of his purchase and use of the iPhone 3 and the "unlimited" data plan.

83.     Plaintiff James Krenn read and relied on, in purchasing his iPhone 3 and unlimited data plan, Defendant's representations that the plan would provide "unlimited" data service.

84.     Plaintiff James Krenn subsequently upgraded his phone to the iPhone 5, and later upgraded to the iPhone 6.  Each time he purchased a new phone, Defendant offered to "grandfather" him in to his unlimited mobile data plan, rather than requiring him to switch to Defendant's tiered mobile data plans required for new customers.  Plaintiff James Krenn accordingly continued to reasonably rely on Defendant's representation that the data plan was "unlimited."

85.     By 2012, Plaintiff James Krenn noticed that his internet speed would decrease towards the end of each billing cycle.  These slower speeds hindered his ability to access the Internet or use applications on his phone.

86.     On or about July 3, 2015, Plaintiff James Krenn received a text from Defendant stating that he was reaching a data usage limit.  This message was confusing to him, because he

had understood from Defendant's representations that his data service was unlimited pursuant to his "unlimited" plan.

87.     Plaintiff James Krenn was harmed by Defendant's misleading representations and omissions, including by paying for products and services that were not as advertised and by paying more for their products and services than he otherwise would have paid.

## FIRST CAUSE OF ACTION

(Violation of California Business & Professions Code § 17200 *et seq.*)
(On Behalf of the California Subclass)

88.     Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

89.     Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey assert this cause of action on behalf of themselves and the California Subclass.

90.     California Business & Professions Code § 17200 *et seq.* prohibits unfair competition that is any unfair, unlawful, or a fraudulent business practice.

91.     Defendant violated the "unlawful" prong of the UCL by making material misrepresentations that its data plans offer "unlimited" data, when in fact Defendant regularly throttles customers' data, in violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

92.     Defendant's practice of regularly throttling customers' "unlimited" data violated the "unfair" prong of the UCL because it was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Subclass members. Defendant's practice was also contrary to legislatively declared and public policy and the harm it caused to consumers outweighed its utility, if any.

93.     Defendant violated the "fraudulent" prong of the UCL by making material misrepresentations that its data plans were "unlimited" when they were not, and by failing to disclose and actively concealing material information regarding its practice of regularly throttling customers' data.  These material misrepresentations and nondisclosures were likely to mislead consumers.

94.     Defendant's misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

95.     Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

96.     Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey reasonably relied on Defendant's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Defendant's service plans, phones and other products had they known the truth.

97.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey lost money or property.

98.     Defendant's conduct caused substantial injury to Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members.  Accordingly, Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey seek an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money that Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members paid for Defendant's service plans, phones, and other products and/or restitutionary disgorgement of profits.  Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## SECOND CAUSE OF ACTION

(Violation of California Business & Professions Code § 17500 *et seq.*)
(On Behalf of the California Subclass)

99.     Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

100.     Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey assert this cause of action on behalf of themselves and the California Subclass.

101.   Defendant has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 *et seq.*, including by making material misrepresentations that its data plans were "unlimited" when they were not, and by failing to disclose and actively concealing material information regarding its practice of regularly throttling customers' data.

102.   Defendant's misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

103.   Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

104.   Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey reasonably relied on Defendant's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Defendant's service plans, phones and other products had they known the truth.

105.   As a direct and proximate result of Defendant's conduct, Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey lost money or property.

106.   Defendant's conduct caused substantial injury to Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members.  Accordingly, Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey seek an order enjoining Defendant from committing such practices, and seek the full amount of money that Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members paid for Defendant's service plans, phones, and other products and/or restitutionary disgorgement of profits.  Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## **THIRD CAUSE OF ACTION**

(Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*)
(On Behalf of California Subclass)

107.     Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

108.     Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey assert this cause of action on behalf of themselves and the California Subclass.

109.     Defendant is a "person" within the meaning of Civil Code §§1761(c).

110.     Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and the California Subclass members are "consumers," as defined by Cal. Civ. Code §1761(d).

111.     The data service plans, phones, and other products that Defendant marketed and sold constitute "goods" and "services," as defined by Cal. Civ. Code §1761(a) and (b).

112.     The purchases of Defendant's service plans, phones, and other products  by Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

113.     Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members purchased Defendant's service plans, phones, and other products for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

114.     Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in this county.  The declarations of Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey establishing that this Court has proper venue for this action are attached as Exhibit A.

115.     Defendant deceived consumers in that it misrepresented that its service plans offered "unlimited" data and also failed to disclose or actively concealed that it would regularly throttle customers' data.

116.     Defendant's misrepresentations, active concealment, and failures to disclose violated the CLRA in the following manner:

a.     Defendant misrepresented that its service plans, phones, and other products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.     Defendant misrepresented that its service plans, phones, and other products were of a particular standard, quality, and/or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c.     Defendant advertised its service plans, phones, and other products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d.     Defendant misrepresented that its service plans, phones, and other products conferred or involved rights, remedies, or obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

e.     Defendant misrepresented that its service plans, phones, and other products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16));

f.     Defendant inserted unconscionable provisions in its consumer agreements, including an arbitration clause with a class action waiver provision, in violation of §1770(a)(19).

117.   Defendant's misrepresentations and nondisclosures regarding its "unlimited" data plans and its practice of regularly throttling customers' data were material to Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members because a reasonable person would have considered them important in making purchase decisions and because Defendant had a duty to disclose the truth.

118.   Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and California Subclass members reasonably relied upon Defendant's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Defendant's service plans, phones and other products had they known the truth.

119.   As a direct and proximate result of Defendant's material misrepresentations and nondisclosures, Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey and the California Subclass have been irreparably harmed.

120.     On behalf of the California Subclass, Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey seek injunctive relief in the form of an order enjoining Defendant from making such material misrepresentations and failing to disclose or actively concealing its practice of throttling customers' data.  Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey also seek attorneys' fees and costs.

121.     In accordance with Cal. Civ. Code § 1782(a), on July 23, 2015, counsel  for Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey served Defendant with notice of their CLRA violations by certified mail, return receipt requested.  A true and correct copy of the CLRA demand notice is attached as Exhibit B.  The CLRA demand letter was delivered to Defendant's registered agent for service of process on July 28, 2015, as evidenced by Exhibit C.

122.     Defendant has refused or failed to timely respond the CLRA demand notice of Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey.

123.     Defendant AT&T has failed to provide appropriate relief for its CLRA violations within 30 days of receipt of Plaintiffs' demand notice.  Accordingly,  pursuant to  Cal. Civ. Code §§ 1780 and 1782(b), Plaintiffs Marcus A. Roberts, Kenneth A. Chewey and Ashley M. Chewey are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## FOURTH CAUSE OF ACTION

(Negligent Misrepresentation)
(On Behalf of the Class)

124.     Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

125.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

126.     During the relevant time period of this lawsuit, Defendant made express statements that the wireless data plans purchased by Plaintiffs and members of the Class were "unlimited."

127.    Defendant used false and misleading statements to induce customers, to purchase "unlimited" data plans.

128.    Plaintiffs and members of the Class justifiably relied upon Defendant's false and misleading statements or omissions in deciding whether to purchase Defendant's wireless data plans, phones and other products during the relevant time period of this lawsuit.

129.    As a direct and proximate result of the above described practices, Plaintiffs and members of the Class sustained damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

(Misrepresentation)
(On Behalf of the Class)

130.    Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

131.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

132.    During the relevant time period of this lawsuit, Defendant made express statements that the wireless data plans purchased by Plaintiffs and members of the Class were "unlimited."

133.    Upon information and belief, Defendant knew that it had represented that the wireless data plans purchased by Plaintiffs and members of the Class were "unlimited," and that this was false and misleading.

134.    As such, Defendant used false and misleading statements to induce customers to purchase its wireless data plans.

135.    Plaintiffs and members of the Class justifiably relied upon Defendant's false and misleading statements in deciding whether to purchase wireless data service, phones and other products from Defendant.  As a direct and proximate result of the above described practices, Plaintiffs and members of the Class sustained damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Fraudulent Concealment)
(On Behalf of the Class)

136.   Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

137.   Plaintiffs assert this cause of action on behalf of themselves and the Class.

138.   Defendant intentionally misrepresented or concealed the following material facts from Plaintiffs and the Class:

a.   Failing to disclose that its "unlimited" wireless data plans were not "unlimited"; and,

b.   Misrepresenting that its wireless data plans were "unlimited."

139.   Plaintiffs and the Class relied on these representations and omissions in purchasing Defendant's unlimited wireless data plans, phones and other products.

140.   Defendant performed the wrongful acts, concealed the information and made the affirmative representations during the relevant time period of this lawsuit with the intent of gaining its own financial advantage to the disadvantage of Plaintiffs and the Class.

141.   As a result of Defendant's wrongful conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses and non-economic losses, all in an amount to be proven at trial.

142.   Defendant's wrongful acts alleged herein were done maliciously, oppressively and with the intent to mislead and defraud.  Accordingly, Plaintiffs and the Class are entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION

(Breach of Express Warranty/Breach of Contract)
(On Behalf of the Class)

143.   Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

144. Plaintiffs, and each member of the Class, formed a contract with Defendant at the time they purchased an "unlimited" data plan from Defendant. The terms of that contract include the promises and affirmations of fact made by Defendant through their marketing materials and statements, as described above, which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other.

145. All conditions precedent to Defendant' liability under this contract have been performed by Plaintiffs and the Class.

146. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a product which provided the promised benefits as described above.

147. As a result of Defendant's breach of its contract and warranties, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## **EIGHTH CAUSE OF ACTION**

(Unjust Enrichment)
(On Behalf of the Class)

148. Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

149. Plaintiffs and the Class have conferred a benefit upon Defendant by purchasing Defendant's service plans, phones, and other products, which did not perform as promised and/or did not have the attributes and benefits promised by Defendant.

150. By their deceptive, misleading and unlawful conduct alleged herein, Defendant has unjustly received and retained benefits at the expense of Plaintiffs and the Class, including funds that Plaintiffs and the Class paid to Defendant for service plans, phones and other products.

151. Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as result of its deceptive, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and the Class.

152.    Plaintiffs and the Class have suffered financial loss as a direct result of Defendant's conduct.

153.    Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Defendant, and for such other relief that this Court deems proper, as a result of their deceptive, misleading and unlawful conduct.

## NINTH CAUSE OF ACTION

(Violation of the Alabama Deceptive Trade Practices Act, Ala. Code 1975 § 8-19-1 *et seq*.)
(On Behalf of the Alabama Subclass)

154.    Plaintiffs incorporate by reference all allegations set forth in this Class Action Complaint as though fully set forth herein.

155.    Plaintiff James Krenn brings this claim on behalf of himself and the Alabama Subclass.

156.    Defendant's misrepresentations, active concealment, and failures to disclose violated the Alabama Deceptive Trade Practices Act ("DTPA") in the following manner:

a.    Defendant misrepresented that its service plans, phones, and other products had characteristics, benefits, qualities or uses that they did not have (Ala. Code § 8-19-5(5));

b.    Defendant misrepresented that its service plans, phones, and other products were of a particular standard, quality, and/or grade when they were of another (Ala. Code § 8-19-5(7));

c.    Defendant advertised its service plans, phones, and other products with an intent not to sell them as advertised (Ala. Code § 8-19-5(9));

157.    Said conduct is generally and specifically within the meaning of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq*. and in the course of business that is prohibited, unfair, and deceptive.

158.    The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

159.    Defendant's misrepresentations and omissions were material to Plaintiff James Krenn and members of the Alabama Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Alabama Subclass known the truth, they would have acted differently.

160.    The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

161.    As a direct and proximate result of the above described practices, Plaintiff James Krenn and members of the Alabama Subclass sustained damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, as a result of the foregoing, Plaintiffs Marcus Roberts, Kenneth Chewey, Ashley Chewey and Janmes Krenn, on behalf of themselves and all others similarly situated, pray for relief as follows:

1.    Declaring this action to be a proper class action, certifying the proposed Class, California Subclass, and Alabama Subclass appointing Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

2.    An order that Defendant is permanently enjoined from its improper conduct and practices as alleged;

3.    A judgment awarding Plaintiffs and Class, California Subclass and Alabama Subclass members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices and conduct;

4.    A judgment awarding Plaintiffs and Class, California Subclass and Alabama Subclass members actual damages;

5.    A judgment awarding Plaintiffs and Class, California Subclass and Alabama Subclass members exemplary damages for Defendant's knowing, willful, and intentional conduct;

1    6.    Pre-judgment and post-judgment interest;

2    7.    Attorneys' fees, expenses, and the costs of this action; and

3    8.    All other and further relief as this Court deems necessary, just, and proper.

4    **JURY DEMAND**

5    Plaintiffs demand a trial by jury on all issues so triable.

6

7    Dated: September 3, 2015                  Respectfully submitted,

8                                             LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

9

10                                           By: _____
                                                  Michael W. Sobol

11                                           Michael W. Sobol (State Bar No. 194857)
                                             Roger N. Heller (State Bar No. 215348)
12                                           Nicole D. Sugnet (State Bar No. 246255)
                                             LIEFF CABRASER HEIMANN & BERNSTEIN LLP
13                                           275 Battery Street, 29th Floor
                                             San Francisco, CA  94111
14                                           (415) 956-1000
                                             (415) 956-1008 (fax)
15

16                                           John A. Yanchunis*
                                             Florida Bar No. 324681
17                                           Rachel Soffin*
                                             Florida Bar No. 0018054
18                                           MORGAN & MORGAN
                                             COMPLEX LITIGATION GROUP
19                                           201 North Franklin Street 7th Floor
                                             Tampa, Florida  33602
20                                           (813) 223-5505
                                             (813) 223-5402 (fax)

21                                           Jean Sutton Martin*
22                                           LAW OFFICE OF JEAN SUTTON MARTIN PLLC
                                             North Carolina Bar No. 25703
23                                           2018 Eastwood Road, Suite 225
                                             Wilmington, North Carolina  28403
24                                           (910) 292-6676
                                             (888) 316-3489 (fax)

25                                           Daniel M. Hattis (State Bar No. 232141)
26                                           HATTIS LAW
                                             9221 NE 25th Street
27                                           Clyde Hill, WA  98004
                                             Telephone:  (650) 980-1990

28

1
2
3
4

D. Anthony Mastando*
Eric J. Artrip*
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, Alabama  35801
Telephone:  (256) 532-2222

5
6
7

Douglas C. Martinson, II*
MARTINSON & BEASON, PC
115 Northside Square
Huntsville, Alabama 35801
Telephone:  (256) 776-7006

8
9
10
11
12

Alexander H. Schmidt*
Michael M. Liskow (State Bar No. 243899)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600
(212) 545-4677 (fax)

13
14
15
16

Rachele R. Rickert (State Bar No. 190634)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
750 B. Street, Suite 2770
San Diego, California 92101
 (619) 239-4599
(619) 234-4599 (fax)

17    **_Attorneys for Plaintiffs and the Proposed Class_**

18    *_* Pro Hac Vice application to be submitted_*

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   Nicole D. Sugnet (State Bar No. 246255)
    LIEFF CABRASER HEIMANN
3   & BERNSTEIN LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111
    Telephone: (415) 956-1000
5
    John A. Yanchunis (*pro hac vice application to be submitted*)
6   Rachel Soffin (*pro hac vice application to be submitted*)
    MORGAN & MORGAN
7   COMPLEX LITIGATION GROUP
    201 North Franklin Street, 7th Floor
8   Tampa, FL 33602
9   Telephone: (813) 223-5505

10   Jean Sutton Martin (*pro hac vice application to be submitted*)
    LAW OFFICE OF JEAN SUTTON MARTIN PLLC
11   2018 Eastwood Road, Suite 225
    Wilmington, North Carolina 28403
12   Telephone: (910) 292-6676
13
    Attorneys for Plaintiffs
14

15                UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                SAN FRANCISCO DIVISION

18

19   Marcus A. Roberts, Kenneth A. Chewey     Case No. _____
    and Ashley M. Chewey, individually and
20   on behalf of themselves and all others     **CLASS ACTION COMPLAINT**
    similarly situated,
21                Plaintiffs,
22     v.                **<u>DECLARATION ASHLEY CHEWEY</u>**

23   AT&T MOBILTY LLC,

24
               Defendant.
25

26

27

28

                                  DECLARATION OF ASHLEY CHEWEY

1

2    I, Ashley Chewey, hereby declare and state as follows:

3    1.      I am over the age of 18, and a Plaintiff in this action. The facts contained in this

4    declaration are based on my personal knowledge, and if called upon to do so, I could and would

     testify competently hereto.
5

6    2.      The complaint in this action, filed concurrently with this declaration, is filed in the

7    proper place for trial under California Civil Code § 1780(d), because this is a county in which the

8    Defendant does business and where a substantial portion of the transactions occurred.

9

10   I declare under penalty of perjury under the laws of the United States and the State of

     California that the foregoing is true and correct.
11

12   Executed on July 22, 2015, in ROSEVILLE , California.

13

14

15                                                        Ashley Chewey

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   Nicole D. Sugnet (State Bar No. 246255)
    LIEFF CABRASER HEIMANN
3   & BERNSTEIN LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111
    Telephone: (415) 956-1000
5
    John A. Yanchunis (*pro hac vice application to be submitted*)
6   Rachel Soffin (*pro hac vice application to be submitted*)
    MORGAN & MORGAN
7   COMPLEX LITIGATION GROUP
    201 North Franklin Street, 7th Floor
8   Tampa, FL 33602
9   Telephone: (813) 223-5505

10  Jean Sutton Martin (*pro hac vice application to be submitted*)
    LAW OFFICE OF JEAN SUTTON MARTIN PLLC
11  2018 Eastwood Road, Suite 225
12  Wilmington, North Carolina 28403
    Telephone: (910) 292-6676
13
    Attorneys for Plaintiffs
14

15                  UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17                   SAN FRANCISCO DIVISION

18

19  Marcus A. Roberts, Kenneth A. Chewey         Case No. _____
    and Ashley M. Chewey, individually and
20  on behalf of themselves and all others       **CLASS ACTION COMPLAINT**
    similarly situated,
21                      Plaintiffs,
22          v.                                    **DECLARATION KENNETH CHEWEY**

23  AT&T MOBILTY LLC,

24
                        Defendant.
25

26

27

28

I, Kenneth Chewey, hereby declare and state as follows:

1.    I am over the age of 18, and a Plaintiff in this action. The facts contained in this declaration are based on my personal knowledge, and if called upon to do so, I could and would testify competently hereto.

2.    The complaint in this action, filed concurrently with this declaration, is filed in the proper place for trial under California Civil Code § 1780(d), because this is a county in which the Defendant does business and where a substantial portion of the transactions occurred.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on July 22, 2015, in ROSEVILLE , California.

_____
Kenneth Chewey

DECLARATION OF KENNETH CHEWEY

1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   Nicole D. Sugnet (State Bar No. 246255)
    LIEFF CABRASER HEIMANN
3   & BERNSTEIN LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA  94111
    Telephone:  (415) 956-1000
5
    John A. Yanchunis (*pro hac vice application to be submitted*)
6   Rachel Soffin (*pro hac vice application to be submitted*)
    MORGAN & MORGAN
7   COMPLEX LITIGATION GROUP
    201 North Franklin Street, 7th Floor
8   Tampa, FL 33602
    Telephone: (813) 223-5505
9
10  Jean Sutton Martin (*pro hac vice application to be submitted*)
    LAW OFFICE OF JEAN SUTTON MARTIN PLLC
11  2018 Eastwood Road, Suite 225
    Wilmington, North Carolina 28403
12  Telephone:  (910) 292-6676
13
    Attorneys for Plaintiffs
14

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18

19  Marcus A. Roberts, Kenneth A. Chewey    | Case No. _____
    and Ashley M. Chewey, individually and
20  on behalf of themselves and all others   | **CLASS ACTION COMPLAINT**
    similarly situated,
21                        Plaintiffs,
22           v.                              | **DECLARATION MARCUS ROBERTS**
23  AT&T MOBILTY LLC,
24
                          Defendant.
25
26
27
28
                                            DECLARATION OF MARCUS ROBERTS

I, Marcus Roberts, hereby declare and state as follows:

1.      I am over the age of 18, and a Plaintiff in this action.  The facts contained in this declaration are based on my personal knowledge, and if called upon to do so, I could and would testify competently hereto.

2.      The complaint in this action, filed concurrently with this declaration, is filed in the proper place for trial under California Civil Code § 1780(d), because this is a county in which the Defendant does business and where a substantial portion of the transactions occurred.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on July 23, 2015, in JO. SAN Francisco, California.

Marcus Roberts

2

# EXHIBIT B

**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
t  415.956.1000
f  415.956.1008

July 23, 2015


**<u>VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED</u>**


**Glenn Lurie, President and CEO**
**AT&T Mobility, LLC**
**1025 Lenox Park Blvd. NE**
**Atlanta, GA 30319**


**Registered Agent for Service of Process**
**CT Corporation System**
**818 West Seventh Street, Suite 930**
**Los Angeles, CA 90017**

Re:    <u>Notice of Violation of California Consumer Legal Remedies Act</u>

Dear Mr. Lurie:

We represent Marcus Roberts, Kenneth Chewey, and Ashley Chewey, who purchased
AT&T Mobility, LLC ("AT&T") "unlimited" wireless phone plans.  All three have purportedly
been "grandfathered" into their unlimited plans and accordingly expect to be able to access and
use unlimited data on their phones.  We send this letter under the California Consumers Legal
Remedies Act, California Civil Code Section 1750 *et seq.* ("CLRA") to notify AT&T that its
practice of regularly throttling its unlimited plan subscribers' data, often without notice, when
their data usage exceeds certain undisclosed limits, violates the CLRA.  We demand that AT&T
rectify its violations within 30 days of receipt of this letter.

AT&T misrepresents to its "unlimited" service plan subscribers that the "unlimited" plan
offers "unlimited" web and data access and that consumers may use the data access to operate
their smartphones as virtual PCs by browsing the internet, streaming music and videos, or using
GPS navigation.  In reality, AT&T regularly throttles "unlimited" plan subscribers' data speeds
once they have used 3GB or 5GB of data, often without notice.  AT&T fails to truthfully and
adequately disclose its throttling practice.  AT&T, for example, does not inform its subscribers as
to the drastically reduced speeds at which they will be throttled and how that will impact their
data usage, or that their data will be throttled once they have exceeded the data usage limits
regardless of whether AT&T's network is congested at the time.

Relying on AT&T's promise of "unlimited" data, in 2008, Marcus Roberts purchased an
iPhone 3G with an AT&T "unlimited" data plan.  Each time Mr. Roberts subsequently upgraded
to a newer version of the iPhone, AT&T offered to grandfather him into his "unlimited" plan,

which he accepted.  In 2012, Mr. Roberts began noticing that, by the middle of the month, his internet connection was drastically slower and his ability to download was severely hampered. On or about July 6, 2015, AT&T sent Mr. Roberts a text stating that he had used 75% of a supposed 5GB allotment of data usage, and that he may experience reduced speeds once he exceeded that allotment.  This was the first notice regarding AT&T's throttling practice that Mr. Roberts received from AT&T, and even it failed to disclose the true nature of AT&T's practice by deceptively suggesting that his speeds "may" be slowed when in fact AT&T ***always*** throttles "unlimited" subscribers' data once they exceed the secret data usage caps.

Similarly, Kenneth and Ashley Chewey purchased an iPhone 3G with an AT&T family share plan purportedly providing "unlimited" data in late 2009.  In 2011, the Cheweys began notice that around the middle of the month, their internet connection was significantly slower and they were unable to use their iPhone for certain purposes.  After noticing the issue, Mr. Chewey called AT&T.  A customer service representative falsely told him that the problem was attributable to being in a high congestion area.  Subsequent to this conversation, the Cheweys have noticed that their data has been severely slowed on other occasions, sometimes to the point where they are unable to use the internet at all.  On or about July 7, 2015, AT&T sent Mr. Chewey two messages stating that he was reaching a data usage limit.  This was the first indication from AT&T that the Cheweys' "unlimited" plan had any data restrictions.

AT&T's material misrepresentations, active concealment, and failures to disclose violated the CLRA in the following manner:

1.  AT&T misrepresented that its phones and "unlimited" data plans had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

2.  AT&T misrepresented its that its phones and "unlimited" data plans were of a particular standard, quality, and/or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

3.  AT&T advertised that its phones and "unlimited" data plans with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

4.  AT&T misrepresented that that its phones and "unlimited" data plans conferred or involved rights, remedies, or obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

5.  AT&T misrepresented that that its phones and "unlimited" data plans were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16));

July 23, 2015
Page 3

6.      AT&T inserted unconscionable provisions in its Wireless Customer Agreement
        and other agreements, including an arbitration clause with a class action ban
        (Cal. Civ. Code § 1770(a)(19)).

We demand that within thirty (30) days of receiving this letter, AT&T agree to (1) refrain
from engaging in the deceptive practices described above at any time in the future; and
(2) return all money that AT&T "unlimited" subscribers paid for "unlimited" plans.  If AT&T
refuse to provide the demanded relief within thirty (30) days, we will seek compensatory and
punitive damages, restitution, and any other appropriate equitable relief.

We sincerely hope to confer with you to resolve these violations without the need for
litigation. I invite you to contact me to discuss this demand at any time. I can be reached at (415)
956-1000 ext. 2230 or nsugnet@lchb.com. I look forward to hearing from you.

Very truly yours,

Nicole D. Sugnet

# EXHIBIT C

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Registered Agent for Service of Process
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

2. Article Number (Transfer from service label)

7015 0640 0006 1268 7241

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

9590 9403 0033 5071 9293 87



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
EMBARCADERO CENTER WEST
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339

USPS TRACKING #

9590 9401 0033 5073 4293 87