1  MICHAEL W. SOBOL (State Bar No. 194857)
   msobol@lchb.com
2  ROGER N. HELLER (State Bar No. 215348)
   rheller@lchb.com
3  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  415.956.1000
5  Facsimile:  415.956.1008

6  *Attorneys for Plaintiffs and the Proposed Class*

7  (additional counsel listed on signature page)

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11

12  MARCUS A. ROBERTS, KENNETH A.              Case No. 3:15-cv-03418-EMC
    CHEWEY, ASHLEY M. CHEWEY, and
13  JAMES KRENN, on behalf of themselves       **PLAINTIFFS' NOTICE OF MOTION AND**
    and all others similarly situated,         **MOTION FOR LEAVE TO FILE MOTION**
14                                             **FOR RECONSIDERATION OF AMENDED**
                   Plaintiffs,                 **ORDER GRANTING DEFENDANT'S**
15                                             **MOTION TO COMPEL ARBITRATION**
    v.                                         **AND STAYING PROCEEDINGS (DKT.**
16                                             **60); MEMORANDUM OF POINTS AND**
    AT&T MOBILITY LLC,                         **AUTHORITIES IN SUPPORT THEREOF**
17
                   Defendant.
18
                                              The Honorable Edward M. Chen
19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that pursuant to Civil Local Rule 7-9(b)(2), Plaintiffs Marcus A. Roberts, Kenneth A. Chewey, Ashley M. Chewey, and James Krenn ("Plaintiffs") hereby move this Court for an order granting them leave to file a motion for reconsideration of this Court's April 27, 2016 Amended Order Granting Defendant's Motion to Compel Arbitration and Staying Proceedings (the "Arbitration Order"; Dkt. 60). Pursuant to Civil Local Rule 7-9(b)(2), Plaintiffs respectfully contend, as further discussed below, that the Court should reconsider the Arbitration Order because of a "change of law occurring after the time of such order[.]"

This motion is based on Local Civil Rule 7-9(b)(2), the Arbitration Order, this Notice of Motion and the accompanying memorandum, the record in this action, any argument presented, and all matters which the Court may consider.

### STATEMENT OF ISSUE TO BE DECIDED

Did *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), including as it was applied in *McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017), constitute a change of law under Civil Local Rule 7–9(b)(2) meriting reconsideration of the Arbitration Order, because *McGill* rendered the parties' arbitration agreements null and void?

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiffs respectfully move this Court to reconsider its Arbitration Order (Dkt. 60) based on significant developments in the law since the Court last had jurisdiction before the interlocutory appeal. In *McGill v. Citibank, N.A.*, the California Supreme Court held that any pre-dispute contract—whether part of an arbitration agreement or otherwise—purporting to waive the right to seek the remedy of public injunctive relief in any forum is contrary to California public policy and thus unenforceable under California law. 393 P.3d at 87, 94. *McGill* further held that the Federal Arbitration Act (FAA) does not preempt this generally applicable rule of California law. *Id.* at 87, 94–97. Two other Courts within this District have recently concluded that *McGill*'s holding regarding the FAA was correct. *See McArdle*, 2017 WL 4354998, at *4; *Blair v. Rent-A-Center*, No. C 17-02335 WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017).

- 1 -

1    For example, in *McArdle*—which involved the ***same defendant*** as this case (AT&T Mobility

2    LLC; "ATTM") and the ***same or materially the same ATTM arbitration provision*** at issue in this

3    case—Judge Wilken granted a motion to reconsider, rescinded a prior order compelling

4    arbitration, and vacated an arbitral award, because *McGill* constituted an intervening change in

5    law and rendered the ATTM arbitration agreement unenforceable.  *McArdle*, 2017 WL 4354998.

6    Reconsideration and rescindment of the Arbitration Order in this case is appropriate for the same

7    reasons.

8    ## II.    BACKGROUND

9    Plaintiffs, three California residents and one Alabama resident, filed this putative class

10   action against ATTM for statutory, tort, and warranty claims based on ATTM's deceptive and

11   unfair marketing of its wireless service plans as "unlimited" when in fact those plans are subject

12   to limits including "throttling" (where customers' data speeds are intentionally slowed after

13   reaching certain data usage thresholds).  Dkt. 11.  ATTM moved to compel arbitration of

14   Plaintiffs' claims.  On February 29, 2016, this Court granted ATTM's motion (Dkt. 50).

15   Following reconsideration, on April 27, 2016, the Court entered an amended order (the

16   "Arbitration Order"; Dkt. 60) granting ATTM's motion and staying the action pending the

17   resolution of arbitration, concluding that Plaintiffs' First Amendment challenge to the arbitration

18   agreements failed because there was no state action.  Dkt. 60.  The Ninth Circuit affirmed on

19   December 11, 2017, and its mandate issued on January 2, 2018, transferring jurisdiction back to

20   this Court at that time.

21   ## III.    ARGUMENT

22   ### A.    There Has Been a Change in Law.

23   Over a year after this Court granted ATTM's motion to compel arbitration, and while this

24   case was pending on appeal, the California Supreme Court recognized a new generally applicable

25   rule of California law:  provisions of pre-dispute agreements that purport to waive the right to

26   seek the remedy of public injunctive relief in any forum are contrary to California public policy

27   and thus unenforceable under California law.  *McGill*, 393 F.3d at 87.  Public injunctive relief

28   "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR LEAVE TO MOVE FOR RECONSIDERATION
NO. 3:15-CV-03418-EMC

1    general public," and is one of the types of statutory relief available under the California Legal

2    Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), Unfair Competition Law ("UCL"; Cal. Bus. &

3    Prof. Code §§ 17200, *et seq.*), and False Advertising Law (Cal. Bus. & Prof Code §§ 17500 *et*

4    *seq.*).  *McGill,* 393 F.3d at 87.  The California Civil Code states that "a law established for a

5    public reason cannot be contravened by a private agreement."  *Id.* at 93 (citing Cal. Civ. Code

6    § 3513).  Moreover, the CLRA states that "[a]ny waiver by a consumer" of its provisions "is

7    contrary to public policy and shall be unenforceable and void."  Cal. Civ. Code § 1751.  Citing

8    this language in Cal. Civ. Code §§ 1751 and 3513, and because the CLRA, UCL, and False

9    Advertising Law were each established for public reasons, *McGill* held that pre-dispute waivers

10   of the public injunctive relief available under these statutes are unenforceable.  *McGill*, 393 P.3d

11   at 94 (waiver "of the right to seek public injunctive relief under these statutes would seriously

12   compromise the public purposes the statutes were intended to serve").

13          *McGill*, including as it has been applied in this District in *McArdle*, constitutes a change in

14   law justifying reconsideration.  *See* Civil Local Rule 7-9(b)(2); *Sch. Dist. No. 1J, Multnomah*

15   *Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is

16   appropriate . . . if there is an intervening change in controlling law."); *McArdle*, 2017 WL

17   4354998, at *3 (*McGill* "represents a significant change in California law that occurred after this

18   Court's order compelling arbitration" and thus "constitutes a change in controlling law for the

19   purpose of reconsideration.").  *McGill* is binding on this Court's application of the California

20   claims.  *McArdle*, 2017 WL 4354998, at *3 (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174,

21   1203 (9th Cir. 2002)).

22          **B.      The FAA Does Not Preempt this Generally Applicable Contract Defense.**

23          The FAA does not preempt the *McGill* rule, which is permitted by the FAA's savings

24   clause.  The FAA requires courts to "place arbitration agreements on an equal footing with other

25   contracts, and enforce them according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563

26   U.S. 333, 339 (2011) (internal citations omitted).  However, the FAA's savings clause permits

27   courts to declare arbitration agreements unenforceable "upon such grounds as exist at law or in

28   equity for the revocation of any contract."  *Id.* (quoting 9 U.S.C. § 2).  Therefore, under the FAA,

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR LEAVE TO MOVE FOR RECONSIDERATION
NO. 3:15-CV-03418-EMC

1    arbitration agreements may be invalidated by "generally applicable contract defenses," but the

2    FAA preempts "defenses that apply only to arbitration or that derive their meaning from the fact

3    that an agreement to arbitrate is at issue." *Id.* The FAA also preempts state-law rules that are

4    "applied in a fashion that disfavors arbitration," *id.* at 341, or that "interfere[] with fundamental

5    attributes of arbitration." *Id.* at 344.

6         The *McGill* rule is a generally applicable contract defense. *McGill*, 393 P.3d at 94–95. It

7    derives from a statutory ground in the California Civil Code for revoking *any* contract: "a law

8    established for a public reason cannot be contravened by a private agreement." Cal. Civ. Code

9    § 3513. Unlike, for example, the California rule prohibiting parties from compelling public

10   injunctive claims to be resolved through arbitration—a rule that applies only to arbitration

11   agreements, and which the Ninth Circuit therefore concluded was preempted by the FAA—the

12   *McGill* rule addresses contracts that would prohibit *both* arbitration *and litigation* of public

13   injunctive claims in *any* forum. *Blair*, 2017 WL 4805577, at *4; *McGill*, 393 P.3d at 90. The

14   same distinction exemplifies how the *McGill* rule does not disfavor arbitration: under the *McGill*

15   rule, "parties *can* compel public injunctive claims to arbitration. [The rule] merely prohibits

16   contracts that waive such claims altogether." *Blair*, 2017 WL 4805577, at *5; *Cf., e.g.*, *Sharp*

17   *Corp. v. Hisense USA Corp.*, No. 17-CV-03341-YGR, 2017 WL 6017897, at *4 n.1 (N.D. Cal.

18   Dec. 5, 2017) (arbitration agreement did "not purport to waive the right to public injunctive relief,

19   but only to require all claims, including those that seek public injunctive relief, to be compelled to

20   arbitration").

21        Nor does the *McGill* rule interfere with fundamental attributes of arbitration. *See*

22   *Concepcion*, 563 U.S. at 346–51. In fact, *McGill* does not directly affect arbitration procedures at

23   all. *McGill*'s invalidation of contract provisions purporting to bar or waive public injunctive

24   relief in any forum permits such claims to proceed in court or arbitration (depending on the

25   parties' agreement), but leaves any other claims subject to arbitration unaffected. To the extent it

26   might result in parties arbitrating public injunctive claims when that was not the intent of their

27   agreement, such claims require no extra procedures or formality. *McArdle*, 2017 WL 4354998, at

28   *4 ("[C]laims for public injunctive relief do not require burdensome procedures that could stand

- 4 -

1    as an obstacle to FAA arbitration.  On the contrary, the parties are free to contract for any

2    procedures they choose for arbitrating, or litigating, public injunctive relief claims.").

3          The U.S. Supreme Court has distinguished the kind of procedural provisions preempted

4    by the FAA, such as provisions forbidding class arbitration, from waivers of substantive rights

5    such as "a party's right to pursue statutory remedies."  *Am. Express Co. v. Italian Colors*

6    *Restaurant*, 570 U.S. 228, 133 S. Ct. 2304, 2310 (2013).  *Italian Colors* stated explicitly that the

7    FAA does *not* require enforcement of arbitration agreements "forbidding the assertion of certain

8    statutory rights" or "eliminat[ing] . . . [the] right to pursue [a] statutory remedy."  *Id.* at 2310–11.

9    The *McGill* rule targets the waiver of statutory remedies, and is thus the kind of rule *Italian*

10   *Colors* recognized as not preempted by the FAA.

11         Accordingly, three courts have held that the *McGill* rule is not preempted by the FAA.

12   *Blair*, 2017 WL 4805577, at \*4–5; *McArdle*, 2017 WL 4354998, at \*3–4; *McGill*, 393 P.3d at 94–

13   95.  Plaintiffs are aware of no cases reaching the opposite conclusion.

14         **C.     ATTM's Arbitration Clause is Unenforceable under *McGill*.**

15         Plaintiffs seek the same type of public injunctive relief at issue in *McGill*, as evidenced

16   both by the general type of wrong Plaintiffs allege ATTM committed and the specific California

17   statutes under which Plaintiffs seek injunctive relief (the CLRA, UCL, and False Advertising

18   Law).  Plaintiffs seek "to halt the dissemination of deceptive and misleading advertising, to

19   correct the deceptive and misleading perception Defendant has created in the minds of

20   consumers, and to obtain redress for those consumers who have purchased AT&T 'unlimited'

21   data service plans."  Dkt. 11, ¶ 6, Prayer for Relief.  Plaintiffs specifically seek a public injunction

22   under the UCL, False Advertising Law, and CLRA.  *Id.* at ¶¶ 98, 106, 120.

23         Plaintiffs' allegations focus substantially on ATTM's deceptions (e.g., "Defendant Falsely

24   Advertises," "Imposes Secret" limits, fails to "Adequately Disclose," and "Mislead[s]

25   Consumers,"), which Plaintiffs allege are ongoing, *see id.* at ¶ 31 ("Defendant continues to

26   mislead customers to this day"), ¶¶ 37, 45; *see also McGill*, 393 P.3d at 91 (noting that plaintiff's

27   allegation that deceptive conduct is ongoing supports conclusion that she seeks public injunctive

28   relief).  Plaintiffs also allege that ATTM continues to engage in the throttling and other limiting

1    practices that are contrary to its "unlimited" promises.  Dkt. 11, ¶ 45.

2            As *McGill* explained:

3        [A]n injunction under the CLRA against a defendant's deceptive methods, acts,
         and practices generally benefits the public directly by the elimination of deceptive
4        practices and will not benefit the plaintiff directly, because the plaintiff has
         already been injured, allegedly, by such practices and is aware of them.  Even if a
5        CLRA plaintiff stands to benefit from an injunction against a deceptive business
         practice, it appears likely that the benefit would be incidental to the general public
6        benefit of enjoining such a practice.

7    393 P.3d at 89–90 (citations omitted).  The same applies for injunctive relief under the UCL and

8    false advertising law.  *See id.* at 90.   As the California Supreme Court held in *McGill*: "By

9    definition, the public injunctive relief available under the UCL, the CLRA, and the false

10   advertising law . . . is primarily for the benefit of the general public."  *Id.* at 94 (citation and

11   internal quotation marks omitted).  The injunctive relief Plaintiffs seek under these statutes would

12   benefit not just them and the putative class, but would have the "primary purpose and effect of

13   prohibiting unlawful acts that threaten future injury to the general public."  *Id.* at 90 (citation

14   omitted).[1]

15           Section 2.2(6) of ATTM's arbitration agreement purports to waive the right to seek such

16   relief.  It states:

17        The arbitrator may award declaratory or injunctive relief only in
         favor of the individual party seeking relief and only to the extent
18       necessary to provide relief warranted by that party's individual
         claim.  **YOU AND AT&T AGREE THAT EACH MAY BRING**
19       **CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS**
         **INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR**
20       **CLASS   MEMBER   IN   ANY   PURPORTED   CLASS   OR**

---

21   [1] Unlike in *Wright v. Sirius XM Radio Inc.*, where the court held that the plaintiff had sought only
     private relief, Plaintiffs here bring more than "vague, generalized allegations" of public injunctive
22   relief.  16–01688 JVS, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017).  To the extent *Wright*
     held that claims to enjoin deceptive behavior under the CLRA, UCL, or false advertising law are
23   not claims for public injunctive relief, that holding is contrary to binding California Supreme
     Court law.  *See McGill*, 393 P.3d at 94 (holding that injunctive claims under these three statutes
24   "by definition" seek public injunctive relief); *see also McArdle*, 2017 WL 4354998, at *1.  The
     claims and relief sought here are also readily distinguishable from those in *Kilgore v. KeyBank,*
25   *N.A.*, 718 F.3d 1052, 1060-61 (9th Cir. 2013) (en banc), which also predated *McGill* and its
     confirmation that the exact type of relief sought here constitutes public injunctive relief covered
26   by the *McGill* rule, and *McArdle*.  Plaintiffs further note that, even if they did not *seek* the type of
     public injunctive relief covered by the *McGill* rule (which they did), ATTM's arbitration clause
27   would still be unenforceable in any event because the clause bans seeking all types of public
     injunctive relief in any forums.  Such a ban renders the clause unenforceable under *McGill*
28   regardless of which claims a particular plaintiff might bring.

PLAINTIFFS' NOTICE OF MOTION AND MOTION
                                        FOR LEAVE TO MOVE FOR RECONSIDERATION
                                                NO. 3:15-CV-03418-EMC

1

2

3

     **REPRESENTATIVE PROCEEDING.** Further, unless both you
and AT&T agree otherwise, the arbitrator may not consolidate more
than one person's claims and may not otherwise preside over any
form of a representative or class proceeding.

4  Dkt. 30-2, § 2.2(6) (emphasis in original). This language expressly bars the arbitrator from

5  granting the type of broadly applying injunctive relief that would benefit the public at large,

6  which the CLRA, UCL, and False Advertising Law all authorize. This provision is substantively

7  indistinguishable from the provision at issue in *McGill*. *See* 393 P.3d at 90 (quoting arbitration

8  agreement barring arbitrator from awarding relief for any non-party or on a non-individual basis).

9  Indeed, ATTM agreed in *McArdle* that § 2.2(6) "purports to waive the arbitrator's ability to award

10  public injunctive relief." *McArdle*, 2017 WL 4354998, at \*4. Moreover, the broad scope of

11  § 2.2(1) of ATTM's arbitration agreement, which purports to require the parties to arbitrate all

12  disputes and claims between them, means that Plaintiffs cannot litigate claims for public

13  injunctive relief in court either, such that the purported waiver in § 2.2(6) would bar Plaintiffs

14  from seeking public injunctive relief in any forum. *See id.* This is unenforceable under *McGill*.

15  393 P.3d at 87. Indeed, a court in this District recently held this exact same provision

16  unenforceable under *McGill* in a case between this same Defendant and another plaintiff.

17  *McArdle*, 2017 WL 4354998, at \*4; *cf. O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547, 563 (N.D.

18  Cal. 2015) (Chen, J.) (finding blanket PAGA waiver unenforceable as a matter of public policy

19  under California Supreme Court's ruling in *Iskanian*).

20

21

    **D.**   **Because Section 2.2(6) Is Unenforceable, that Section's "Poison Pill"
         Provision Renders the "Entirety" of the Arbitration Agreements "Null and
         Void," Requiring the Court to Rescind Its Order Compelling Arbitration.**

22     Section 2.2(6) of ATTM's arbitration agreement concludes with a "poison pill":  "If this

23  specific provision is found to be unenforceable, then the entirety of this arbitration provision shall

24  be null and void." Dkt. 30-2, § 2.2(6). This language means that the full arbitration agreement

25  (§ 2.2) is "entirely . . . null and void" if *McGill* renders § 2.2(6) unenforceable. As the Ninth

26  Circuit has recognized, the drafters of arbitration agreements sometimes "agree *ex ante* to litigate

27  high stakes claims if they find arbitration's informal procedures unsuitable," and that may be

28  what Defendant intended here. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 437 (9th

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR LEAVE TO MOVE FOR RECONSIDERATION
NO. 3:15-CV-03418-EMC

1    Cir. 2015).  Regardless, the language ATTM chose to include here unambiguously means that if

2    *McGill* applies to invalidate § 2.2(6) (which it does) the entire arbitration clause is null and void.[2]

3    The *McArdle* court voided this same arbitration clause, in its entirety, for this very reason.

4    2017 WL 4354998, at *5.  In *McArdle*, ATTM had argued that § 2.2(6)'s "null and void"

5    language applied only to the particular claim(s) of which waiver was found to be unenforceable,

6    in which case only those particular claims could be litigated while other claims (e.g., claims not

7    for public injunctive relief) would remain subject to arbitration.  *Id.*  The court disagreed,

8    concluding that § 2.2(6) left "no room for doubt" and "unambiguously" rendered the arbitration

9    agreement void for *all* claims.  *Id.* ("Defendants' proposed construction of this sentence ignores

10   the agreement's use of the word 'entirety' and attempts to read in limiting language that does not

11   exist, such as adding the words 'as to the specific claim' at the end of the paragraph.").  The same

12   contractual language here bears the exact same meaning in this case:  *McGill* plus the poison pill

13   voids ATTM's arbitration agreement in its entirety for all claims.

**E.    Plaintiffs' Moved with Reasonable Diligence By Filing this Motion Shortly After this Court Regained Jurisdiction.**

16   Plaintiffs have moved with reasonable diligence in seeking leave to file a motion for

17   reconsideration, as required by Civil Local Rule 7–9(b).  As the Court is aware, when Plaintiffs

18   appealed the Court's Arbitration Order to the Court of Appeals, "jurisdiction over any matters

19   involved in the appeal [were] immediately transferred from the district court to the court of

20   appeals."  *Matter of Thorp*, 655 F.2d 997, 998 (9th Cir. 1981).  While this case was pending on

21   appeal, the "district court [was] divested of authority to proceed further with respect to such

22   matters . . . until the mandate [was] issued by the court of appeals."  *Id.*  Lacking jurisdiction, this

23   Court lacked the power to consider this motion for leave or to reconsider its Arbitration Order

24   until the Ninth Circuit's mandate issued on January 2, 2018.  *Cf. City of L.A., Harbor Div. v.*

25   *Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has

26
_____

27   [2] The "poison pill" language in ATTM's arbitration clause unambiguously is triggered here, as Judge Wilken found in *McArdle* regarding the exact same language.  Even if there were any ambiguity, it would be resolved against ATTM which drafted the agreement.  *See Sandquist v.*

28   *Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016).

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR LEAVE TO MOVE FOR RECONSIDERATION
NO. 3:15-CV-03418-EMC

1   jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind,

2   or modify an interlocutory order for cause seen by it to be sufficient." (citation omitted).

3   Therefore, though *McGill* issued in April 2017, this Court was divested of authority to consider

4   its impact on this case until January 2, 2018.  Plaintiffs now promptly file this motion seeking

5   leave to file a motion for reconsideration after the issuance of the Ninth Circuit's mandate and

6   this Court's resumption of jurisdiction.

7   **IV.      CONCLUSION**

8          Plaintiffs respectfully request that this Court grant the motion for leave to file a motion for

9   reconsideration, rescind the Arbitration Order (Dkt. 60), and order the parties to proceed in court

10  on all claims.[3]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27  [3] All four plaintiffs, including the three California plaintiffs (Roberts, Chewey, and Chewey) and
Alabama plaintiff Krenn should be permitted to pursue their claims in Court. While it does not
appear Alabama courts have addressed *McGill*, *McGill*'s sound reasoning is likely to be
28  persuasive in other states, including Alabama.

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR LEAVE TO MOVE FOR RECONSIDERATION
NO. 3:15-CV-03418-EMC

1    Dated: January 19, 2018          Respectfully submitted,

2                                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3
                                      By:  */s/ Michael W. Sobol*
4                                         Michael W. Sobol (State Bar No. 194857)
                                          Roger N. Heller (State Bar No. 215348)
5                                         275 Battery Street, 29th Floor
                                          San Francisco, CA  94111-3339
6                                         Telephone:  415.956.1000
                                          Facsimile:  415.956.1008
7

8                                         Alexander H. Schmidt, Esq.
                                          Fairways Professional Plaza
9                                         5 Professional Circle
                                          Colts Neck, New Jersey 07722
10                                        Telephone: (732) 226-0004

11
                                          D. Anthony Mastando
12                                        Eric J. Artrip
                                          MASTANDO & ARTRIP, LLC
13                                        301 Washington St., Suite 302
                                          Huntsville, AL 35801
14                                        Telephone: (256) 532-2222

15
                                          Daniel M. Hattis (SBN 232141)
16                                        HATTIS LAW
                                          Post Office Box 1645
17                                        Bellevue, Washington  98009-1645
                                          Telephone: (650) 980-1990
18                                        Facsimile:  (425) 412-7171

19
                                          *Attorneys for Plaintiffs and the Proposed Class*
20

21
     1495606.1
22

23

24

25

26

27

28

- 10 -                                            PLAINTIFFS' NOTICE OF MOTION AND MOTION
                                                  FOR LEAVE TO MOVE FOR RECONSIDERATION
                                                  NO. 3:15-CV-03418-EMC