UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS A. ROBERTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 15-cv-03418-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 85 |

Plaintiffs initiated this putative class action suit against Defendant AT&T Mobility LLC ("AT&T"), asserting statutory, tort, and warranty claims based on AT&T's "deceptive and unfair trade practice of marketing its wireless service plans as being 'unlimited,' when in fact those plans are subject to a number of limiting conditions [in particular, throttling] that either are not disclosed or inadequately disclosed to consumers." FAC ¶ 1. The Court compelled arbitration with respect to the parties' dispute, and the Ninth Circuit affirmed. Approximately a month after the Ninth Circuit's decision, Plaintiffs filed a motion for leave to file a motion for reconsideration. More specifically, Plaintiffs asked the Court to reconsider its arbitration ruling because there is a new basis not previously considered by the Court as to why arbitration should not be compelled. The Court gave Plaintiffs leave to file a motion to reconsider and set a briefing schedule for the motion. Now pending before the Court is Plaintiffs' motion to reconsider.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to reconsider its arbitration ruling. On reconsideration, the Court now amends its arbitration order and **GRANTS** in part and **DENIES** in part AT&T's motion to compel arbitration. More specifically, the Court grants the

motion to compel arbitration as to James Krenn but denies the motion to compel as to Marcus A. Roberts, Kenneth A. Chewey, and Ashley M. Chewey.

## I. FACTUAL & PROCEDURAL BACKGROUND

In April 2016, the Court granted AT&T's motion to compel arbitration, rejecting Plaintiffs' contention that an order compelling arbitration would result in a First Amendment violation. *See* Docket No. 60 (order). Subsequently, the Court granted Plaintiffs' motion for an interlocutory appeal.

In December 2017, the Ninth Circuit affirmed this Court's arbitration order, noting, *inter alia*, that there was no state action to support Plaintiffs' First Amendment argument. *See* Docket No. 83 (Ninth Circuit opinion). Thus, with the Ninth Circuit's order, arbitration was compelled and the instant litigation was stayed.

Approximately a month later, however, Plaintiffs filed a motion for leave to file a motion for reconsideration. In the motion, Plaintiffs do not challenge the reasoning in the Court's prior order compelling arbitration or the Ninth Circuit's opinion affirming that order. Instead, Plaintiffs assert that there is a new legal basis establishing that arbitration should not be compelled in the instant case. More specifically, Plaintiffs argue that a decision of the California Supreme Court, issued in April 2017, constitutes a change in law occurring after the Court's arbitration order. In *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), the California Supreme Court held that an arbitration agreement that waives the right to seek the statutory remedy of public injunctive relief (under § 17200 and the CLRA) in any forum is contrary to California public policy and therefore unenforceable. The Court further held that the FAA does not preempt that California rule under the U.S. Supreme Court's *Concepcion* decision. Plaintiffs note that numerous judges in this District have relied on *McGill* as a basis to deny a motion to compel arbitration, including a case against AT&T. *See McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 U.S. Dist. LEXIS 162751 (N.D. Cal. Oct. 2, 2017) (in a case where plaintiff alleged that AT&T deceptively charged exorbitant international roaming fees for calls that customers did not answer, voicemail they did not check, and calls they did not place, granting plaintiff's motion for reconsideration of arbitration order, rescinding that order, and vacating the arbitral award); *Blair v. Rent-a-Center,*

2

1  *Inc.*, No. C-17-2335 WHA (Docket No. 82) (order, filed on October 25, 2017) (in a case where
2  plaintiffs alleged that Rent-A-Center's rent-to-own agreements set prices in excess of the
3  maximum installment payment rates allowable under California law, denying motion to compel
4  arbitration with respect to, *inter alia*, plaintiff's § 17200 and CLRA claims); *Tillage v. Comcast
5  Corp.*, No. C-17-6477 VC (N.D. Cal.) (Docket No. 37) (order, filed on February 15, 2018) (in a
6  case where plaintiffs alleged that Comcast falsely advertises and promotes its cable television
7  service packages for much lower prices than it actually charges in order to induce consumers to
8  subscribe its services, denying motion to compel arbitration).

## II.  DISCUSSION

### A.  Reasonable Diligence in Bringing Motion

As an initial matter, AT&T argues that the Court should not even consider the merits of Plaintiffs' motion because of a procedural error on their part – *i.e.*, they could have raised the *McGill* issue earlier in the litigation but failed to do so.

Plaintiffs do not dispute that, even in a case where no final judgment has yet been entered, a party moving for reconsideration must show reasonable diligence.  *See* N.D. Cal. Civ. L.R. 7-9(b) (providing, *inter alia*, that a party moving for leave to file a motion for reconsideration "must specifically show reasonable diligence in bringing the motion" and one of three other elements); *cf. Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 89 (9th Cir. 2000) (noting that "[a] Rule 59(e) motion [to alter or amend a final judgment] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation"). Plaintiffs contend, however, that they acted with reasonable diligence in bringing the *McGill* issue to this Court's attention.

According to AT&T, Plaintiffs could – with reasonable diligence – have made the same argument that the plaintiff made in *McGill* before April 2017, when the California Supreme Court ruled in the *McGill* plaintiff's favor.  AT&T argues Plaintiffs could have done so because (1) *McGill*'s ruling was based on California statutes that "were enacted decades ago"; (2) *McGill*'s ruling was "simply a variant of California's long-standing public-policy rule against compelling arbitration [that] dates back to 1999; and (3) the California Supreme Court granted review in

3

1  *McGill* in April 2015 (*i.e.*, even before this Court issued its order compelling arbitration). AT&T
2  also argues that, even before the California Supreme Court granted review in *McGill*, "some of the
3  same counsel who represent plaintiffs here had argued [in other cases] for the rule later adopted in
4  *McGill*." Opp'n at 1 (citing *Frankel v. Citicorp Ins. Servs., Inc.*, No. 11-CV-2293 (NGG) (RER),
5  2015 U.S. Dist. LEXIS 139937, at *6 (E.D.N.Y. Oct. 13, 2015) (taking note of plaintiff's
6  contention that "the arbitration agreement prevents him from effectively vindicating his state
7  statutory right to seek a public injunction")).
8        While AT&T's argument is not without basis, the Court is not persuaded. While the
9  *McGill* issue may have been percolating at the time Plaintiffs opposed AT&T's motion to compel
10  arbitration here, there had been no favorable court rulings. In fact, the Ninth Circuit had issued an
11  unfavorable ruling on a related issue – *i.e.*, that California's *Broughton-Cruz* rule, which
12  prohibited parties from compelling public injunctions to arbitration, was preempted by the FAA
13  because such a rule disfavored arbitration. *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d
14  928, 929 (9th Cir. 2013) (noting that the *Broughton-Cruz* rule "exempts claims for 'public
15  injunctive relief' from arbitration" and concluding that the rule is preempted by the FAA).
16        The Court also finds that Plaintiffs acted with reasonable diligence once there was a ruling
17  favorable to them – *i.e.*, *McGill*. As noted above, *McGill* was issued while the appeal of this
18  Court's arbitration order was before the Ninth Circuit. Thus, this Court did not have jurisdiction
19  to entertain a new argument against arbitration until the Ninth Circuit issued a ruling on the
20  appeal. Once the Ninth Circuit did issue its decision in December 2017, Plaintiffs filed their
21  motion for leave to file a motion to reconsider within approximately a month.
22  B.    <u>*McGill*</u>
23        Having determined there is no procedural bar to Plaintiffs' motion to reconsider, the Court
24  now turns to the merits of the motion. The merits analysis must begin with an evaluation of
25  *McGill*.
26        In *McGill*, the California Supreme Court addressed the validity of a provision in an
27  arbitration agreement that waived the right to seek "public injunctive relief" for an alleged
28  violation of a statute such as the California Consumer Legal Remedies Act ("CLRA") or

4

California Business & Professions Code § 17200. *McGill*, 2 Cal. 5th at 951. The California Supreme Court held that (1) such a provision is unenforceable because it is contrary to California public policy, and (2) this rule of California law is not preempted by the Federal Arbitration Act ("FAA").[1]

The plaintiff in *McGill* was an individual who opened a credit card account with Citibank. She purchased from Citibank a "credit protector" plan; under the plan, Citibank agreed to defer or credit certain amounts on her credit card account when certain qualifying events took place (*e.g.*, long-term disability, unemployment). The plaintiff submitted a claim to Citibank under the plan after she lost her job. She later filed suit against Citibank based on its marketing of the plan and its handling of her claim. The plaintiff's claims included violations of the CLRA and § 17200. For relief, the plaintiff asked, *inter alia*, for "an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practices." *Id.* at 953. This constituted "public injunctive relief" – *i.e.*, "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.* at 951. Public injunctive relief by and large benefits the general public and benefits the plaintiff – if at all – only incidentally or as a member of the general public; in contrast, private injunctive relief primarily resolves a private dispute between parties, rectifies individual wrongs, and benefits the public – if at all – only incidentally. *See id.* at 955.

Citibank moved to compel arbitration. In response, the plaintiff argued that the arbitration

---

[1] AT&T argues that the Court should not grant reconsideration because *McGill* was not a change in *controlling* law. But Civil Local Rule 7-9(b)(2) simply requires "[t]he emergence of new material facts or a change of law occurring after the time of such order." Civ. L.R. 7-9(b)(2). The Local Rule does not refer to a change in *controlling* law. *Compare Kona*, 229 F.3d at 890 (indicating that, where a motion to reconsider is brought after final judgment pursuant to Rule 59(e), the motion "'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the *controlling* law'") (emphasis added).

Furthermore, even if a change in the controlling law were required, *McGill* was a change in the controlling law. Admittedly, *McGill* was not controlling law as to whether there was FAA preemption of a state law rule; however, *McGill* was controlling law as to the state law rule itself, the decision having been rendered by the California Supreme Court. Prior to *McGill*, the Supreme Court had not held that contractual waivers of public injunctive relief in any forum violated public policy.

provision was not enforceable. The plaintiff did *not* argue that agreements to arbitrate for public injunctive relief under the CLRA or § 17200 are not enforceable.[2] Instead, the plaintiff argued that the arbitration agreement was unenforceable because it prohibited her from pursuing public injunctive relief in any forum – arbitration or otherwise. *See id.* at 953, 956. This was because the arbitration agreement contained the following provisions: (1) "'[a]n award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute'"; (2) "'[t]he arbitrator will not award relief for or against anyone who is not a party'"; and (3) "'the arbitrator may award relief only on an individual (non-class, nonrepresentative) basis.'" *Id.* at 956. Citibank specifically agreed with the plaintiff that the arbitration agreement barred her from seeking public injunctive relief in any forum, including in court and in arbitration. *See id.*

Because the arbitration agreement barred the plaintiff from seeking public injunctive relief in any forum, it was invalid and unenforceable. The California Supreme Court explained:

> Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Consistent with this provision, we have explained that "a party may waive a statutory provision if a statute does not prohibit doing so, the statute's 'public benefit . . . is merely incidental to [its] primary purpose,' and 'waiver does not seriously compromise any public purpose that [the statute] was intended to serve.'" By definition, the public injunctive relief available under [§ 17200 and] the CLRA . . . is primarily "for the benefit of the general public." Its "evident purpose" . . . is "to remedy a public wrong," "not to resolve a private dispute," and any benefit to the plaintiff requesting such relief "likely . . . . would be incidental to the general public benefit of enjoining such a practice." Accordingly, the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration provision here purports to waive [the plaintiff's] right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law.

---

[2] As noted above, in *Ferguson*, the Ninth Circuit "held that California's *Broughton-Cruz* rule, which prohibited parties from compelling public injunctions to arbitration, was preempted by the FAA because such a rule disfavored arbitration." *Blair v. Rent-A-Center, Inc.*, No. C 17-02335 WHA, 2017 U.S. Dist. LEXIS 163979, at *12 (N.D. Cal. Oct. 3, 2017).

*Id.* at 961.

Having established the above state law rule, the California Supreme Court then went on to address the issue of whether that state law rule was preempted by the FAA pursuant to *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). The California Supreme Court concluded that the rule was not preempted. The Court noted that *Concepcion* simply requires courts to place arbitration agreements on equal footing with other contracts. Thus, an arbitration agreement cannot be invalidated by a state law contract defense that applies only to arbitration or that derives its meaning from the fact that an agreement to arbitrate was at issue. *See McGill*, 2 Cal. 5th at 961-62

> The contract defense at issue here – "a law established for a public reason cannot be contravened by a private agreement" – *is* a generally applicable contract defense, i.e., it is a ground under California law for revoking any contract. It is not a defense that applies only to arbitration or that derives its meaning from the fact that an agreement to arbitrate is at issue. As explained above, a provision in *any* contract – even a contract that has no arbitration provision – that purports to waive, in all fora, the statutory right to seek public injunctive relief under [§ 17200 or] the CLRA . . . is invalid and unenforceable under California law.

*Id.* (emphasis in original).

The California Supreme Court acknowledged that, under *Concepcion*, the FAA preempts even a generally applicable state law contract defense if the defense is applied in a fashion that disfavors arbitration or interferes with fundamental attributes of arbitration – *e.g.*, lower costs, greater efficiency and speed. *See id.* at 964. But it disagreed with the defendant that "the antiwaiver rule at issue here [no waiver of public injunctive relief] interferes with the fundamental attributes of arbitration in the same way as the *Discover Bank* antiwaiver rule regarding class procedures." *Id.* First, although the defendant argued that there was no basis to distinguish between class claims (in *Discover Bank*) and public injunctions (in *McGill*), there was in fact a basis to distinguish the two: public injunctions are a substantive statutory remedy whereas a class action is just a procedural device that enforces substantive law (it does not change that substantive law). *See id.* The court emphasized that, "[e]ven though a class arbitration waiver may make the statutory remedy 'not worth the expense' of pursuing, because the waiver does 'not constitute the

7

elimination of the *right to pursue* that remedy,' the FAA requires its enforcement." *Id.* (emphasis in original). Second, "invalidation of the waiver [of public injunctive relief] will not . . . interfere with an of arbitration's attributes" because the court was "not holding that [the plaintiff's] requests for such relief must . . . be arbitrated. Moreover, case law establishes that a stay of proceedings as to any inarbitrable claims is appropriate until arbitration of any arbitrable claims is concluded." *Id.* at 966.

In the wake of *McGill*, Judge Wilken issued a decision – namely, *McCardle*, 2017 U.S. Dist. LEXIS 162751 – favorable to the plaintiff and unfavorable to the defendant AT&T with respect to arbitration. In *McArdle*, the plaintiff alleged that AT&T deceptively charged exorbitant international roaming fees for calls that customers did not answer, voicemail they did not check, and calls they did not place. Judge Wilken first found that she was bound by *McGill*'s ruling that predispute waivers of public injunctive relief are contrary to California public policy. Judge Wilken then held, based on her own analysis, that the FAA did not preempt the *McGill* rule. Regarding preemption, she underscored that, in *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015), "the Ninth Circuit held that the FAA does not preempt California's rule, announced in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), barring the predispute waiver of representative claims under the Private Attorneys General Act of 2004." *McCardle*, 2017 U.S. Dist. LEXIS 162751, at *9. "[The Ninth Circuit] held that *Iskanian* 'expresses no preference regarding whether individual PAGA claims are litigated or arbitrated. It provides only that representative PAGA claims may not be waived outright.'" *Id.* Also, the *Iskanian* rule did not diminish parties' freedom to select informal procedures to arbitrate representative PAGA claims. *See id.* at *10. Judge Wilken concluded that the Ninth Circuit's analysis of the *Iskanian* rule was equally applicable to the case before her:

> The *McGill* rule is a generally-applicable contract defense. Moreover, claims for public injunctive relief do not require burdensome procedures that could stand as an obstacle to FAA arbitration. On the contrary, the parties are free to contract for any procedures they choose for arbitrating, or litigating, public injunctive relief. Therefore, the FAA does not preempt California's *McGill* rule.

8

1  *Id.* at *11; *see also Sakkab*, 803 F.3d at 434-35 (stating that a state law contract defense "interferes
2  with arbitration if . . . it prevents parties from selecting the procedures they want applied in
3  arbitration"; noting that "[t]he California rule at issue in *Concepcion*, which provided that class
4  action waivers in certain consumer contracts of adhesion were unconscionable, . . . impos[ed]
5  formal classwide arbitration procedures on the parties against their will" as "parties could not opt
6  out of the formal procedures of class arbitration because the procedures were required to protect
7  the due process rights of absent parties").

C.   FAA Preemption

The Court agrees with Judge Wilken's preemption analysis in *McArdle* and accordingly holds that the Ninth Circuit's reasoning in *Sakkab* is applicable to the instant case. If the California state law rule (*Iskanian*) prohibiting waiver of representative PAGA claims (in any forum) does not interfere with the fundamental attributes of arbitration, then it is difficult to see how the California state law rule (*McGill*) prohibiting waiver of public injunctive relief (in any forum) could.

In its opposition, AT&T argues that claims for public injunctive relief interfere with fundamental attributes of arbitration because "resolving a public-injunction claim requires considering the rights of affected consumers and other third parties" and therefore a public-injunction claim is "indistinguishable from the class-wide injunctive relief available in Rule 23(b)(2) class actions." Opp'n at 11-12. But this argument is not persuasive. First, representative PAGA claims are akin in similar ways to class claims; rights of third parties are affected as they may be bound by a PAGA judgment. *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014) (stating that, "'[b]ecause an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government"). Nevertheless, the Ninth Circuit in *Sakkab* held that the FAA did not preempt the *Iskanian* rule – parties could agree to any specific procedures to make litigation of the representative PAGA claim more efficient and less costly. *See Sakkab*, 803 F.3d at 439 ("[T]he *Iskanian* rule does not conflict with the FAA, because it leaves parties free to adopt

the kinds of informal procedures normally available in arbitration. It only prohibits them from opting out of the central feature of the PAGA's private enforcement scheme – the right to act as a private attorney general to recover the full measure of penalties the state could recover."); *see also id.* at 436 ("Whether a claim is technically denominated 'representative' is an *imperfect proxy* for whether refusing to enforce waivers of that claim will deprive parties of the benefits of arbitration. Instead, *Concepcion* requires us to examine whether the waived claims mandate procedures that interfere with arbitration, as the class claims in *Concepcion* did.") (emphasis added).

AT&T also argues that claims for public injunctive relief interfere with fundamental attributes of arbitration because "arbitrating a public-injunction claim . . . requires consideration of class-wide evidence, eviscerating the 'lower costs' and 'greater efficiency and speed' that arbitration is meant to achieve." Opp'n at 12. But in *Sakkab*, the Ninth Circuit pointed out that representative PAGA claims are not necessarily *procedurally* complex. *See Sakkab*, 803 F.3d at 438. "[T]he potential complexity of PAGA actions is a direct result of how an employer's liability is measured under the statute. . . . '[P]otential complexity should not suffice to ward off arbitration' where, as here, the complexity flows from the substance of the claim itself, rather than any procedures required to adjudicate it (as with class actions)." *Id.* Public injunction claims under, *e.g.*, 17200, are more akin to a representative PAGA claim than a Rule 23 class action. The issues of class notice and multi-faceted elements which inform class certification particularly under Rule 23(b)(3) do not obtain where a public injunction is sought under 17200. In fact, in the instant case, the "class-wide" evidence will likely be particularly straightforward, consisting, *e.g.*, of advertising common to all relevant markets and wireless customer agreements common to all relevant markets. Nor does it appear that crafting a public injunction as relief, assuming Plaintiffs were to prevail, would involve any particular complexities. There is nothing inherently complex that would interfere with fundamental attributes of arbitration should a public injunction claim be sent to arbitration.

AT&T asserts next that claims for public injunctive relief interfere with fundamental attributes of arbitration because "a public injunction can force a defendant to alter its business practices, products, or services for every one of its individual customers, potentially at great cost"

10

– *i.e.*, "the stakes of a public-injunction action are often just as great as those of a massive class action." Opp'n at 12. But the Ninth Circuit, in *Sakkab*, found a similar argument unpersuasive.

> We acknowledge that the Court in *Concepcion* . . . expressed concern that "class arbitration greatly increases risks to defendants" by aggregating claims and increasing the amount of potential damages. As the Court observed, arbitration is "poorly suited to the higher stakes of class litigation," because it does not provide for judicial review. Although PAGA actions do not aggregate individual claims, they may nonetheless involve high stakes. Defendants may face hefty civil penalties in PAGA actions, and may be unwilling to forego judicial review by arbitrating them. *It does not follow, however, that the FAA preempts the* Iskanian *rule just because the amount of civil penalties the PAGA authorizes could make arbitration a less attractive method than litigation for resolving representative PAGA claims.* By their nature, some types of claims are better suited to arbitration than others. But the FAA would not preempt a state statutory cause of action that imposed substantial liability merely because the action's high stakes would arguably make it poorly suited to arbitration. Nor, we think, would the FAA require courts to enforce a provision limiting a party's liability in such an action, even if that provision appeared in an arbitration agreement. The FAA contemplates that parties may simply agree *ex ante* to litigate high-stakes claims if they find arbitration's informal procedures unsuitable. By the same token, the FAA does not require courts to enforce agreements to waive the right to bring representative PAGA actions just because the amount of penalties an aggrieved employee is authorized to recover for the state makes the formal procedures of litigation more attractive than arbitration's informal procedures. Just as the high stakes involved in antitrust actions may cause parties to agree *ex ante* to exclude antitrust claims from arbitration, parties may prefer to litigate representative PAGA claims.

*Id.* at 437-38 (emphasis added). The same principle applies here. The magnitude of the stakes does not per se preclude arbitration.

Finally, AT&T maintains that any analogy to *Sakkab* is inappropriate. AT&T argues, for instance, that PAGA claims are unique in that they are claims brought on behalf of the state; "when private plaintiffs bring claims for injunctions under the UCL or CLRA, they are not 'proxies' for the State." Opp'n at 20. But AT&T has failed to explain why this distinction is material to the question of preemption. In both PAGA and public injunction cases, relief is sought for parties beyond the individual plaintiff. That fact alone does not require preemption.

D.  Severance

AT&T protests that, even if there is no FAA preemption of the *McGill* rule (*i.e.*, no waiver

11

1  of public injunctive relief), that does not mean that this litigation should therefore promptly

2  proceed. Rather, AT&T argues, the arbitration on the merits should proceed first and, if Plaintiffs

3  prevail on liability, then they may come to the Court to ask for the remedy of public injunctive

4  relief. *See* Opp'n at 21-22. In response, Plaintiffs argue that AT&T is barred from asking for this

5  procedure because there is a provision in the arbitration agreement – a "poison pill" – that

6  specifies that, where part of the arbitration agreement is unenforceable, the entire arbitration

7  agreement is rendered unenforceable. Plaintiffs point to § 2.2(6) in AT&T's customer agreement.

8  (The Court has included more than just § 2.2(6) below to give context for the provision.)

> Summary:
> Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department . . . . **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration sues a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** . . .
>
> . . . .
>
> 2.2   <u>Arbitration Agreement</u>
> (1) AT&T and you agree to arbitrate **all disputes and claims between us.** . . .
>
> . . . **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** . . .
>
> (2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute . . . .
>
> (3) After AT&T receives notice . . . , it will promptly reimburse you for your payment of the filing fee, unless your claim is for greater than $75,000. . . . The arbitration will be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes . . . of the American Arbitration Association . . . , as modified by this Agreement, and will be administered by the AAA. . . .

12

> (4) If, after finding in your favor, in any respect on the merits of your claim, the arbitrator issues you an award that is greater than the value of AT&T's last written settlement offer made before an arbitrator was selected, then AT&T will:
>
> . . . .
>
> (5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. . . .
>
> (6) The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding. *If this specific provision is found to be unenforceable, then the entirety of the arbitration provision shall be null and void.*

Docket No. 30 (Headley Decl., Ex. 2) (Wireless Customer Agreement) (bold in original; italics added).

The sentence italicized above is the critical part of § 2.2(6). As indicated above, Plaintiffs argue that, under § 2.2(6), if § 2.2(6) is deemed unenforceable, then all of § 2.2 – *i.e.*, the entire arbitration agreement of which § 2.2(6) is only a part – is deemed null and void, and therefore all disputes between the parties (including those that do not implicate public injunctive relief) are not arbitrable.

AT&T disagrees, arguing that "[t]he straightforward meaning of the sentence is that if the bar on public injunctions were unenforceable, then no part of the arbitration provision applies ***to that claim*** – *i.e.*, the arbitration is 'null and void' in its 'entirety' only as to the 'party's individual claim' for 'declaratory or injunctive relief.'" Opp'n at 24 (emphasis in original). In other words, according to AT&T, the "entirety of the arbitration provision" as that phrase is used in § 2.2(6) means only § 2.2(6), and not the broader agreement to arbitration in § 2.2. AT&T maintains that this is the only interpretation that makes sense because the purpose behind § 2.2(6) is "to ensure that AT&T would not be forced into a class or representative arbitration – a real risk before

13

*Concepcion* preempted California's *Discover Bank* rule." Opp'n at 25. AT&T adds that Plaintiffs' interpretation must also be rejected because "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Opp'n at 25 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)).

Plaintiffs' interpretation of the arbitration provision is correct. As Judge Wilken held in *McCardle*, there is "no room for doubt," *McCardle*, 2017 U.S. Dist. LEXIS 162751, at *14 – *i.e.*, no ambiguity – with respect to the plain language of § 2.2(6).

> The language of the "poison pill" sentence unambiguously provides that "the entirety of this arbitration provision" shall be null and void" if subsection 2.2(6), waiving claims and relief on behalf of other persons, is found to be unenforceable. Defendants' proposed construction of this sentence ignores the agreement's use of the word "entirety" and attempts to read in limiting language that does not exist, such as adding the words "as to the specific claim" at the end of the paragraph.

*Id.* AT&T's interpretation ignores the term "entirely." It also ignores the fact that had it been so intended, the nullification provision could have referred to nullification of the "subsection" or "paragraph"; it did not. Instead, it refers to "the entirety of the arbitration provision."

E.   Miscellany

As a final argument, AT&T asserts that, even if the Court finds that the *McGill* rule is not preempted, at most, the Court should deny arbitration as to only one plaintiff, Mr. Roberts. According to AT&T, Mr. Krenn has no *McGill* argument because his claims for relief are governed by Alabama law, not California law. As for the Cheweys, although they are California residents, AT&T contends that, because they are no longer AT&T customers, any request for public injunctive relief is effectively moot.

The Court finds merit to AT&T's argument with respect to Mr. Krenn. That is, it is not clear that Alabama courts would rule the same as California courts regarding a waiver of public injunctive relief (in any forum). As for the Cheweys, however, whether they have standing to proceed on a claim for injunctive relief (public or otherwise) is an issue separate and distinct from the enforceability of the arbitration agreement. AT&T does not dispute that the Cheweys' customer agreement contained the problematic provision above barring public injunctive relief in

any forum (arbitration or otherwise). That renders the arbitration agreement in its entirety – per the poison pill – a nullity. AT&T may still argue to this Court that the Cheweys lack standing to pursue any claim for injunctive relief, but that does not change the fact that the forum for this standing argument is a judicial forum rather than an arbitral one. Their standing may be subject to further adjudication. Given that Mr. Roberts has standing, the Court may at this juncture properly declare the arbitration provision unenforceable.

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to reconsider and, on reconsideration, concludes that arbitration shall be compelled as to Mr. Krenn but not as to Mr. Roberts or the Cheweys.

This order disposes of Docket No. 85 and amends Docket No. 60.

**IT IS SO ORDERED**.

Dated: March 14, 2018

_____
EDWARD M. CHEN
United States District Judge