Michael W. Sobol (SBN 194857)
msobol@lchb.com
Roger N. Heller (SBN 215348)
rheller@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Proposed Class*

(additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARCUS A. ROBERTS, KENNETH A. CHEWEY, AND ASHLEY M. CHEWEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 3:15-cv-03418-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Date:    March 4, 2021<br>Time:    1:30 p.m.<br>Judge:  Hon. Edward M. Chen<br>Courtroom:    5 |

TO THE ABOVE-NAMED COURT AND TO THE PARTIES AND TO THEIR

ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 4, 2021, at 1:30 p.m. at 450 Golden Gate

Avenue, Courtroom 5, 17th Floor, San Francisco, CA, 94102, Plaintiffs Marcus A. Roberts,

Kenneth A. Chewey, and Ashley M. Chewey (collectively, "Plaintiffs") will and hereby do move

the Court for an order pursuant to Fed. R. Civ. P. 23(e)(1) granting Plaintiffs' Motion for

1    Preliminary Approval of Class Settlement and for Direction of Notice Under Rule 23(e).

2    Plaintiffs request that in this order the Court do the following:

3         a.      Grant preliminary approval of the parties' proposed Class Settlement Agreement

4    ("Settlement")[1];

5         b.      Certify, for settlement purposes, the Settlement Class as defined in the Settlement,

6    pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

7         c.      Appoint Plaintiffs as Settlement Class Representatives representing the Settlement

8    Class;

9         d.      Appoint Michael W. Sobol and Roger N. Heller of Lieff Cabraser Heimann &

10   Bernstein LLP; Daniel M. Hattis of Hattis Law; John A. Yanchunis, Sr. and Jean Sutton Martin of

11   Morgan & Morgan; Alexander H. Schmidt, Esq; and D. Anthony Mastando and Eric J. Artrip of

12   Mastando & Artrip, LLC as Settlement Class Counsel;

13        e.      Approve the proposed notice program in the Settlement, including the proposed

14   forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed.

15   R. Civ. P. 23(e)(1);

16        f.      Approve the proposed process set forth in the Settlement for Settlement Class

17   Members with Group B accounts to submit claims;

18        g.      Appoint Angeion Group, LLC ("Angeion Group") as Settlement Administrator

19   and direct Angeion Group to carry out the duties and responsibilities of the Settlement

20   Administrator specified in the Settlement;

21        h.      Set deadlines for Settlement Class Members to request exclusion from the

22   Settlement Class and to object to the Settlement, and for Settlement Class Members with Group B

23   accounts to submit claims;

24        i.      Stay all non-Settlement-related proceedings in this lawsuit pending final approval

25   of the Settlement; and

26        j.      Schedule a Fairness Hearing and certain other dates in connection with the final

27   approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

28   _____
[1] The Settlement is being filed herewith as Ex. A to the accompanying Declaration of Roger N. Heller ("Heller Decl.").

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement including all exhibits thereto, the declarations of the Plaintiffs and proposed Settlement Class Counsel filed herewith, the declaration of Steven Weisbrot of Angeion Group LLC filed herewith, the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

Dated: January 29, 2021                    Respectfully submitted,

                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                           By: */s/ Roger N. Heller*
                                                 Roger N. Heller (SBN 215348)
                                                 Michael W. Sobol (SBN 194857)
                                                 275 Battery Street, 29th Floor
                                                 San Francisco, CA 94111-3339
                                                 Telephone: 415.956.1000
                                                 Facsimile: 415.956.1008

                                                 Alexander H. Schmidt, Esq.
                                                 Fairways Professional Plaza
                                                 5 Professional Circle, Ste. 204
                                                 Colts Neck, New Jersey 07722
                                                 Telephone: (732) 226-0004

                                                 D. Anthony Mastando
                                                 Eric J. Artrip
                                                 MASTANDO & ARTRIP, LLC
                                                 301 Washington St., Suite 302
                                                 Huntsville, AL 35801
                                                 Telephone: (256) 532-2222

                                                 Daniel M. Hattis (SBN 232141)
                                                 HATTIS LAW
                                                 Post Office Box 1645
                                                 Bellevue, Washington 98009-1645
                                                 Telephone: (650) 980-1990
                                                 Facsimile: (425) 412-7171

                                                 John A. Yanchunis
                                                 Jean Martin
                                                 MORGAN & MORGAN
                                                 201 North Franklin Street
                                                 7th Floor
                                                 Tampa , Florida 33602
                                                 Telephone: (813) 275-5272

                                                 *Attorneys for Plaintiffs and the Proposed Class*

Michael W. Sobol (SBN 194857)
msobol@lchb.com
Roger N. Heller (SBN 215348)
rheller@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Proposed Class*

(additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARCUS A. ROBERTS, KENNETH A. CHEWEY, AND ASHLEY M. CHEWEY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br><br>        Defendant. | Case No. 3:15-cv-03418-EMC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Date:   March 4, 2021<br>Time:  1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom:   5 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.      Procedural History ................................................................................................. 2

II.     Settlement Class Counsel's Investigation and Discovery ................................... 3

III.    Settlement Negotiations ........................................................................................ 4

SUMMARY OF THE SETTLEMENT TERMS ................................................................ 4

I.      The Settlement Class ............................................................................................. 4

II.     The Settlement Fund ............................................................................................. 5

      A.     Payments to Settlement Class Members ................................................. 5

      B.     Administrative Costs ............................................................................... 7

      C.     Attorneys' Fees, Expenses, and Service Awards ................................... 8

III.    Notice Program ..................................................................................................... 8

      A.     Direct Notice to Settlement Class Members ........................................... 8

      B.     Settlement Website and Toll-Free Number............................................. 9

      C.     CAFA Notice ......................................................................................... 10

      D.     Claims Process for Group B Payments ................................................. 10

      E.     Opt-Out and Objection Procedures ...................................................... 10

IV.    Release ................................................................................................................. 11

ARGUMENT ...................................................................................................................... 11

I.      Overview of the Class Settlement Approval Process........................................... 11

II.     The Proposed Settlement Meets the Standards for Preliminary Approval ...................... 12

      A.     The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations (Fed. R. Civ. P. 23(e)(2)(B)) ........................................... 12

      B.     Plaintiffs and Settlement Class Counsel Have and Continue to Zealously Represent the Class (Fed. R. Civ. P. 23(e)(2)(A)) ................................. 13

      C.     The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation (Fed. R. Civ. P. 23(e)(2)(C)) ................................................................. 13

      D.     The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................... 17

      E.     The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii)) ................................................................................... 18

      F.     Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)). ................................................................................... 19

III.    The Court Should Provisionally Certify the Settlement Class............................. 19

      A.     The Requirements of Rule 23(a) are Satisfied ..................................... 20

            1.     Numerosity (Rule 23(a)(1))........................................................ 20

**TABLE OF CONTENTS**
**(continued)**

Page

2. Commonality (Rule 23(a)(2)) ..................................................................... 20

3. Typicality (Rule 23(a)(3)) .......................................................................... 20

4. Adequacy of Representation (Rule 23(a)(4)) .......................................... 21

B. The Requirements of Rule 23(b)(3) Are Satisfied ............................................... 21

IV. The Proposed Notice Program Complies with Rule 23 and Due Process ........................ 23

V. The Court Should Schedule a Fairness Hearing and Related Dates. ................................ 23

CONCLUSION ............................................................................................................................ 24

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................... 20, 22

5

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012) ................................................................................ 22

6

7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................ 12

8

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................. 12

9

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .............................................................................................. 23

10

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) .............................................................................. 21

11

12

*Hernandez v. Cty. of Monterey*,
   305 F.R.D. 132 (N.D. Cal. 2015) ......................................................................... 20

13

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ................................................................................ 22

14

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .............................................................................. 12

15

*In re Tracfone Unlimited Serv. Plan Litig.*,
   N.D. Cal. Case No. 13-cv-03440-EMC ............................................................... 17

16

17

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) .............................................................................. 20

18

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .............................................................................. 22

19

*McGill v. Citibank, N.A.*,
   393 P.3d 85 (Cal. 2017) .................................................................................... 2, 16

20

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................................ 20

21

22

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .......................................................................................... 21

23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................. 20

24

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .............................................................................. 22

25

**Other Authorities**

Cal. Code Civ. Proc. § 1501.5 ...................................................................................... 7

26

Cal. Code Civ. Proc. § 1531 .......................................................................................... 7

27

Fed. R. Civ. P. 23(a) ................................................................................... 2, 20, 21, 24

28

Fed. R. Civ. P. 23(b) ............................................................................................ passim

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3    Fed. R. Civ. P. 23(c) .................................................................................................. 23

4    Fed. R. Civ. P. 23(e) ............................................................................................. passim

**Rules**

5    *Manual for Compl. Litig.,* § 21.632 (4th ed. 2014) ........................................................ 19

6    **Treatises**

7    5 *Moore's Federal Practice—Civil* § 23.22 (2016) ....................................................... 20

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

After more than five years of litigation, the parties have reached an agreement to settle this case on a class basis.  Pursuant to the terms of the Settlement,[2] Defendant AT&T Mobility LLC ("AT&T") will pay Twelve Million Dollars ($12,000,000.00) to create a non-reversionary common Settlement Fund, from which payments will be made to Settlement Class Members.  All of the approximately 750,000 Settlement Class accounts that exceeded AT&T's data usage threshold, and were thus subject to throttling, under AT&T's pre-Congestion Aware Throttling (pre-"CAT") practice will automatically be issued payments.  And all Settlement Class accounts that exceeded AT&T's data usage threshold after AT&T's adoption of CAT, and thus were potentially throttled, will be eligible to submit simple claims for settlement payments.  Payments to current customers will be via automatic account credit, and payments to former customers will be via mailed check.  The payments under this Settlement are in addition to the payments previously received by Settlement Class Members through the stipulated judgment entered in the related FTC Action.[3]

The Settlement presented for the Court's consideration is fair, reasonable, and adequate, and warrants preliminary approval under applicable standards.  It is the product of hard-fought, arms-length negotiations between the parties through an experienced and well-respected mediator, Cathy Yanni, Esq. of JAMS.  It follows years of hard-fought litigation, including two appeals to the Ninth Circuit regarding AT&T's efforts to compel individual arbitration, a litigated motion to dismiss, and substantial discovery.  In negotiating the Settlement, the parties and their counsel were well informed about the issues, the strengths and weaknesses of their respective positions, and the risks faced by each side of continued litigation.

The Settlement also provides for a robust class notice program that includes direct notice to all Settlement Class Members via a combination of email, mail, and text message (SMS), as well as the establishment of a dedicated Settlement Website where Settlement Class Members can obtain additional information and submit claims as necessary, and an informational Toll-Free Number.  The proposed notice program comports with Rule 23, due process, and best practices.

Plaintiffs and their undersigned counsel believe the Settlement to be in the best interests of

---

[2] The Settlement is being filed herewith as Ex. A to the accompanying Heller Decl.
[3] *FTC v. AT&T Mobility LLC*, N.D. Cal., Case No. 14-cv-04785-EMC ("FTC Action").

1  the Settlement Class Members and seek to begin the Court approval process that is required for all

2  class action settlements.  Plaintiffs therefore respectfully request that the Court preliminarily

3  approve the Settlement, certify the Settlement Class for settlement purposes, direct notice to the

4  Settlement Class pursuant to the proposed notice program, schedule a Fairness Hearing, and grant

5  the related relief requested herein.

6  **BACKGROUND**

7  **I.  Procedural History**

8        Plaintiffs filed this case on July 24, 2015, asserting claims on behalf of themselves and a

9  proposed nationwide class and California subclass.  Plaintiffs alleged, generally, that AT&T

10  advertised wireless data plans as providing "unlimited" data, but applied undisclosed or

11  inadequately disclosed limitations, after which customers' data usage was subject to throttling.

12  Dkt. 1.  On August 6, 2015, this case was related to the FTC Action and reassigned to this Court.

13  Dkt. 7.  On September 3, 2015, Plaintiffs filed a First Amended Complaint, adding additional

14  allegations, one additional plaintiff, James Krenn, and a claim on behalf of a proposed Alabama

15  subclass.  Dkt. 11.

16        On November 2, 2015, AT&T moved to compel arbitration.  Dkt. 25.  The parties

17  conducted arbitration-related discovery and briefed AT&T's motion.  On February 29, 2016, the

18  Court granted AT&T's arbitration motion.  Dkt. 50.  After Plaintiffs moved for leave to seek

19  reconsideration, on April 27, 2016, the Court issued an amended order granting AT&T's arbitration

20  motion.  Dkt. 60 ("Arbitration Order").  On June 27, 2016, the Court granted Plaintiffs' request to

21  certify the Arbitration Order for interlocutory review pursuant to 28 U.S.C. § 1292(b).  Dkt. 69.  On

22  October 20, 2016, the Ninth Circuit granted Plaintiffs permission to appeal the Arbitration Order.

23  Following full briefing on this first appeal, on December 11, 2017, the Ninth Circuit affirmed the

24  Court's Arbitration Order.  Dkt. 83.

25        After the mandate issued, on remand Plaintiffs moved for leave to seek reconsideration of

26  the Arbitration Order in light of the California Supreme Court's intervening decision in *McGill v.*

27  *Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).  Following briefing, on March 14, 2018, the Court granted

28  Plaintiffs' motion for reconsideration, denied AT&T's motion to compel arbitration as to the

1   California Plaintiffs (Marcus A. Roberts, Kenneth A. Chewey, and Ashley M. Chewey), and

2   granted AT&T's motion to compel arbitration as to Alabama plaintiff James Krenn.  Dkt. 103

3   ("Reconsideration Order").

4        On April 6, 2018, AT&T noticed an appeal of the Reconsideration Order.  On June 22,

5   2018, the Court granted in part and denied in part AT&T's motion to stay proceedings, permitting

6   the parties to conduct certain discovery while AT&T's appeal was pending.  Dkt. 119.  The parties

7   engaged in the permitted discovery, as described below.  Following briefing on AT&T's appeal, on

8   February 18, 2020, the Ninth Circuit affirmed the Court's Reconsideration Order.  Dkt. 160.

9        In the meantime, in the FTC Action, AT&T and the FTC notified the Court that they had

10   reached a settlement.  Plaintiffs' counsel in this case appeared in the FTC Action to ensure that the

11   settlement and judgment there would not operate to release any of the Plaintiffs' or putative class

12   members' claims in this case, which AT&T confirmed.[4]

13        After the mandate issued following AT&T's appeal, on May 14, 2020, AT&T filed a

14   motion to partially dismiss Plaintiffs' First Amended Complaint.  Dkt. 169.  Plaintiffs opposed

15   AT&T's motion (Dkt. 182), and AT&T replied (Dkt. 184).  On July 2, 2020, the Court held a

16   hearing and granted in part and denied in part AT&T's motion.  Dkt. 188.  On August 3, 2020,

17   Plaintiffs filed their operative Second Amended Complaint, asserting claims on behalf of

18   themselves and a California class and adding additional allegations including regarding the CAT

19   iteration of AT&T's data management practice.  Dkt. 190 ("SAC").

20   **II.      Settlement Class Counsel's Investigation and Discovery**

21        The Settlement in this case was negotiated by counsel who were well-informed about the

22   issues and litigation risks as a result of their substantial investigation and discovery efforts.  Prior to

23   filing suit, and continuing through the course of the litigation, proposed Settlement Class Counsel

24   conducted an extensive investigation into the factual and legal issues raised in this litigation.  These

25   investigative efforts have included, *inter alia*, speaking with numerous AT&T wireless customers

26   over the years about their experiences, thoroughly investigating and analyzing AT&T's advertising,

27   data management policies, and disclosures, and investigating customer complaints and other

28

---

[4] *See generally* FTC Action Dkt. 190-202.

- 3 -

1   pertinent public information.  Proposed Settlement Class Counsel also extensively researched and

2   analyzed the legal issues regarding the claims pled and AT&T's defenses and potential defenses.

3   Heller Decl., ¶ 14.

4        Moreover, proposed Settlement Class Counsel conducted significant discovery in this case,

5   including reviewing hundreds of thousands of pages of internal documents produced by AT&T,

6   deposition transcripts from the FTC Action, and data regarding the number of affected customers.

7   Heller Decl., ¶ 15.  The parties were also informed by this Court's ruling on AT&T's motion to

8   dismiss and by the proceedings and judgment in the related FTC Action.  Heller Decl., ¶ 15.

9   **III.**    **Settlement Negotiations**

10       The Settlement is the product of hard-fought, arms-length negotiations.  The parties and

11  their counsel participated in an initial, full-day mediation with Cathy Yanni, Esq. of JAMS on

12  November 6, 2019, while AT&T's appeal of the Reconsideration Order was pending.  That first

13  session did not result in a settlement.  On September 15, 2020, the parties engaged in a second full-

14  day session with Ms. Yanni, after the resolution of both AT&T's appeal and AT&T's motion to

15  dismiss.  At the conclusion of the second session, the parties reached an agreement in principle to

16  resolve this case. The parties did not discuss the issue of Settlement Class Counsel's fees and

17  expenses as part of the negotiations (other than that any amount awarded would be paid from the

18  common settlement fund).  Since reaching an agreement in principle, the parties have worked

19  diligently to draft the written settlement agreement, notices, and other settlement exhibits, and to

20  select the proposed Settlement Administrator through a competitive bidding process.  Heller Decl.,

21  ¶¶ 16-17.

22  <u>**SUMMARY OF THE SETTLEMENT TERMS**</u>

23  **I.**    **The Settlement Class**

24       Plaintiffs seek certification under Rule 23(b)(3), for settlement purposes, of a "Settlement

25  Class," defined as:

26         All consumers residing in California (based on the accountholder's
       last known billing address) who purchased an unlimited data plan

27         from AT&T Mobility LLC and who, on or before the date of
       preliminary settlement approval, exceeded AT&T's applicable data

28         usage threshold for any user on the account for one or more

1
2

> monthly billing cycles such that the user would have been eligible
> for data usage slowing or deprioritization by AT&T in those billing
> cycles under AT&T's network management policies.

3   Entities or persons affiliated with AT&T or the Court are excluded.  AT&T does not oppose

4   certification of the Settlement Class, for settlement purposes only.  (Settlement §§ I.36, III)

5   Substantively, the Settlement Class definition tracks the proposed definition in the operative

6   SAC (Dkt. 190 ¶ 63), with the only differences being: (1) it adds an end date (the date of

7   preliminary approval) to the class period; (2) it clarifies that an account is included if one or more

8   user on such account exceeded the data threshold (even if the user in question is not the account's

9   "purchaser"—*e.g.*, a child/spouse of the account holder); and (3) it clarifies that all accounts that

10  exceeded the applicable data threshold are included.  The latter clarification was necessary because,

11  under the CAT iteration of AT&T's policy (adopted in 2014/2015), customers exceeding the data

12  threshold may (or may not) have been throttled (*i.e.*, slowed)—such customers' data usage was

13  "deprioritized" once they crossed the threshold for the monthly billing period (in essence, they were

14  moved back in the line, to a position where they might be throttled), but would only have actually

15  been slowed if and when they were also in a congested area during a congested time.  AT&T's

16  records for the CAT period show if the threshold was exceeded, but not whether the customer's

17  data was throttled.  For the *pre*-CAT period, all customers exceeding the data threshold in a

18  monthly service period were throttled pursuant to AT&T's policy.  (Settlement § I.I)

19  **II.     The Settlement Fund**

20  Under the Settlement, AT&T will pay Twelve Million Dollars ($12,000,000.00) to establish

21  a non-reversionary common Settlement Fund.  As detailed below, the Settlement Fund will be used

22  to pay:  the settlement payments to Settlement Class Members; the costs of notice and other costs of

23  the Settlement Administrator; and any attorneys' fees and expenses for Settlement Class Counsel

24  and any Plaintiffs' service awards granted by the Court.  (Settlement § I.V.A)

25  **A.     Payments to Settlement Class Members**

26  The entirety of the Net Distributable Funds—*i.e.*, the $12 million Settlement Fund, less:

27  Administrative Costs, Court-awarded attorneys' fees and expenses for Settlement Class Counsel,

28  and any Plaintiffs' service awards—will be distributed to the Settlement Class.

All approximately 750,000 Settlement Class accounts that exceeded AT&T's data threshold before AT&T adopted CAT (called "Group A Accounts") will automatically be issued a "Group A Payment" without the need to submit a claim.  And every Settlement Class account that exceeded AT&T's data threshold after AT&T adopted CAT (called "Group B Accounts") will be eligible to submit a simple claim form (electronically via the Settlement Website or by mail) to receive a "Group B Payment."  Accounts that are in both Groups A and B are eligible for both payments. (Settlement § IV.C)[5]

The reason claims are required for the Group B period is that, under the CAT iteration of AT&T's policy (adopted in 2014/2015), customers exceeding AT&T's data threshold may (or may not) have been throttled.  Specifically, as discussed above, during CAT, AT&T "deprioritized" customers' data usage if and when they crossed the data threshold, but only actually throttled (*i.e.*, slowed) those customers if and when they both had exceeded the threshold *and* were located in a congested area during a congested time.  AT&T's records for the CAT period reflect which accounts exceeded the threshold, but not which were actually throttled.  Accordingly, Group B accounts must submit a simple claim form, attesting (by checking a box) that they believe their data was slowed at least once in 2014 or later, to receive a Group B Payment.  No claim is needed for the Group A period; under AT&T's pre-CAT policy, all customers exceeding the threshold were throttled.

The settlement payment amounts for Group A and Group B will be calculated pursuant to an allocation formula set forth in the Settlement, at a ratio of 3:4.  (Settlement § IV.C.1&3).[6] Based on estimated Administrative Costs, and assuming the Court awarded attorneys' fees and expenses equal to 25% of the common fund, Plaintiffs estimate the Group A Payment amount will be approximately $10.00-$11.00, and the Group B Payment amount will be approximately $13.00-$14.00.[7]  The Group A Payments will be *on top of* payments received by Settlement Class

---

[5] There are approximately 1,635,000 total Settlement Class accounts, including approximately 750,000 Group A accounts and approximately 1,350,000 Group B accounts, with an overlap of approximately 465,000 accounts that are in both Groups.

[6] The 3:4 ratio is set via the Initial Payment amounts ($7.50:$10.00) for the two Groups, which are then adjusted *pro rata* under the payment allocation formula.  (Settlement § IV.C.1&3)

[7] Settlement Class accounts in both Groups are eligible for both payments; *i.e.*, if such Settlement Class Members submit valid Group B claims, they would get an estimated total payment of approximately $23.00-$25.00.

1    Members in the FTC Action.[8]

2           Payments to Settlement Class Members who are current AT&T customers will be via

3    automatic credit to their AT&T accounts.  Payments to former AT&T customers will be via mailed

4    check, with appropriate steps taken to locate updated address information and re-issue checks that

5    are returned undeliverable.  (Settlement § IV.C.4)

6           Any residual funds remaining one year after checks are initially mailed—consisting of

7    uncashed or undeliverable checks—will be treated as unclaimed property of the corresponding

8    customers, subject to applicable state unclaimed property procedures.  (Settlement § IV.C.5)[9]  In no

9    event will any funds revert to AT&T.

10          **B.    Administrative Costs**

11          The fees and costs of the Settlement Administrator—in implementing the notice program,

12   administering the Group B claims process, mailing checks, and performing the other administrative

13   tasks described in the Settlement—will be paid from the Settlement Fund.  (Settlement § IV.A)

14          The proposed Settlement Administrator, Angeion Group, was selected through a

15   competitive bidding process.  Proposed Settlement Class Counsel received and analyzed bids from

16   four (4) very experienced administrators as part of this process.  Heller Decl., ¶ 17.  Angeion Group

17   is a well-known administration firm that has successfully administrated numerous class settlements

18   and judgments.  Weisbrot Decl., ¶¶ 2-9.  Angeion Group estimates that the Administrative Costs in

19   this case will be approximately $462,000.  *Id.*, ¶ 21.  Plaintiffs believe such amount is reasonable

20   given the class size, the availability of contact information for the Settlement Class, and in light of

---

21   [8] The FTC Action and stipulated judgment therein addressed only pre-CAT (*i.e.*, Group A)
22   throttling. FTC Action, Dkt. 202 at 4 n.3. Under the FTC judgment, most payment recipients
     received approximately $12.00, with a smaller portion receiving approximately $31.00. FTC
     Action, Dkt. 192, 202.
23   [9] Any additional administrative costs associated with this residual process will be paid from the
     residual funds, and will reduce *pro rata* the respective unclaimed property amounts for the
24   Settlement Class Members with uncashed or undeliverable checks. (Settlement § IV.C.5) The
     unclaimed property process and timing vary by state. In California, where most Settlement Class
25   Members are expected to reside, following a "dormancy period," during which the funds would be
     claimable from the Settlement Administrator, and after a "due diligence" notice is sent to the
26   individuals in question, the funds that remain unclaimed, along with the corresponding names,
     payment amounts, and last known addresses, would be sent to the California State Controller's
27   Office for deposit in the State's general fund. At that point, the Settlement Class Members in
     question will still be able to claim the funds by following the state unclaimed property procedure;
28   in California, there is no time limit for submitting such claims (*i.e.*, the funds would be available to
     claim in perpetuity). *See* Cal. Code Civ. Proc. §§ 1501.5, 1531; https://ucpi.sco.ca.gov/UCP/#.

- 7 -

1    the total Settlement Fund amount (i.e., $12 million).

2           **C.     Attorneys' Fees, Expenses, and Service Awards**

3           Settlement Class Counsel will apply to the Court for an award of reasonable attorneys' fees

4    and reimbursement of litigation expenses in a total amount not to exceed $3 million (*i.e.*, 25% of

5    the Settlement Fund).  Settlement Class Counsel will also apply for services awards of up to $2,500

6    for each Plaintiff, to compensate them for their efforts and commitment on behalf of the Settlement

7    Class.  Settlement Class Counsel's fee application will be filed no later than 15 days after the Notice

8    Date (*i.e.*, at least 45 days before the Exclusion/Objection Deadline).  Any attorneys' fees,

9    expenses, and service awards granted by the Court will be paid from the Settlement Fund.

10   (Settlement §§ IV.A, XI.C&H)

11   **III.    Notice Program**

12          The parties' proposed notice program is set forth in Section VI of the Settlement, and

13   consists of the following:

14          **A.     Direct Notice to Settlement Class Members**

15          Notice will be sent directly to all Settlement Class Members, through a combination of

16   email, first-class mail, and SMS (text message).  No later than fourteen (14) days after entry of the

17   Preliminary Approval Order, AT&T will provide the Settlement Administrator with the Settlement

18   Class Member contact information and other Customer Data.  (Settlement §§ II.10, VI.1)  The

19   Settlement Administrator and AT&T will use that information to send notice, as described below.

20   There are three variations of each form of direct notice, for Settlement Class accounts that are in

21   Group A only, Group B only, and both Groups, respectively.

22          *Email Notice:*  By no later than 45 days after entry of the Preliminary Approval Order (the

23   "Notice Date"), the Settlement Administrator will email the appropriate form of email notice to

24   every Settlement Class account for which an email address is included in the Customer Data.  The

25   proposed forms of the email notice are attached as Ex. A-C to the Settlement.  (Settlement § VI.2)[10]

26          *SMS Notice:*  By no later than the Notice Date, AT&T will send, via text message, the SMS

27   notice to the AT&T cellular telephone number(s) for each Settlement Class account for which

28   _____
     [10] Email Notice A is for accounts in Group A only.  Email Notice B is for accounts in Group B
     only.  Email Notice C is for accounts that are in both Groups A and B.

AT&T's Customer Data identifies that both: (1) the account is a current AT&T account and (2) no accountholders for the account have opted out of receiving such messages.  Settlement Class Members will receive both email and SMS notice if they meet the criteria for both.

The proposed form of the SMS notice is attached as Ex. H to the Settlement.  Each SMS notice will include a hyperlink to the substance of the corresponding email notice.[11]  SMS notice recipients will not be charged for such messages.  By no later than three days after sending the SMS notices, AT&T will send the Settlement Administrator a list of Settlement Class accounts that were successfully sent an SMS notice.  (Settlement § VI.3)

*Mail Notice:*  Postcard notice will be sent, via first class U.S. mail, postage pre-paid, to Settlement Class accounts that do not receive email notice and/or SMS notice.  The Settlement Administrator will use the mailing addresses in the Customer Data, as updated through the National Change of Address Database.  The proposed forms of the postcard notice are attached as Ex. D-F to the Settlement.[12]  The Settlement Administrator will promptly re-mail any postcard notices returned undeliverable with forwarding address information to the new address.  For postcard notices returned undeliverable without forwarding address information, the Settlement Administrator will attempt an industry standard "skip trace" to identify updated address information and if successful will re-mail postcard notices to the new address.  (Settlement § IV.4)

**B.  Settlement Website and Toll-Free Number**

In addition, at least one day before any direct notices are sent, the Settlement Administrator will establish a Settlement Website (www.ATTUnlimitedDataSettlement.com), where Settlement Class Members can view the Settlement, a long-form Website Notice (substantially in the form attached as Ex. G to the Settlement), and other key case documents, and obtain further information about the Settlement and their rights.  Settlement Class Members will also be able to submit claims for Group B payments electronically via the Settlement Website.  The Settlement Website will be optimized for display on mobile phones.  The Settlement Administrator will also establish a Toll-Free Number where Settlement Class Members can obtain additional information and request that a

---

[11]  For example, for accounts that are in Group A only, the hyperlink in their SMS notice will link to the substance of Email Notice A.

[12]  Postcard Notice A is for accounts in Group A only.  Postcard Notice B is for accounts in Group B only.  Postcard Notice C is for accounts that are in both Groups A and B.

hard copy claim form be mailed to them.  The Settlement Website and Toll-Free number will be operational until at least one year after settlement payment checks are mailed.  (Settlement § VI.5-6)

## C.    CAFA Notice

Within ten days of the filing of this motion, AT&T (or the Settlement Administrator at AT&T's direction) will serve a notice of the proposed Settlement, in accordance with 28 U.S.C. § 1715, upon the appropriate State and Federal officials.  (Settlement § VI.7)

## D.    Claims Process for Group B Payments

Settlement Class Members with Group B Accounts (*i.e.*, accounts that exceeded the data threshold after AT&T adopted CAT in 2014/2015) may submit claims for Group B Payments, by submitting a claim form by the Claim Deadline (*i.e.*, within 90 days after the Notice Date).  Claims may be submitted electronically via the Settlement Website, or by mail.  The claim form is simple, requiring that the claimant check a box attesting they believe their AT&T data usage was slowed one or more times in 2014 or later.  (Settlement §§ II.7, IV.C.2; Ex. I (Claim Form))

The direct notices sent to Settlement Class Members will be specifically tailored such that, based on the particular recipient, the notice will identify whether that recipient needs to submit a claim to receive a payment (accounts in Group B only),[13] needs to submit a claim to receive the full payment amount for which they are eligible (accounts that are in both Groups A and B),[14] or does not need to submit a claim to get the full payment for which they are eligible (accounts in Group A only).[15]  The email/SMS notices for Settlement Class Members eligible to submit claims will include hyperlinks to the Settlement Website where they can submit claims, and the mailed notices will prominently list the URL for the Settlement Website where they can submit claims.  The notices will also include unique Personal ID numbers to help facilitate submitting claims.  (Settlement §§ IV.C.2; Ex. B-C, E-F, I)

## E.    Opt-Out and Objection Procedures

Any person within the Settlement Class definition may request to be excluded from the

---

[13] Settlement Ex. B, E.
[14] Settlement Ex. C, F.
[15] Settlement Ex. A, D.

Settlement Class by sending a signed request, including their contact information and stating their desire to be excluded, to the Settlement Administrator, postmarked or delivered by the deadline stated in the Notice.[16]  Any Settlement Class Member who does not submit a timely and valid exclusion request may object to the Settlement, Settlement Class Counsel's application for attorneys' fees and expenses, and/or the request for service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to the Settlement Administrator, must be filed/postmarked by the deadline stated in the Notice, and must include the information proscribed by the Website Notice.  The parties propose that the deadline for exclusion requests and objections (the "Exclusion/Objection Deadline") be set sixty (60) days after the Notice Date.  (Settlement §§ VII, VIII)

## IV.    Release

In exchange for the consideration provided under the Settlement, Settlement Class Members will release AT&T and its affiliates from any claims about the issues in this case.  The scope of the release substantively tracks the scope of the operative SAC.[17]  (Settlement § IX)

## ARGUMENT

## I.    Overview of the Class Settlement Approval Process

Pursuant to Rule 23(e), a class action settlement must be approved by the court before it can become effective.  The process for court approval is comprised of two principal steps:

(1)    Preliminary approval of the proposed settlement and direction of notice to the class; and

(2)    A final approval hearing, at which argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

By this motion, Plaintiffs respectfully ask the Court to take the first step and enter an order preliminarily approving the Settlement and directing class notice, pursuant to the parties' proposed notice program, under Rule 23(e)(1).

---

[16] Settlement Class Members cannot request exclusion as a class or group.  Any request for exclusion from a Settlement Class Member that is a co-accountholder must be signed by all co-accountholder on that account.  (Settlement § VII.A)
[17] *See* Settlement § IX.B (claims "arising from or relating to AT&T's advertising or promises of 'unlimited data' for wireless data plans or the throttling or suspension of data usage for AT&T 'unlimited' wireless data plans"); Dkt. 190 (SAC).

- 11 -

1

**II.      The Proposed Settlement Meets the Standards for Preliminary Approval**

2

        In evaluating a motion for preliminary settlement approval, the court conducts a preliminary

3

assessment of the factors that will be evaluated at the final approval stage.  Fed. R. Civ. P. 23(e)(1).

4

Those factors include whether: (1) the class representatives and class counsel have adequately

5

represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief

6

provided is adequate under pertinent case circumstances; and (4) the settlement treats class

7

members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  The ultimate touchstone for the

8

analysis is whether the proposed settlement is "fair, reasonable, and adequate."  *Id.*

9

        In evaluating settlement approval, the Court should consider the strong public policy

10

favoring "settlements, particularly where complex class action litigation is concerned."  *In re*

11

*Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. Gen.*

12

*Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  "[T]he decision to approve or reject a settlement is

13

committed to the sound discretion of the trial judge because [they are] exposed to the litigants and

14

their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

15

1998).  The Settlement here readily meets all standards for preliminary settlement approval.

16

        **A.      The Settlement is the Product of Good Faith, Informed, Arm's-Length**
               **Negotiations (Fed. R. Civ. P. 23(e)(2)(B))**

17

        "Before approving a class action settlement, the district court must reach a reasoned

18

judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

19

among, the negotiating parties."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir.

20

1992); *see also* Fed. R. Civ. P. 23(e)(2)(B).  The Settlement submitted for the Court's consideration

21

here is the product of hard-fought, arms-length negotiations between the parties and their qualified

22

and informed counsel.  The parties participated in two full-day mediations with an experienced and

23

well-respected mediator, Cathy Yanni, Esq. of JAMS, and were able to reach an agreement on deal

24

terms through those efforts.  Over the past few months, the parties have been working diligently to

25

draft the written settlement agreement, prepare the forms of notice and other settlement exhibits,

26

and select a proposed Settlement Administrator through a competitive bidding process.  Heller

27

Decl., ¶¶ 16-17.  Throughout their negotiations, the parties were represented by counsel

28

1    experienced in the prosecution, defense, and settlement of complex class actions.[18]

2          Moreover, as discussed above, the Settlement is informed by counsel's substantial

3    investigation and discovery regarding the legal and factual issues in the litigation, which included

4    reviewing, *inter alia*, hundreds of thousands of pages of documents produced by AT&T and

5    deposition transcripts from the FTC Action.  *See supra* Background §§ I-II.  Further, as the Court is

6    aware, there was significant motion practice in this case, including several arbitration-related

7    motions in this Court, two appeals to the Ninth Circuit regarding arbitration, and AT&T's motion to

8    dismiss, as well as the proceedings in the related FTC Action.  In negotiating the Settlement, the

9    parties and their counsel were informed by their work in briefing these issues and, of course, by the

10   various court rulings.

### B.    Plaintiffs and Settlement Class Counsel Have and Continue to Zealously Represent the Class (Fed. R. Civ. P. 23(e)(2)(A))

          Plaintiffs and proposed Settlement Class Counsel have prosecuted this action on behalf of

     the Settlement Class with vigor and dedication for more than five years, in this Court and through

     two rounds of appeals.  *See* Fed. R. Civ. P. 23(e)(2)(A).  As discussed above and in the attached

     declarations, Settlement Class Counsel have thoroughly investigated and researched the factual and

     legal issues involved, conducted substantial discovery, and engaged in motions and appellate

     practice in furtherance of prosecuting the claims here.  *See supra* Background §§ I-II.  Likewise,

     Plaintiffs have personally been actively engaged—they each provided information about their

     experiences and their AT&T accounts for inclusion in the complaints and other filings, reviewed

     pleadings, and communicated regularly with counsel up to and including evaluating and approving

     the proposed Settlement.[19]

### C.    The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation (Fed. R. Civ. P. 23(e)(2)(C))

          The Settlement provides substantial monetary relief—a $12 million non-reversionary fund,

     which AT&T will pay on top of (*i.e.*, in addition to) the payments Settlement Class Members

     received pursuant to the stipulated judgment in the FTC Action.  Based on estimated Administrative

---

[18] Heller Decl., ¶¶ 3-7; Hattis Decl., ¶¶ 4-6; Yanchunis  Decl., ¶¶ 5-12; Martin Decl., ¶¶ 5-10 ; Artrip Decl., ¶¶ 3-6; Schmidt Decl., ¶¶ 3-6.
[19] Roberts Decl., ¶¶ 5-11; A. Chewey Decl., ¶¶ 5-11; K. Chewey Decl., ¶¶ 5-11.

PLAINTIFFS' MEM. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS SETTLEMENT CASE NO. 3:15-CV-03418-EMC

Costs ($462,000) and assuming the Court awarded attorneys' fees and expenses equal to 25% of the common fund, Plaintiffs estimate that the Group A Payment (automatically issued to all Group A accounts) will be approximately $10.00-$11.00, and the Group B Payment (issued to all Group B Valid Claimants) will be approximately $13.00-$14.00.[20]   These amounts represent a strong result given, *inter alia*, the potential recovery, the partial payments already received by Settlement Class Members via the FTC Action judgment, and the substantial risks and delay of ongoing litigation in this case.

With respect to <u>Group A,</u> to put the estimated $10.00-$11.00 payment in perspective:  the average monthly cost of an AT&T unlimited data plan was approximately $30.00.  The approximate average number of throttled monthly billing periods per Group A account (*i.e.*, across all lines on the account, for those accounts where at least one line exceeded the threshold at least once pre-CAT) was approximately 7.5 monthly billing periods.  At $30.00 per month, the full cost of data service for 7.5 monthly billing periods is approximately $225.00.

It is unlikely, however, that Plaintiffs and the class could recover that much, even assuming Plaintiffs were to overcome the numerous remaining pre-trial obstacles, prevail at trial, and survive an inevitable further appeal.  AT&T would have arguments for significantly reducing that amount.  Some of the throttling occurred after the (generally two-year) contract period in which the accounts were throttled for the first time.  AT&T will argue that any possible damages would, at the least, be cut off after the first contract period during which the customer was throttled, because the customer was then "on notice" and could have discontinued their service plan.  Even assuming as much as one-half of the throttling (i.e., 3.75 monthly billing periods) occurred during the first contract period in which the customers were first throttled, this argument if successful would reduce the estimated average damages to about $112.50 per Group A account.  AT&T will also argue that, even in the monthly billing periods that customers were throttled, they got some of what they paid for—*i.e.*, data service for the part of the period before they were throttled.  Plaintiffs understand that

---

[20] The payment amounts will depend in part on the claims rate for Group B claims.  Claims rates can vary based on a number of factors.  This Settlement is only partially claims-based, since the approximately 750,000 accounts in Group A will automatically be issued Group A Payments.  With respect to Group B claims, Plaintiffs are assuming an approximately 3% Group B claims rate for purposes of estimating the payment amounts here.

throttling typically occurred towards the latter part of the monthly billing period (*i.e.*, after the account exceeded the data threshold for the period).  Even if it were assumed that on average customers were throttled beginning in the *middle* of the monthly billing period, this argument if successful would cut in half the amount for any one-period's throttling—resulting in estimated average damages, under the above assumptions, of approximately $56.25 per Group A account.

Further, as the Court is aware, Group A accounts previously received partial payments for the pre-CAT throttling they incurred, via the FTC Action stipulated judgment.  Most of those payments were $12.00 (though a smaller portion got $31.00).[21]  Applying the $12.00 payments as an offset here—which no doubt would have occurred if this case were litigated to trial—estimated damages, using the above assumptions, would be reduced to approximately $44.25 per Group A account.  The estimated $10.00-$11.00 Group A Payment amount represents approximately 22.6%-24.9% of that figure.

With respect to Group B, the average damages would likely be somewhat lower, because throttling under CAT—when it occurred—was not automatic and was temporary (*i.e.*, only if and during such times the customer had both exceeded the data threshold for that billing period and the corresponding cellular cite was experiencing congestion).  Estimating Group B damages is admittedly more difficult given, *inter alia*, limitations in AT&T's data.   However, the average number of Group B account monthly billing periods where the line exceeded the data usage threshold during CAT and thus was deprioritized (i.e., subject to *potential* throttling under CAT) was approximately 15 monthly billing periods (across all lines on the account, for those accounts where at least one line exceeded the threshold at least once during CAT).  While AT&T's CAT-period data does not identify which Group B accounts were actually throttled and when, even if it were assumed that *all* of the lines in question were throttled at some point in *every* monthly billing period they exceeded the data threshold, and even using a likely aggressively high assumption that throttling for these lines occurred for 10% of the time during monthly billing periods in question (*i.e.*, arguably taking away 10% of the value of the data service that month),[22] the estimated

---

[21] FTC Action, Dkt. 192, 202.

[22] This 10% assumption is very likely high.  Not all geographic areas experienced significant or regular congestion periods.  Even where there was congestion in an area (one pre-requisite to being throttled under CAT), AT&T has represented that these periods of congestion, even in such areas,

1  damages per throttled Group B account would be approximately $45.00.[23]  The estimated $13.00-

2  $14.00 Group B Payment amount represents approximately 28.9%-31.1% of that figure.

3      To be sure, the above figures are estimates, and there are multiple ways to measure potential

4  damages in this case,[24] but the above calculations provide useful perspective on the value and

5  adequacy of the payment amounts and the Settlement in this case.  The payment amounts represent

6  a strong result for the Settlement Class, particularly given the substantial risks, costs, and delay of

7  continued litigation.  Liability remains very much disputed in this case.  Among other arguments

8  and defenses that AT&T has asserted and/or indicated it will assert are: (a) Settlement Class

9  Members' purchase decisions were not motivated by, or exclusively by, the representations about

10  unlimited data; (b) AT&T adequately discloses the data usage limits in its marketing and elsewhere;

11  (c) customers' data usage was slowed, but not cut off, even during throttling; and (d) AT&T's form

12  terms of service permitted the conduct at issue.  AT&T also disputes whether this case can be

13  manageably tried on a class basis, and has made clear its intention to argue that the judgment in the

14  FTC Action renders class treatment, for purposes other than settlement, not superior.   Further,

15  while Plaintiffs were able to overcome AT&T's efforts to compel arbitration, AT&T has made clear

16  its intent to re-raise arbitration if *McGill* were ever invalidated.

17      While Plaintiffs believe that they can overcome AT&T's defenses and challenges, they are

18  indicative of the risks, hurdles, and delays that Plaintiffs and the Settlement Class face should this

19  matter proceed in litigation.  The proposed Settlement provides considerable monetary relief for the

20  Settlement Class while allowing them to avoid the risks of unfavorable, and in some cases

21  dispositive, rulings on these and other issues.

22      The Settlement also provides prompt relief, of particular importance here given that this

23  case was filed more than five years ago.  Continued litigation would likely add several more years

24  were generally no more than about two hours per day.  And, again, customers would only have been
subjected to this potential slowing under CAT after they crossed the data threshold for the monthly
25  billing period, which would not have occurred until some point into the monthly billing period, not
from the start of the period.
26  [23] $30.00/mo. cost X 15 billing cycles = $450.00.  $450.00 X 10% lost value = $45.00.
[24] For example, in the FTC Action (which involved pre-CAT only) it was estimated that the total
27  payments there represented between 32-47% of the potential recovery.  FTC Action, Dkt. 192 at 4.
Under that approach/measure, the estimated $10.00-$11.00 Group A Payments here would push the
28  total received by these Settlement Class Members for their pre-CAT throttling (inclusive of the FTC
Action payments) well above that range.

- 16 -

PLAINTIFFS' MEM. IN SUPPORT OF MOT.
FOR PRELIM. APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:15-CV-03418-EMC

1   before there is a resolution, given the remaining issues and likelihood of additional appeals.

2         The N.D. Cal. Guidelines for class settlements advise that parties seeking preliminary

3   settlement approval should include certain information about a prior settlement in a similar case, for

4   comparative purposes.  Plaintiffs submit that a reasonable comparator case here is *In re Tracfone*

5   *Unlimited Serv. Plan Litig.*, N.D. Cal., Case No. 13-cv-03440-EMC , which this Court presided

6   over and which involved similar allegations regarding marketing of unlimited data plans and data

7   throttling.  Attached as Exhibit C to the accompanying Heller Decl. is a chart comparing the

8   proposed Settlement here and the settlement approved in the *Tracfone* case.  There are some

9   differences between the two cases that should be noted.

10        <u>First</u>, the structure of the payment allocation in *Tracfone* was somewhat different, primarily

11   because some class members there had their service not just throttled, but suspended or terminated

12   entirely, leading the parties there to include separate payment levels for victims of throttling,

13   suspension, and termination, respectively.  <u>Second</u>, while both settlements are *partially* claims-

14   based, in *Tracfone* the partial claims process was utilized mainly because while defendant there

15   knew which accounts were impacted, it lacked name/contact information for a large portion of the

16   class.  Here, the partial claims process is being used, for Group B, because AT&T's records do not

17   indicate which customers exceeding the data threshold under CAT were actually throttled.  <u>Third</u>

18   and relatedly, supplemental notice methods (internet and media-based notice) were utilized in

19   *Tracfone* where the lack of name/contact information rendered direct notice impossible for a large

20   portion of the class there.  Here, direct notice will be sent for all Settlement Class accounts.

21        <u>Fourth</u>, the *Tracfone* settlement—which was negotiated and entered into in conjunction with

22   a settlement between Tracfone and the FTC in a related action[25]—included practice change

23   provisions, which provisions were in substantial part utilized by AT&T and the FTC for the

24   injunctive provisions of their consent judgment in the FTC Action (regarding AT&T).

25   **D.**    **The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)**

26        The proposed allocation of settlement payments (Settlement § IV.C.1&3) was chosen by the

27   parties to ensure that Settlement Class Members are treated equitably.  All accounts subject to

28

---

[25] N.D. Cal. Case No. 3:15-cv-00392-EMC.

- 17 -

1   throttling pre-CAT (*i.e.*, Group A accounts) will receive equal Group A Payments without the need

2   to submit a claim.  All accounts that exceeded the data threshold under CAT (*i.e.*, Group B

3   accounts) are all eligible to submit claims for equal Group B Payments.  Accounts that are in both

4   Groups are eligible for both payments.

5          Requiring Group B accounts to submit claims makes sense because, unlike with Group A

6   and AT&T's pre-CAT policy, exceeding the data usage threshold under CAT does not mean the

7   customer was necessarily throttled.  AT&T's data does not reflect which Group B accounts were

8   actually throttled.  (Settlement § I.I)  Accordingly, Group B accounts must submit a simple claim

9   form indicating (by checking a box) their belief that they incurred data slowing one or more times

10   in 2014 or later.[26]  The claims process and claim form are simple and user-friendly.  Claims can be

11   submitted electronically via the Settlement Website, or by mail, and the individually-tailored direct

12   notices will include the URL and hyperlinks to the Settlement Website where claims can be

13   submitted, as well as unique Personal ID numbers, to facilitate submitting claims.   (Settlement §

14   IV.C.2; Ex. B-C, E-F, I)

15          The payment amounts are equitable as well.  Under the proposed allocation, it is estimated

16   that Group A accounts will ultimately receive a *total* of approximately $22.00-$23.00 for their pre-

17   CAT throttling—including both the estimated $10.00-$11.00 Group A Payment via this Settlement

18   and the mostly $12.00 payments previously received via the FTC Action—and Group B Valid

19   Claimants will receive approximately $13.00-$14.00.  This allocation/proportion is reasonable and

20   appropriate given, *inter alia*, the pre-CAT throttling (Group A) was somewhat more severe than

21   under CAT (Group B), as the throttling under CAT was during congested periods/areas only,

22   whereas the throttling pre-CAT was for the remainder of the monthly billing period.

23          **E.      The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P.
              23(e)(2)(C)(ii))**

24
25          The Settlement provides for an efficient and effective distribution of settlement payments.

26   Payments to current customers will be via automatic account credits to their AT&T accounts.

27   Payments to former customers will be via mailed checks, with appropriate steps taken to find

28   updated address information and re-mail undeliverable checks as needed.  (Settlement § IV.C.4)

---

[26] AT&T adopted CAT in 2014/2015.  (Settlement § I.I)

1

2

**F.    Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)).**

Settlement Class Counsel will move for an award of reasonable attorneys' fees and

3

reimbursement of their litigation expenses.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Settlement Class

4

Counsel currently anticipate requesting that the Court award a total of 25% of the common

5

Settlement Fund (*i.e.*, $3 million), to cover both attorneys' fees and expenses.  Settlement Class

6

Counsel will file their fee application, which will provide the supporting basis for their request, at

7

least 45 days in advance of the Exclusion/Objection Deadline, and it will be available on the

8

Settlement Website after it is filed.  As with the payments to Settlement Class Members, any

9

attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund following

10

the Effective Date of the Settlement.  (Settlement § XI.A&E)

11

Based on their preliminary review, Settlement Class Counsel's total combined hours in this

12

case through December 31, 2020 are approximately 4,971 hours, for a total combined lodestar of

13

approximately $2,895,237 during that period.[27]  Settlement Class Counsel's total combined

14

litigation expenses in this case through December 31, 2020 are approximately $62,788.[28]  Based on

15

the above numbers, a fee and expense award equal to 25% of the Settlement Fund, after subtracting

16

the expenses portion, would represent a 1.014 multiplier on Settlement Class Counsels'

17

approximate lodestar through end of 2020.  Settlement Class Counsel will continue to incur time in

18

seeking settlement approval and on implementation efforts should the Settlement be approved, will

19

continue to review their respective records, and will provide updated information regarding the time

20

and expenses for which compensation is sought, and additional detail regarding the work they

21

performed and their expenses, in their fee application.[29]

22

**III.    The Court Should Provisionally Certify the Settlement Class**

23

When a settlement is reached before certification, a court must determine whether to certify

24

the settlement class.  *See, e.g.*, *Manual for Compl. Litig.*, § 21.632 (4th ed. 2014); *Amchem Prods.*,

25

26

[27] Heller Decl., ¶¶ 18-20; Hattis Decl., ¶¶ 8-9; Yanchunis  Decl., ¶¶ 16-17; Martin Decl., ¶¶ 13-14; Artrip Decl., ¶¶ 9-10; Schmidt Decl., ¶¶ 9-11.

27

[28] *Ibid.*

[29] Finally, there are no agreements between the parties other than the Settlement.  *See* Fed. R. Civ. P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement made in connection with the proposal").

28

PLAINTIFFS' MEM. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS SETTLEMENT CASE NO. 3:15-CV-03418-EMC

2109081.8

1   *Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  Class certification is warranted when the

2   requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied.  Certification of

3   the Settlement Class is warranted here.

### A.   The Requirements of Rule 23(a) are Satisfied

#### 1.   Numerosity (Rule 23(a)(1))

6   Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is

7   impracticable." Fed. R. Civ. P. 23(a)(1).  A "class of 41 or more is usually sufficiently numerous."

8   5 *Moore's Federal Practice—Civil* § 23.22 (2016); *see also Hernandez v. Cty. of Monterey*, 305

9   F.R.D. 132, 153 (N.D. Cal. 2015).  Numerosity is easily satisfied here.  According to AT&T's

10  records, the Settlement Class, as defined, includes approximately 1,635,000 accounts.

#### 2.   Commonality (Rule 23(a)(2))

12  Rule 23(a)(2) requires that there be one or more questions common to the class.

13  Commonality "does not turn on the number of common questions, but on their relevance to the

14  factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765

15  F.3d 1161, 1165 (9th Cir. 2014).  "Even a single question of law or fact common to the members of

16  the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

17  369 (2011).  This case raises multiple common questions, including whether AT&T's "unlimited"

18  data representations are material to a reasonable consumer, and whether AT&T's form terms of

19  service permitted the alleged conduct.

#### 3.   Typicality (Rule 23(a)(3))

21  Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive

22  with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754

23  F.3d 657, 685 (9th Cir. 2014) (citation omitted).  "The test of typicality is whether other members

24  have the same or similar injury, whether the action is based on conduct which is not unique to the

25  named plaintiffs and whether other class members have been injured by the same course of

26  conduct." *Hernandez*, 305 F.R.D. at 159.  Plaintiffs' claims and those of the Settlement Class are

27  based on the same course of conduct and the same legal theories.  Moreover, Plaintiff and the

28

PLAINTIFFS' MEM. IN SUPPORT OF MOT.
FOR PRELIM. APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:15-CV-03418-EMC

1   Settlement Class Members all suffered the same type of alleged harm.[30]

2   ### 4.   Adequacy of Representation (Rule 23(a)(4))

3   Rule 23(a)(4)'s adequacy inquiry asks "(1) do the named plaintiffs and their counsel have

4   any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

5   prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688

6   F.3d 1015, 1031 (9th Cir. 2012).  Proposed Settlement Class Counsel have extensive experience

7   litigating and resolving class actions, and are well qualified to represent the Settlement Class.[31]

8   Since filing this case, Settlement Class Counsel have vigorously litigated this action on behalf of the

9   Settlement Class, conducted extensive investigation and discovery, negotiated the proposed

10  Settlement, and have and will continue to fairly and adequately protect the interests of the

11  Settlement Class.[32]  Likewise, Plaintiffs have demonstrated their commitment to the Settlement

12  Class, including by providing pertinent information about their experiences and accounts, regularly

13  communicating with their counsel about the case, and reviewing and approving the proposed

14  Settlement.[33]  Finally, Plaintiffs' and Settlement Class Counsel's interests are aligned with and not

15  antagonistic to the interests of the Settlement Class.  Plaintiffs and Settlement Class Members share

16  an interest in obtaining relief from AT&T for the alleged violations.

17  ### B.   The Requirements of Rule 23(b)(3) Are Satisfied

18  In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

19  be satisfied.  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions

20  of law or fact common to the class members predominate over any questions affecting only

21  individual members, and that a class action is superior to other available methods for fairly and

22  efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

23  "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the

24  case are more prevalent or important than the non-common, aggregation-defeating, individual

25  issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)).  At its

---

26  [30] Plaintiffs were subject to throttling by AT&T both pre-CAT and during CAT.  Dkt. 190 (SAC), ¶¶ 76, 93-94.

27  [31] Heller Decl., ¶¶ 3-7; Hattis Decl., ¶¶ 4-6; Yanchunis  Decl., ¶¶ 5-12; Martin Decl., ¶¶ 5-10 ; Artrip Decl., ¶¶ 3-6; Schmidt Decl., ¶¶ 3-6.

28  [32] *See supra* Background §§ I-II.
[33] Roberts Decl., ¶¶ 5-11; A. Chewey Decl., ¶¶ 5-11; K. Chewey Decl., ¶¶ 5-11.

PLAINTIFFS' MEM. IN SUPPORT OF MOT.
FOR PRELIM. APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:15-CV-03418-EMC

1    core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359,

2    362 (7th Cir. 2012).  The Ninth Circuit favors class treatment of claims stemming from a "common

3    course of conduct," like those alleged in this case.  *See In re First Alliance Mortg. Co.*, 471 F.3d

4    977, 989 (9th Cir. 2006).

5          Common questions predominate.  The Settlement Class Members' claims all arise under the

6    same California laws and the same alleged course of conduct.  The questions that predominate

7    include whether AT&T's "unlimited" data representations are material to a reasonable consumer,

8    whether AT&T's alleged conduct was unfair and/or deceptive, and whether AT&T alleged conduct

9    was permitted by its form terms of service.  Moreover, under the proposed Settlement, there will not

10   need to be a class trial, meaning there are no potential concerns about any individual issues, if any,

11   creating trial inefficiencies.  *See Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for

12   settlement-only class certification, a district court need not inquire whether the case, if tried, would

13   present intractable management problems … for the proposal is that there will be no trial.").

14         Fed. R. Civ. P. 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a

15   class action is "superior to other available methods for fair and efficient adjudication of the

16   controversy."  *Id.* at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175

17   (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the

18   most efficient and effective means of resolving the controversy.").  Class treatment is superior to

19   other methods for the resolution of this case.  Plaintiffs are unaware of any consumers filing

20   individual actions regarding the issues raised in this case, and the size of each Settlement Class

21   Member's individual damages would be dwarfed by the expense of prosecuting an individual case.

22   *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (class action superior where the

23   "risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would

24   individually pursue their claims.") (internal quotation marks omitted).  In all events, Settlement

25   Class Members remain free to exclude themselves if they wish to do so.  Moreover, it would be far

26   more efficient for the Court and the parties to have a single resolution (as with the proposed

27   Settlement here), rather than multiple separate cases about the same issue.

28

**IV.    The Proposed Notice Program Complies with Rule 23 and Due Process.**

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed notice program here (Settlement § VI) meets all applicable standards.  The notice program includes direct notice to all Settlement Class Members, via a combination of email, first class U.S. Mail, and SMS (text message); the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the long-form Website Notice, and other key case documents; and the establishment of a Toll-Free Number where Settlement Class Members can get additional information.  Moreover, the proposed forms of notice (Settlement Ex. A-H) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B).  The direct notices will also be tailored to the particular Settlement Class Members, letting each of them know in clear terms whether they need to submit a claim to receive a payment or the full payment they are eligible for.  The Court should approve the proposed notice program.

**V.    The Court Should Schedule a Fairness Hearing and Related Dates.**

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow Settlement Class Members an opportunity to exclude

themselves or file comments or objections, and hold a Fairness Hearing.  Towards those ends, the

parties propose the following schedule:

| | |
|---|---|
| Last day for AT&T to provide its Customer Data to the Settlement Administrator | **14 days after entry of Preliminary Approval Order** |
| Notice Date | **45 days after entry of Preliminary Approval Order** |
| Last day for Plaintiffs and Settlement Class Counsel to file motion for final approval of the Settlement, and motion for attorneys' fees, expenses and service awards | **15 days after Notice Date** |
| Exclusion/Objection Deadline | **60 days after Notice Date** |
| Last day for the Parties to file any responses to objections, and any replies in support of motion for final approval and/or Settlement Class Counsel's application for attorneys' fees, expenses and service awards | **14 days before Fairness Hearing** |
| Claim Deadline (Group B) | **90 days after Notice Date** |
| Fairness Hearing | **[TBD]** |

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court do the following:

(a)     Grant preliminary approval of the proposed Settlement;

(b)     Certify, for settlement purposes, the Settlement Class as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

(c)     Appoint Plaintiffs as Settlement Class Representatives representing the Settlement Class;

(d)     Appoint Michael W. Sobol and Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP; Daniel M. Hattis of Hattis Law; John A. Yanchunis, Sr. and Jean Sutton Martin of Morgan & Morgan; Alexander H. Schmidt, Esq; and D. Anthony Mastando and Eric J. Artrip of Mastando & Artrip, LLC as Settlement Class Counsel;

(e)     Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

(f)     Approve the proposed process set forth in the Settlement for Settlement Class Members with Group B accounts to submit claims;

(g)     Appoint Angeion Group as Settlement Administrator and direct Angeion Group to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

(h)     Set deadlines for Settlement Class Members to request exclusion from the

Settlement Class and to object to the Settlement, and for Settlement Class Members with Group B Accounts to submit claims;

(i) Stay all non-Settlement-related proceedings in this lawsuit pending final approval of the Settlement; and

(j) Schedule a Fairness Hearing and certain other dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

Dated: January 29, 2021

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Roger N. Heller*

Roger N. Heller (SBN 215348)
Michael W. Sobol (SBN 194857)
Daniel E. Seltz (admitted pro hac vice)
Avery S. Halfon (admitted pro hac vice)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Alexander H. Schmidt, Esq.
Fairways Professional Plaza
5 Professional Circle, Ste. 204
Colts Neck, New Jersey 07722
Telephone: (732) 226-0004

D. Anthony Mastando
Eric J. Artrip
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, AL 35801
Telephone: (256) 532-2222

Daniel M. Hattis (SBN 232141)
HATTIS LAW
Post Office Box 1645
Bellevue, Washington 98009-1645
Telephone: (650) 980-1990
Facsimile: (425) 412-7171

John A. Yanchunis
Jean Martin
MORGAN & MORGAN
201 North Franklin Street
7th Floor
Tampa , Florida 33602
Telephone: (813) 275-5272

*Attorneys for Plaintiffs and the Proposed Class*