Michael W. Sobol (SBN 194857)
msobol@lchb.com
Roger N. Heller (SBN 215348)
rheller@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Settlement Class Counsel*

(additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARCUS A. ROBERTS, KENNETH A. CHEWEY, AND ASHLEY M. CHEWEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 3:15-cv-03418-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND FOR SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     August 19, 2021<br>Time:     1:30 p.m.<br>Judge:  Hon. Edward M. Chen<br>Courtroom:    5 |

TO THE ABOVE-NAMED COURT AND TO THE PARTIES AND THEIR

ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 19, 2021, at 1:30 p.m. at 450 Golden Gate

Avenue, Courtroom 5, 17th Floor, San Francisco, CA, 94102, Plaintiffs Marcus A. Roberts,

Kenneth A. Chewey, and Ashley M. Chewey ("Plaintiffs") will and hereby do move the Court for

an Order:  (a) awarding Settlement Class Counsel[1] attorneys' fees and costs in the total amount of

---

[1] Settlement Class Counsel are those counsel so appointed pursuant to the Court's Preliminary
Approval Order (Dkt. 205, ¶ 9):  Michael W. Sobol and Roger N. Heller of Lieff, Cabraser,

1  $3,000,000—consisting of $2,932,333.98 in attorneys' fees, plus reimbursement of $67,666.02 in

2  litigation expenses; and (b) awarding Plaintiffs service awards of $2,500 each for their commitment

3  and effort on behalf of the Settlement Class; with such attorneys' fees, expenses, and service awards

4  to be paid from the $12 million common Settlement Fund achieved via the proposed Settlement.

5         This motion is based on:  this notice of motion and motion; the accompanying

6  memorandum of points and authorities; the Amended Class Settlement Agreement entered into in

7  this case (Dkt. 204-1) including all exhibits thereto; the papers filed in support of preliminary

8  settlement approval; the Court's Preliminary Approval Order (Dkt. 205); the declarations of

9  Plaintiffs Marcus A. Roberts, Kenneth A. Chewey, and Ashley M. Chewey, of Settlement Class

10  Counsel Roger N. Heller, Alexander H. Schmidt, Eric J. Artrip, Daniel M. Hattis, John A.

11  Yanchunis, and Jean S. Martin, and of Steve Platt of Angeion Group, LLC, filed herewith; the

12  argument of counsel; all papers and records on file in this matter; and such other matters as the

13  Court may consider.

14         As discussed in the accompanying memorandum of points and authorities, the amounts

15  requested are reasonable, appropriate, and justified under applicable standards and the

16  circumstances of this case.

17

18  Dated:  May 28, 2021                    Respectfully submitted,

19                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

20                                          By: */s/ Roger N. Heller*
                                            Roger N. Heller (SBN 215348)
21                                          Michael W. Sobol (SBN 194857)
                                            275 Battery Street, 29th Floor
22                                          San Francisco, CA 94111-3339
                                            Telephone: 415.956.1000
23                                          Facsimile: 415.956.1008

24                                          Alexander H. Schmidt, Esq.
                                            Fairways Professional Plaza
25                                          5 Professional Circle, Ste. 204
                                            Colts Neck, New Jersey 07722
26                                          Telephone: (732) 226-0004

27  _____

28  Heimann & Bernstein, LLP; Daniel M. Hattis of Hattis Law; John A. Yanchunis, Sr. and Jean
Sutton Martin of Morgan & Morgan; Alexander H. Schmidt, Esq; and D. Anthony Mastando and
Eric J. Artrip of Mastando & Artrip, LLC.

D. Anthony Mastando
Eric J. Artrip
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, AL 35801
Telephone: (256) 532-2222

Daniel M. Hattis (SBN 232141)
HATTIS LAW
Post Office Box 1645
Bellevue, Washington 98009-1645
Telephone: (650) 980-1990
Facsimile: (425) 412-7171

John A. Yanchunis
Jean Martin
MORGAN & MORGAN
201 North Franklin Street
7th Floor
Tampa, Florida 33602
Telephone: (813) 275-5272

*Settlement Class Counsel*

Michael W. Sobol (SBN 194857)
msobol@lchb.com
Roger N. Heller (SBN 215348)
rheller@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Proposed Class*

(additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARCUS A. ROBERTS, KENNETH A. CHEWEY, AND ASHLEY M. CHEWEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 3:15-cv-03418-EMC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND FOR SERVICE AWARDS**<br><br>Date:    August 19, 2021<br>Time:    1:30 p.m.<br>Judge:  Hon. Edward M. Chen<br>Courtroom:    5 |

2236271.6

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

I.     The Settlement Represents a Strong Result for the Settlement Class. .............................. 2

II.    Settlement Class Counsel Expended Considerable Time and Resources, and
       Overcame Substantial Challenges, in Achieving the Result Here. .................................... 3

       A.     Initial Investigation and Filing ................................................................................ 3

       B.     Litigation and Discovery .......................................................................................... 4

       C.     Involvement in the FTC Action ................................................................................ 5

       D.     Mediations ................................................................................................................ 5

ARGUMENT .............................................................................................................................. 7

I.     The Requested Fee is Reasonable and Appropriate Under Applicable Standards
       and is Well Justified Under the Circumstances of this Case. ............................................ 7

       A.     The Requested 24.44% Fee Is Less Than the Ninth Circuit "Benchmark"
              and is Reasonable Under the Circumstances. ........................................................... 8

              1.     Settlement Class Counsel Achieved a Strong Result for the
                     Settlement Class. ............................................................................................ 8

              2.     Settlement Class Counsel Assumed Significant Risk in Prosecuting
                     This Case on a Contingency Basis. ................................................................ 9

              3.     Successfully Prosecuting This Matter Required Significant Skill
                     and Effort on the Part of Settlement Class Counsel. ................................... 11

              4.     The Requested Fee Percentage Is in Line with Percentages
                     Approved in Other Cases. ............................................................................ 12

       B.     A Lodestar Cross-Check Further Confirms The Reasonableness of the Fee
              Requested. .............................................................................................................. 13

              1.     The Number of Hours That Settlement Class Counsel Worked is
                     Reasonable. .................................................................................................. 13

              2.     Settlement Class Counsel's Rates are Reasonable. ..................................... 14

              3.     The Requested Fee Here Represents a Negative Multiplier of 0.962,
                     and is Absolutely Reasonable Under the Circumstances. ........................... 15

II.    Settlement Class Counsel's Litigation Expenses are Reasonable and Should Be
       Reimbursed. ..................................................................................................................... 16

III.   The Requested Service Awards Are Reasonable and Justified. ...................................... 16

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

Page

**Cases**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................................ 3

*AT&T Mobility LLC v. McArdle*,
   140 S. Ct. 2827 (2020) ...................................................................................................... 10

*Beaver v. Tarsadia Hotels*,
   No. 11-CV-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) .................. 13

*Bennett v. SimplexGrinnell LP*,
   2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) .................................................................... 9

*Blum v. Stenson*,
   465 U.S. 886 (1984) .......................................................................................................... 14

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................................ 7

*Bostick v. Herbalife Int'l of Am., Inc.*,
   No. CV 13-2488 BRO (SHX), 2015 WL 12731932 (C.D. Cal. May 14, 2015) ................ 13

*Cabrales v. Cty. of L.A.*,
   935 F.2d 1050 (9th Cir. 1991) ............................................................................................. 4

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMX), 2019 WL 5173771(C.D. Cal. Oct. 10, 2019) ................... 10

*DeStefano v. Zynga, Inc.*,
   No. 12-cv-4007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................. 12

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ............................................................................................. 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 15

*Hefler v. Pekoc*,
   802 F. App'x 285 (9th Cir. 2020) ...................................................................................... 11

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................ 11

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................................... 7

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
   No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ................ 9

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................. 7, 8, 9, 16

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403, (C.D. Cal. Jun. 10, 2005) ................................ 10

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) ............................................................................................. 7

*In re Media Vision Tech. Sec. Litig.*,
   913 F.Supp. 1362 (N.D. Cal. 1996) ................................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 9343 (9th Cir. 2015) ......................................................................... 16

*In re TracFone Unlimited Serv. Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................9, 11, 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ....................................................................7, 9, 15

*Indep. Living Ctr. of S. California, Inc. v. Kent*,
  909 F.3d 272 (9th Cir. 2018) ............................................................................ 7

*Jasper v. C.R. England, Inc.*,
  No. CV 08-5266-GW(CWX), 2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) ........... 7

*Lloyd v. Navy Fed. Credit Union*,
  No. 17-CV-1280-BAS-RBB, 2019 WL 2269958 (S.D. Cal. May 28, 2019) ........... 16

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) ....................................................................................... 16

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ................ 13

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ........................................................................... 7

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................................. 7

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................. passim

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................... 15

**Treatises**

5 Newberg on Class Actions § 15:62 (5th ed. 2018) ............................................... 7

Federal Judicial Center, Manual for Complex Litigation,
  § 27.71, p.336 (4th ed. 2004) ............................................................................ 8

1

### **INTRODUCTION**

2    Having prosecuted this case for more than five years, and having achieved a strong result

3    for the Settlement Class[1] via the proposed Settlement, Settlement Class Counsel respectfully move

4    the Court for an award of $2,932,333.98 in attorneys' fees and reimbursement of $67,666.02 in

5    litigation expenses—*i.e.*, for a total of $3 million in fees and expenses.  As discussed herein, the

6    requested amounts are fair, reasonable, and appropriate under applicable standards and the

7    circumstances of this case.

8    The requested fee represents approximately **24.44%** of the $12 million common Settlement

9    Fund achieved—slightly lower than the Ninth Circuit's 25 percent "benchmark"— and is well

10   justified under the circumstances of this case.  Indeed, the result achieved here would not have been

11   possible but for the hard work and dedication of Settlement Class Counsel.  The Settlement here

12   follows years of hard-fought litigation—including in connection with, *inter alia*:  AT&T's motion

13   to compel arbitration; Plaintiffs' appeal to the Ninth Circuit; Plaintiffs' motion for reconsideration

14   following the first appeal; AT&T's appeal to the Ninth Circuit; and AT&T's motion to dismiss on

15   remand following the second appeal—and extensive document discovery and investigative efforts

16   by Settlement Class Counsel.  Settlement Class Counsel also appeared in the related FTC Action to

17   ensure that the Settlement Class Members' claims were not extinguished by the settlement in that

18   case.  The Settlement here also follows two hard-fought mediation sessions before respected

19   mediator Cathy Yanni, Esq. of JAMS, and substantial further work by counsel documenting and

20   negotiating the Settlement, the notices and notice program, and the other settlement exhibits.

21   Settlement Class Counsel took on this litigation, and committed substantial time and

22   resources to these efforts, with no guarantee they would receive any compensation.  They took this

23   case on despite facing numerous challenges and risks, including the daunting challenge of trying to

24   keep this case in court and get class relief in the face of AT&T's arbitration/class waiver arguments.

25   In all, Settlement Class Counsel have devoted more than 5,200 hours to the investigation,

26   discovery, prosecution, and settlement of this litigation, for a total combined lodestar to date of

27   more than $3,048,158.25, with work still to be done in connection with obtaining final settlement

28
---
[1] Capitalized terms not otherwise defined here have the meaning given to them in the Amended Class Action Settlement Agreement (Dkt. 204-1; "Settlement").

approval and implementing the Settlement should the Court approve it.  Under a lodestar-multiplier cross-check, the requested fee represents a negative multiplier of **0.962** (and falling, as more work is performed), which is absolutely reasonable under the circumstances of this case.

Moreover, the litigation expenses for which reimbursement is sought, are reasonable, were necessary for the prosecution of this case, and should be reimbursed.

Finally, Plaintiffs respectfully request that the Court approve service awards of $2,500 for each of them.  The requested amounts are well within the range of service awards granted in this District and are well justified here by the Plaintiffs' commitment and efforts on behalf of the Settlement Class.

## BACKGROUND

**I.      The Settlement Represents a Strong Result for the Settlement Class.**

Under the Settlement presented for the Court's consideration, AT&T will pay $12 million to establish a non-reversionary common Settlement Fund.  From that amount, the entire Net Distributable Funds (i.e., the $12 million fund minus Administrative Costs and any court-awarded attorneys' fees, expenses, and service awards) will be distributed to the Settlement Class.  The approximately 741,501 Settlement Class Member accounts subject to AT&T's pre-CAT throttling practice ("Group A") will receive payments automatically without the need to submit a claim.  All Settlement Class Member accounts that exceeded AT&T's data usage threshold, and were thus subject to *potential* throttling, under CAT ("Group B") are eligible to submit a simple claim for a payment.  Settlement Class accounts that are in both Groups are eligible for both payments.  Current customers will receive their payments via automatic bill credit, and former customers will receive their payments by mailed check.  It is estimated that the Group A payment amount will be approximately $10.00-$11.00, and the Group B payment amount will be approximately $13.00-$14.00.  The Group A payments are on top of the $12.00 (or, in some cases, $31.00) payment those customers already received from the settlement in the FTC Action.  As discussed further in Plaintiffs' accompanying motion for final settlement approval, the expected payment amounts represent an estimated 22.6%-24.9% (Group A) and 28.9%-31.1% (Group B) of potential damages,

respectively.

This is a strong result for the Settlement Class (a California-only class), particularly given, *inter alia*: the prior resolution in the FTC Action; AT&T's numerous merits defenses and anticipated challenge to the manageability of a class trial; the risk that the "*McGill* Rule" could be invalidated; and given the substantial delay that would occur if the litigation proceeded through trial and, if Plaintiffs succeeded at trial, an inevitable further appeal. These risks and challenges are discussed further below and in the accompanying motion for settlement approval.

## II.   Settlement Class Counsel Expended Considerable Time and Resources, and Overcame Substantial Challenges, in Achieving the Result Here.

Settlement Class Counsel are very proud of the result achieved for the Settlement Class in this case. The path to get there was not an easy one.

### A.   Initial Investigation and Filing

This was a risky case from the start. When this case was filed in 2015, AT&T was adamant that all of its customers were required to individually arbitrate any disputes. It is not a stretch to say that, after *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), any class action lawsuit on behalf of AT&T's customers had to be considered a relative long shot. Indeed, it was very much uncertain, from the start and in fact throughout, that this case could ever be successful on a class basis or generate any fee at all. Nevertheless, Settlement Class Counsel agreed to represent the Plaintiffs and endeavored to prosecute this case on behalf of the class entirely on a contingency basis.

Against this backdrop, and to be in a position to file this case, Settlement Class Counsel conducted an extensive investigation into the factual and legal issues involved prior to filing suit (and continuing throughout the course of the litigation). These investigative efforts—reflected in, *inter alia*, Plaintiffs' initial and amended complaints—included speaking with numerous AT&T wireless customers about their experiences, thoroughly investigating and analyzing AT&T's advertising, data management policies, and disclosures, and investigating customer complaints and other pertinent public information. Settlement Class Counsel also extensively researched and analyzed the legal issues regarding the claims pled and AT&T's defenses and potential defenses.

*See* Declaration of Roger N. Heller filed herewith ("Heller Decl."), ¶ 17.

### B.    Litigation and Discovery

As the Court is aware, there has been significant litigation in this case.  AT&T vigorously defended the case from the outset.  Shortly after the case was filed, in 2015, AT&T moved to compel arbitration.  That set off a years-long effort (ultimately successful) to keep Plaintiffs' claims in court and to maintain the possibility of obtaining class relief.  The lengthy arbitration-related phase of the case required substantial commitments of time and resources by Settlement Class Counsel, including with respect to:  AT&T's motion to compel arbitration; conducting arbitration-related discovery; Plaintiffs' motion for reconsideration of the Court's initial order compelling arbitration; Plaintiffs' Rule 1292(b) petition for interlocutory review; briefing and arguing the first appeal to the Ninth Circuit; moving for reconsideration of the arbitration order following remand after the first appeal based on the intervening *McGill* decision; and briefing AT&T's appeal of this Court's reconsideration order.[2]  In furtherance of these efforts, Settlement Class Counsel conducted extensive legal research and analysis, prepared several briefs in this Court and on the two appeals to the Ninth Circuit, and prepared for arguments addressing complex legal issues such as FAA preemption, the applicability of the Petition Clause of the First Amendment,[3] the application of the California Supreme Court's *McGill* decision to the circumstances here, and the interplay between *McGill* and the FAA.  Heller Decl., ¶ 18.

After the Court permitted Plaintiffs to engage in some discovery while AT&T's appeal was pending, Settlement Class Counsel engaged in negotiations with AT&T's counsel regarding the scope of AT&T's document production.  Pursuant to an agreement reached through those negotiations, AT&T produced more than 700,000 pages of pertinent documents and deposition

---

[2] Settlement Class Counsel also opposed AT&T's motion to stay this case pending AT&T's appeal. The Court ultimately denied that motion in part, permitting certain discovery while AT&T's appeal was pending, and thus putting Settlement Class Counsel in a better position to effectively litigate the case once it returned to this Court following that appeal.  Heller Decl., ¶ 19.

[3] While Plaintiffs' Petition Clause argument was not itself successful, raising it and pursuing it via a Rule 1292(b) appeal proved to be critical to the ultimate success in this case, as it was during the appeal on this issue that the California Supreme Court issued the *McGill* decision.  *Cf. Cabrales v. Cty. of L.A.*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war.  Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning.").

testimony from the FTC Action.  Settlement Class Counsel began reviewing and analyzing those materials while AT&T's appeal was pending.  Heller Decl., ¶ 20.

After the Ninth Circuit affirmed this Court's reconsideration order, thus returning the case to this Court, Settlement Class Counsel continued to thoroughly review and analyze the materials AT&T had produced.  The litigation also continued following remand to this Court, with AT&T moving for partial dismissal of Plaintiffs' First Amended Complaint.  Briefing that motion, and preparing for the argument, required a substantial effort by Settlement Class Counsel.  After the Court granted in part and denied in part AT&T's motion to dismiss, Plaintiffs filed their Second Amended Complaint, in which Settlement Class Counsel added additional allegations regarding AT&T's throttling under CAT and other information Settlement Class Counsel learned from, *inter alia*, their review of the AT&T-produced materials.  Heller Decl., ¶ 21.

## C.    Involvement in the FTC Action

In the meantime, in November 2019 in the FTC Action, AT&T and the FTC notified the Court that they had reached a settlement. Settlement Class Counsel here appeared in the FTC Action to ensure the settlement and judgment there would not operate to release any of the Plaintiffs' or putative class members' claims in this case, which AT&T confirmed.  Heller Decl., ¶ 23.

## D.    Mediations

The Settlement here follows not only the extensive litigation, discovery, and investigative efforts summarized above, it is also the product of hard-fought negotiations.  Settlement Class Counsel and AT&T participated in an initial, full-day mediation with Cathy Yanni, Esq. of JAMS on November 6, 2019, while AT&T's appeal was pending.  That first session did not result in a settlement.  On September 15, 2020, the parties engaged in a second full-day session with Ms. Yanni, after the resolution of both AT&T's appeal and AT&T's motion to dismiss.  Preparing for these sessions involved a substantial effort by Settlement Class Counsel, including reviewing and analyzing data regarding the number of affected customers.  At the conclusion of the second session, the parties reached an agreement in principle to resolve this case.  The parties did not

discuss the issue of Settlement Class Counsel's fees and expenses as part of the negotiations (other than that any amount awarded would be paid from the common settlement fund).  After reaching an agreement in principle, the parties worked diligently to draft the written settlement agreement, notices, and other settlement exhibits, and to select the Settlement Administrator through a competitive bidding process.  Heller Decl., ¶ 24.

Settlement Class Counsel then prepared, and argued, the motion for preliminary settlement approval.  During the hearing on that motion, the Court directed the parties to make certain modifications to the forms of class notice and to add an option for Settlement Class Members to opt-out via email.  The Court and parties also discussed possibly adding additional methods of supplemental notice.  Dkt. 203.  Following that hearing, Settlement Class Counsel worked hard—together with AT&T's counsel and the Settlement Administrator—to make the modifications directed by the Court and to add to the class notice program:  (a) reminder email and SMS notices; and (b) a targeted social media notice campaign.  Dkt. 204.  Settlement Class Counsel worked on the various forms and revised forms of the notices, and in preparing the Amended Settlement Agreement and exhibits incorporating the modifications/additions.  Dkt. 204-1; *see also* Heller Decl., ¶ 25.

After the Settlement was filed, Settlement Class Counsel have continued to commit substantial time and resources to notice and other implementation efforts, including with respect to the final forms of notices, the online claim process, and the Settlement Website and Toll-Free Number content; ensuring that notices were timely disseminated in accordance with the Court's Preliminary Approval Order; and, following dissemination of notice, speaking with numerous Settlement Class Members who have contacted Settlement Class Counsel.  Heller Decl., ¶ 26. Settlement Class Counsel also prepared a motion for final settlement approval (filed herewith), and will appear at the upcoming Fairness Hearing.

Settlement Class Counsel's work will continue past the Fairness Hearing should the Settlement be approved, and will not conclude until all payments are made, former customer checks are negotiated, and the Settlement is fully consummated.  Heller Decl., ¶ 27.

- 6 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

I.      **The Requested Fee is Reasonable and Appropriate Under Applicable Standards and is Well Justified Under the Circumstances of this Case.**

A "lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Indep. Living Ctr. of S. California, Inc. v. Kent*, 909 F.3d 272, 284 (9th Cir. 2018).  In deciding whether a requested fee is appropriate, the Court's task is to determine whether such amount is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294-95 n.2 (9th Cir. 1994) (overriding principle is that the fee award be "reasonable under the circumstances").

In common fund cases, courts in this Circuit may use the "percentage-of-the-fund" or the "lodestar-multiplier" method.  *See Wash. Pub. Power*, 19 F.3d at 1296.  Use of the percentage-of-the-fund method in common fund cases is dominant.  *Jasper v. C.R. England, Inc.*, No. CV 08-5266-GW(CWX), 2014 WL 12577426, at *7 (C.D. Cal. Nov. 3, 2014) ("Despite this discretion, use of the percentage method in common fund cases appears to be dominant.") (citing cases).  Indeed, the fairest way to calculate a reasonable fee where, as here, contingency fee litigation has produced common monetary benefits is by awarding class counsel a percentage of the total funds achieved. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  "The percentage-of-recovery method is commonly used in the legal marketplace to determine attorneys' fees in contingency fee cases." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) (citing 5 Newberg on Class Actions § 15:62 (5th ed. 2018)).  Moreover, the percentage method most effectively aligns the incentives of the class members and their counsel, encouraging counsel to focus on maximizing the relief available to the class.  *Id.* (citing Newberg, *supra*, § 15:65); *Vizcaino*, 290 F.3d at 1050 n.5; *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("courts aim to tether the value of an attorneys' fees award to the value of the class recovery").

The requested fee here is reasonable whether the Court uses the percentage-of-the-fund

- 7 -

method, the lodestar-multiplier method, or both.

**A.**     **The Requested 24.44% Fee is Less Than the Ninth Circuit "Benchmark" and is Reasonable Under the Circumstances.**

In the Ninth Circuit, the "benchmark" for a fee award in a common fund case is 25 percent of the fund achieved.  *Vizcaino*, 290 F.3d at 1048-1050.  The fee requested here ($2,932,333.98) represents approximately 24.44% of the $12 million non-reversionary fund—*i.e.*, slightly less than the benchmark—and is well justified under the circumstances of this case.

Courts in the Ninth Circuit consider a number of factors to determine the appropriate percentage to apply under the percentage-of-the-fund method, including:  (1) the results achieved for the class; (2) the risk of litigation given the contingent nature of the fee and expenses advanced by counsel; (3) the skill, experience, and performance of counsel on both sides; and (4) fees awarded in comparable cases.  *See In re Anthem*, 2018 WL 3960068, at *9 (citing *Vizcaino*, 290 F.3d at 1048-50).  These factors support granting the requested fee here.

**1.**     **Settlement Class Counsel Achieved a Strong Result for the Settlement Class.**

The benefit secured for the class is generally considered the most important factor in evaluating the reasonableness of a requested fee.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members").

In total, the $12 million settlement amount in this case represents a strong recovery, particularly given the prior existence of the FTC settlement, which itself provided approximately $12 million in restitution to California consumers.[4]

At the individual payment level, the expected Group A and Group B payment amounts here represent approximately 22.6%-24.9% and 28.9%-31.1% of estimated recoverable damages, respectively.  That too is a strong result, particularly given the considerable risks and delay of continued litigation (discussed in the next section below and in the accompanying motion for

---

[4] AT&T paid $60 million under the FTC settlement.  Those funds were distributed as restitution among affected AT&T customers nationwide.

settlement approval).  *See, e.g.*, *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993,

1002 (N.D. Cal. 2015) ("one-third of the theoretical verdict amount for class members" is "a very

reasonable compromise in this Court's experience"); *In re Anthem*, 2018 WL 3960068, at *10

(approving settlement fund representing 14.5% of projected class recovery).

### 2. Settlement Class Counsel Assumed Significant Risk in Prosecuting This Case on a Contingency Basis.

Courts have long recognized that the public interest is served by rewarding attorneys who

assume representation on a contingent basis with an enhanced fee to compensate them for the risk

that they might be paid nothing at all for their work.  *Wash. Pub. Power*, 19 F.3d at 1299

("Contingent fees that may far exceed the market value of the services if rendered on a non-

contingent basis are accepted in the legal profession as a legitimate way of assuring competent

representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they

win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency

case "by paying them a premium over their normal hourly rates"); *see also In re Aftermarket Auto.

Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *5 (C.D.

Cal. Jan. 10, 2014) ("The financial burden carried by Plaintiffs' counsel in pursuing this complex

case without any assurances of payment militates in favor of awarding the sought fees.  In addition,

while Plaintiffs' counsel seek the standard 25% of the fund, that percentage is also less than the

typically agreed-upon percentages in private contingency fee arrangements.").

Settlement Class Counsel here prosecuted this case for over five years, in this Court and

through two appeals, on a purely contingent basis, agreeing to advance all necessary expenses and

that they would only receive a fee if there was a recovery.[5]  *See Bennett v. SimplexGrinnell LP*,

2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (plaintiffs' counsel's fee should "take into

account the risk of representing these class action Plaintiffs on a contingency basis over a period of

over four years").  Their outlay of resources has been significant, and they expended these resources

despite the very real risk that they may never receive any compensation at all.  As detailed below,

---

[5] Heller Decl., ¶ 41; Declaration of Alexander Schmidt filed herewith ("Schmidt Decl."), ¶ 16; Declaration of Daniel Hattis filed herewith ("Hattis Decl."), ¶ 12; Declaration of Eric Artrip filed herewith ("Artrip Decl."), ¶ 12; Declaration of Jean Martin filed herewith ("Martin Decl."), ¶ 17; Declaration of John Yanchunis filed herewith ("Yanchunis Decl."), ¶ 15.

Settlement Class Counsel have already spent more than 5,200 hours working on this matter. Moreover, Settlement Class Counsel spent this time, and incurred significant expenses, in lieu of spending those resources pursuing other litigation opportunities.[6]  Their devotion to this matter in lieu of other opportunities, and with no guarantee they would receive any payment at all, further supports the requested fee award here.  *See Vizcaino*, 290 F.3d at 1050; *In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. Jun. 10, 2005); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) ("Lead Counsel have invested 1,898.89 hours of work with no compensation [and they did] so while facing the real possibility of no recovery.  This factor also supports the requested fees.").

The risk of non-payment here for Settlement Class Counsel was particularly pronounced given the daunting arbitration jurisprudence landscape they faced.  Overcoming AT&T's arguments for individual arbitration was, to say the least, far from guaranteed (as evidenced by, *inter alia*, AT&T's initial success in compelling arbitration and the fact that keeping the case in court required defending this Court's reconsideration order on appeal).  Even after the Ninth Circuit affirmed this Court's reconsideration order, Plaintiffs faced the ongoing risk that the Supreme Court might invalidate the *McGill* rule.  AT&T itself petitioned for certiorari review in a separate case regarding the *McGill* rule.  *See AT&T Mobility LLC v. McArdle*, 140 S. Ct. 2827 (2020).

Beyond the arbitration issue, Settlement Class Counsel faced multiple formidable other defenses and challenges, including arguments that:  (a) Settlement Class Members' purchase decisions were not motivated by, or exclusively by, the representations about unlimited data; (b) AT&T adequately discloses the data usage limits in its marketing and elsewhere; (c) customers' data usage was slowed, but not cut off, even during throttling; and (d) AT&T's form terms of service permitted the conduct at issue.

The settlement in the FTC Action added additional risk.  Settlement Class Counsel appeared in the FTC Action to ensure that Settlement Class Members' claims would not be extinguished by the judgment there (which AT&T confirmed).  AT&T nevertheless made clear its intention to argue in this case that the judgment in the FTC Action rendered class treatment, for purposes other than

---

[6] Heller Decl., ¶ 40.

settlement, not superior.

And Settlement Class Counsel also knew that, even if Plaintiffs could overcome the numerous hurdles to establishing liability and damages and prevail at trial, that victory "would almost certainly have had to be defended on appeal." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

All of these risk factors, and the fact that Settlement Class Counsel pursued this matter on a contingency basis in the face of those risks, strongly militate in favor of granting the requested fee.

### 3. Successfully Prosecuting This Matter Required Significant Skill and Effort on the Part of Settlement Class Counsel.

The "prosecution and management of a complex . . . class action requires unique legal skills and abilities" that are to be considered when determining a reasonable fee. *In re Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted); *see also Vizcaino*, 290 F.3d at 1048 (the complexity of the issues involved and skill and effort displayed by class counsel are additional factors used in determining the proper fee under the percentage-of-the-fund approach).

Settlement Class Counsel here are experienced litigators who have successfully prosecuted numerous large consumer class actions and other complex matters.[7] That experience includes litigating another class case that involved similar allegations regarding marketing of unlimited data plans and data throttling.[8] Settlement Class Counsel's relevant experience and skill were very important to achieving a strong result for the Settlement Class.

Moreover, investigating, prosecuting, and resolving this action, over more than five years, required considerable commitments of time and resources by Settlement Class Counsel. Among other important tasks, Settlement Class Counsel have done the following:

- Conducted extensive factual investigation and legal research;
- Opposed AT&T's motion to compel arbitration;
- Briefed Plaintiffs' motion for reconsideration of this Court's initial order compelling arbitration;
- Briefed Plaintiffs' motion to certify for interlocutory appeal this Court's amended order

---

[7] Heller Decl., ¶¶ 2-10; Schmidt Decl., ¶¶ 3-6; Hattis Decl., ¶¶ 6-7; Artrip Decl., ¶¶ 3-4, 6-7; Martin Decl., ¶¶ 4-7; Yanchunis Decl. ¶¶ 4-8, 11-12.
[8] *In re TracFone*, 112 F. Supp. 3d 993.

compelling arbitration;

- Briefed and argued Plaintiffs' appeal to the Ninth Circuit;
- Briefed and argued Plaintiffs' motion for reconsideration based on the intervening change of law in *McGill*;
- Opposed AT&T's motion to stay the case pending appeal;
- Briefed AT&T's appeal to the Ninth Circuit;
- Briefed and argued AT&T's motion to dismiss on remand;
- Conducted extensive document discovery, including reviewing hundreds of thousands of pages of documents and deposition testimony produced by AT&T;
- Appeared and filed papers in the FTC Action to ensure that the class members' claims here were not compromised or released;
- Prepared for and participated in two full-day mediation sessions;
- Negotiated the Settlement and drafted the settlement papers and exhibits, and negotiated and worked on the Amended Settlement Agreement and associated modifications, together with AT&T's counsel;
- Worked with the Settlement Administrator and AT&T on implementation of the Notice plan and Settlement (ongoing); and
- Prepared settlement approval papers and argued for approval (ongoing).

Settlement Class Counsel's relevant skills and hard work in this case were critical to the result achieved.

The quality of the opposition Settlement Class Counsel faced should also be considered. *See DeStefano v. Zynga, Inc.*, No. 12-cv-4007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("The quality of opposing counsel is also relevant to the quality and skill that class counsel provided."). At all times in this case, AT&T has been represented by excellent defense counsel who consistently perform at the top of the profession, have significant experience litigating large class and other complex actions, and litigated this case with vigor. This factor further supports the reasonableness of the requested fee.

### 4.     The Requested Fee Percentage Is in Line with Percentages Approved in Other Cases.

The 24.44% fee requested here is well within the range of awards in comparable cases in this Circuit. In fact, it is arguably lower than the norm. As noted above, the requested fee is slightly lower than the Ninth Circuit's 25 percent benchmark in common fund cases. Moreover,

"courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case. In most common fund cases, the award exceeds the benchmark." *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (citing several cases awarding 33%) (internal quotation marks and brackets omitted); *see also, e.g.*, *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHX), 2015 WL 12731932, at *32 (C.D. Cal. May 14, 2015) (awarding 28% fee in case with unfair competition law and false advertising law claims); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *1, *5-6 (N.D. Cal. Aug. 23, 2018) (awarding 28% fee; citing study showing median fee percentage in cases with fund size between $10 million and $15.2 million is 25 percent).

**B.     A Lodestar Cross-Check Further Confirms The Reasonableness of the Fee Requested.**

A court applying the percentage-of-the-fund method may, but is not required to, use the lodestar-multiplier method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").  The requested fee here is reasonable under the lodestar-multiplier method, whether used as a cross-check or otherwise.

**1.     The Number of Hours That Settlement Class Counsel Worked is Reasonable.**

The accompanying counsel declarations set forth the number of hours that Settlement Class Counsel have worked on this case and describe the work performed.  As set forth therein, Settlement Class Counsel and their staffs have already devoted more than 5,200 hours to this litigation, and have a total unadjusted lodestar to date of more than $3,048,158.25.  These amounts do not include the additional time that Settlement Class Counsel will have to spend going forward, *inter alia*, in obtaining final approval of and implementing the Settlement should it be approved.

The number of hours that Settlement Class Counsel have billed is reasonable.  The numerous tasks that Settlement Class Counsel performed are described above and in the

accompanying counsel declarations.[9]  The following chart summarizes the hours spent by the

Settlement Class Counsel firms for which reimbursement is sought, broken down by task category:

| Task Category | Hours (total from all firms) |
|---|---|
| Factual Investigation/Legal Research | 68.7 |
| Complaints | 92.66 |
| Arbitration/Reconsideration Motions (District Court) | 392.64 |
| First Appeal | 654.43 |
| Second Appeal | 151.7 |
| Motion to Dismiss | 169.05 |
| Other Motions/Filings | 239.76 |
| Document Review | 2390.04 |
| Discovery (Other Than Document Review) | 89.01 |
| Court Appearances and Preparation | 381.2 |
| Case Strategy | 60.03 |
| Plaintiff and Class Member Communications | 30.2 |
| Experts/Consultants | 0.7 |
| FTC Case Proceedings | 66.38 |
| Mediation/Settlement | 367.64 |
| Miscellaneous | 57.1 |
| **Total Hours** | **5211.24** |

These tasks were performed for the benefit of the Settlement Class, and contributed to the success

achieved.[10]  Moreover, counsel made every reasonable effort to prevent the duplication of work or

other inefficiencies.[11]

### 2.      Settlement Class Counsel's Rates are Reasonable.

The accompanying declarations also set forth the billing rates used to calculate Settlement

Class Counsel's lodestars, and summarize the experience of the attorney timekeepers who worked

on this litigation.[12]  In assessing the reasonableness of an attorney's hourly rate, courts consider

whether the claimed rate is "in line with those prevailing in the community for similar services by

---

[9]  *See supra* Background § II; Argument § I.A.3; Heller Decl., ¶¶ 28-43, Ex. A; Schmidt Decl., ¶¶ 7-11, 13-14, Ex. 2; Hattis Decl., ¶ 4-5, 8-9, Ex. A; Artrip Decl., ¶¶ 8-11 & attachment; Martin Decl., ¶¶ 8-14; Yanchunis Decl., ¶¶ 9-10.
[10]  It is well established that in moving for fees, counsel is "not required to record in great detail how each minute of his time was expended."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Instead, counsel need only "identify the general subject matter of his time expenditures."  *Id.*  If the Court prefers to review Settlement Class Counsel's detailed time records, Settlement Class Counsel will make them available for *in camera* review.
[11]  Heller Decl., ¶ 30.
[12]  Heller Decl., ¶¶ 5-10, 43-44, Ex. A; Schmidt Decl., ¶¶ 3-6, 10, 13-15, Ex. B; Hattis Decl., ¶¶ 6-10, Ex. A; Artrip Decl., ¶¶ 3-7 & attachment; Martin Decl., ¶¶ 3-7, 15; Yanchunis Decl., ¶¶ 4-9, 11-12.

- 14 -

lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).  It is appropriate to apply each biller's current rates for all hours, regardless of when the work was performed, as a means of compensating for the delay in payment. *Wash. Pub. Power*, 19 F.3d at 1305; *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

Settlement Class Counsel here are experienced, highly regarded members of the bar.  They have brought to this case extensive experience in the area of consumer class actions and complex litigation, including specific experience litigating and settling cases regarding false advertising and telecommunications services, and litigating arbitration-related issues.[13]  Settlement Class Counsel's customary rates, which were used in calculating the lodestar here, are in line with prevailing rates in this District and have been approved by Ninth Circuit courts and other courts.[14]

### 3. The Requested Fee Here Represents a Negative Multiplier of 0.962, and is Absolutely Reasonable Under the Circumstances.

Under the lodestar method, counsel's raw lodestar may be adjusted for purposes of awarding a fee based upon consideration of factors such as: (1) the results obtained, (2) the novelty and complexity of the questions presented, (3) the skill exhibited by counsel, (4) preclusion of other legal work because of counsel's acceptance and prosecution of the case, and (5) risk of nonpayment.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011)).

While the application of these factors here—including the strong result achieved via the Settlement, the difficulty of overcoming AT&T's arbitration and other challenges, and the substantial risk counsel would receive no compensation at all for their efforts—would support a positive multiplier, the fee requested by Settlement Class Counsel actually represents a slightly *negative* multiplier (0.962) on counsel's submitted lodestar.  The amount requested is absolutely reasonable under the circumstances.

---

[13] Heller Decl., ¶¶ 2-10; Schmidt Decl., ¶¶ 3-6; Hattis Decl., ¶¶ 6-7; Artrip Decl., ¶¶ 3-4, 6-7; Martin Decl., ¶¶ 4-7; Yanchunis Decl. ¶¶ 4-8, 11-12.
[14] Heller Decl., ¶ 44; Schmidt Decl., ¶ 15; Hattis Decl., ¶ 10; Martin Decl., ¶ 15.

1

**II.     Settlement Class Counsel's Litigation Expenses are Reasonable and Should Be Reimbursed.**

2

Under established law, Settlement Class Counsel are entitled to reimbursement of the

3

4

expenses they reasonably incurred investigating and prosecuting this matter.  *See Staton*, 327 F.3d

5

at 974; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills*

6

*v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *In re Anthem*, 2018 WL 3960068, at *28-

7

29, *34 (awarding requested expenses on top of 27% fee).

8

To date, Settlement Class Counsel have incurred a total of $67,666.02 in out-of-pocket

9

litigation expenses for which they seek reimbursement.  As detailed in the accompanying

10

declarations,[15] this amount includes costs for mediation, filing fees, legal research, document

11

database expenses, postage, outside copy services, and travel.  These expenses were reasonably

12

necessary for the continued prosecution and resolution of this litigation, and were incurred for the

13

benefit of the Settlement Class with no guarantee that they would be reimbursed.  They are

14

reasonable in amount and the Court should approve their reimbursement.

15

**III.     The Requested Service Awards Are Reasonable and Justified.**

16

In the Ninth Circuit, service awards "that are intended to compensate class representatives

17

for work undertaken on behalf of a class are fairly typical in class actions cases."  *In re Online*

18

*DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).  The three Plaintiffs here

19

respectfully request service awards of $2,500 each, which is well within the range typically

20

awarded in this District.  *See In re TracFone*, 112 F. Supp. 3d at 1010 (awarding $2,500 service

21

awards as "reasonable, especially in light of other cases where similar or larger incentive awards

22

have been awarded to named class plaintiffs"); *Rodman*, 2018 WL 4030558, at *9 ("Several courts

23

in this District have indicated that . . . , as a general matter, $5,000 is a reasonable amount."); *Lloyd*

24

*v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2019 WL 2269958, at *15 (S.D. Cal. May

25

28, 2019) ($5,000 award "presumptively reasonable").

26

The requested service awards here are well justified under the circumstances of this case.

27

Plaintiffs have personally been actively engaged in the litigation—they each provided information

28

[15]  Heller Decl., ¶¶ 45-47, Ex. B; Schmidt Decl., ¶¶ 11, 13; Hattis Decl., ¶ 11; Artrip Decl., attachment; Martin Decl., ¶ 16; Yanchunis Decl., ¶ 14.

2236271.6

about their experiences and their AT&T accounts for inclusion in the complaints and other filings, reviewed pleadings, and communicated regularly with counsel up to and including evaluating and approving the proposed Settlement.[16]

### CONCLUSION

For the foregoing reasons, Plaintiffs and Settlement Class Counsel respectfully request that the Court:  (a) award Settlement Class Counsel attorneys' fees in the amount of $2,932,333.98, plus reimbursement of litigation expenses in the amount of $67,666.02; and (b) award Plaintiffs service award in the amount of $2,500 each for their commitment and efforts on behalf of the Settlement Class; with such attorneys' fees, expenses, and service award to be paid from the $12 million common Settlement Fund.

Dated: May 28, 2021                         Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Roger N. Heller*
    Roger N. Heller (SBN 215348)
    Michael W. Sobol (SBN 194857)
    Daniel E. Seltz (admitted pro hac vice)
    Avery S. Halfon (admitted pro hac vice)
    275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
    Telephone: 415.956.1000
    Facsimile: 415.956.1008

    Alexander H. Schmidt, Esq.
    Fairways Professional Plaza
    5 Professional Circle, Ste. 204
    Colts Neck, New Jersey 07722
    Telephone: (732) 226-0004

    D. Anthony Mastando
    Eric J. Artrip
    MASTANDO & ARTRIP, LLC
    301 Washington St., Suite 302
    Huntsville, AL 35801
    Telephone: (256) 532-2222

    Daniel M. Hattis (SBN 232141)
    HATTIS LAW
    Post Office Box 1645
    Bellevue, Washington 98009-1645

---

[16] Declaration of Marcus A. Roberts filed herewith, ¶¶ 5-10; Declaration of Kenneth A. Chewey filed herewith, ¶¶ 5-10; Declaration of Ashley M. Chewey filed herewith, ¶¶ 5-10.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: (650) 980-1990
Facsimile: (425) 412-7171

John A. Yanchunis
Jean Martin
MORGAN & MORGAN
201 North Franklin Street
7th Floor
Tampa, Florida 33602
Telephone: (813) 275-5272

*Settlement Class Counsel*

- 18 -