1  Michael W. Sobol (SBN 194857)
   msobol@lchb.com
2  Roger N. Heller (SBN 215348)
   rheller@lchb.com
3  LIEFF CABRASER HEIMANN &
   BERNSTEIN LLP
4  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
5  Telephone:  415.956.1000
   Facsimile:  415.956.1008
6
7  *Attorneys for Plaintiffs and the Proposed Class*

8

9                      UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11                           SAN FRANCISCO DIVISION

12

| | |
|---|---|
| MARCUS A. ROBERTS, KENNETH A. CHEWEY, AND ASHLEY M. CHEWEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 3:15-cv-03418-EMC<br><br>**DECLARATION OF ROGER N. HELLER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Date:    August 19, 2021<br>Time:    1:30 p.m.<br>Judge:   Hon. Edward M. Chen<br>Courtroom:   5 |

I, Roger N. Heller, hereby declare and state:

1. I am a member in good standing of the California State Bar. I am a partner at the law firm of Lieff Cabraser Heimann & Bernstein LLP ("LCHB") and one of the attorneys serving as Settlement Class Counsel in this case. I respectfully submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Settlement and Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts set forth in this declaration, and could and would testify competently to them if called upon to do so.

**Background and Experience**

2. LCHB is one of the oldest, largest, most respected, and most successful law firms in the country representing plaintiffs in class actions, and brings to the table a wealth of class action experience. LCHB has been repeatedly recognized over the years as one of the top plaintiffs' law firms in the country, including by The National Law Journal and The American Lawyer. A copy of LCHB's firm resume, which describes the firm's experience in class action and other complex litigation, can be found at www.lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf, and is not attached hereto given its length.

3. Among the firm's other areas of practice, LCHB has served in leadership positions in a wide range of consumer protection class actions. By way of example only:

- LCHB served as Co-Class Counsel and lead trial counsel in *Gutierrez v. Wells Fargo Bank, N.A.*, (N.D. Cal.), a class action alleging unfair practices and false representations by Wells Fargo in connection with its imposition of overdraft charges. In 2016, a $203 million class judgment, which was entered in 2010 following a bench trial, became final.
- LCHB serves on the Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation* (MDL 2036, S.D. Fla.), a Multi-District proceeding involving more than two dozen banks and allegations of unfair practices and false representations in connection with the banks' imposition of overdraft charges. Class settlements totaling hundreds of millions of dollars have been approved by the MDL court to date.
- LCHB served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in

*In re Chase Bank USA, N.A. "Check Loan" Contract Litigation* (MDL No. 2032, N.D. Cal.), a nationwide Multi-District class action alleging that Chase breached its good faith obligation to credit cardholders by modifying the terms of their long-term fixed rate loans. In November 2012, the court granted final approval to a $100 million nationwide settlement that provided direct payments to approximately one million cardholders and injunctive relief.

- LCHB served as Class Counsel in *In re TracFone Unlimited Service Plan Litigation* (N.D. Cal.), a nationwide class action alleging misleading advertisements about "unlimited" mobile data plans. In 2015, the court granted final approval of a class settlement that included a $40 million fund and important practice changes.

- LCHB serves as Co-Class Counsel in *Lusnak v. Bank of America, N.A.*, (C.D. Cal.), a California class action alleging that defendant failed to pay interest on mortgage customers' mortgage escrow balances, as required by state law. In 2020, the court granted final approval of a $35 million settlement providing direct payments to class members.

- LCHB served as Co-Lead Counsel in *In Re Providian Financial Corp. Credit Card Terms Litigation* (MDL No. 1301; and related JCCP proceedings), representing credit card holders who were charged excessive interest and late charges and sold "add on" products and services with promised benefits that were illusory. In November 2001, the court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes to its business practices.

- LCHB served as Co-Class Counsel in *Brazil v. Dell Inc.* (N.D. Cal.), a class action alleging that defendant engaged in false reference price advertising in connection with its online sale of computers. This was the first class action of its kind to receive class certification.

- LCHB served as Class Counsel and Lead Plaintiffs' Counsel in *In re Apple and AT&T iPad Unlimited Data Plan Litigation* (N.D. Cal.), a class action alleging that defendants falsely advertised access to an unlimited data plan for the iPad device. In 2014, the court granted final approval of a settlement whereby class members were able to submit claims for cash payments and for access to an expanded 3G data plan for their iPads.

1  • LCHB served as Class Counsel in *Williamson v. McAfee* (N.D. Cal), a class action alleging that McAfee unfairly charged customers for the automatic-renewal of their anti-virus software and engaged in false reference price advertising. In 2017, the court approved a settlement that provided monetary benefits and injunctive relief.

• LCHB serves as Interim Co-Class Counsel in *In re Arizona Theranos, Inc. Litigation*, (D. Ariz.), a class action alleging that Walgreens and startup company Theranos, Inc. and its top executives committed fraud and battery by prematurely marketing to consumers blood testing services that were still in-development, not ready-for-market, and dangerously unreliable.

• LCHB served as Settlement Class Counsel in *Kline v. The Progressive Corporation* (No. 02-L-6, Illinois Circuit Court, Johnson County), a nationwide class action challenging Progressive Corporation's private passenger automobile insurance sales practices. In 2002, the court approved a settlement valued at approximately $450 million, which included both cash and equitable relief.

4. Over the course of this litigation, multiple attorneys at LCHB have worked on this the prosecution of this case. The following are the primary LCHB attorneys who have worked on this case and their respective backgrounds:

5. <u>Roger N. Heller</u>   I graduated from Columbia University School of Law in 2001, where I was a Senior Editor for the *Columbia Law Review*. From 2001 through 2005, I was a litigation associate at O'Melveny & Myers LLP. From 2005 through 2008, I worked for the non-profit law firm Disability Rights Advocates, where I was a Senior Staff Attorney and worked primarily on prosecuting class actions under federal and state anti-discrimination laws. I joined LCHB in 2008, and became a partner at LCHB in 2011. During my time at LCHB, my practice has focused on consumer protection class actions. I have successfully represented large classes in numerous cases, including cases involving false advertising, telecommunications services, consumer banking, insurance, and credit cards.

6. <u>Michael W. Sobol</u> is a 1989 graduate of Boston University School of Law. He practiced law in Massachusetts from 1989 to 1997. From 1995 through 1997, he was a Lecturer in

Law at Boston University School of Law.  In 1997, he left his partnership in the Boston firm of Shafner, Gilleran & Mortensen, P.C. to move to San Francisco and to LCHB.  Since joining LCHB in 1997, he has represented plaintiffs in numerous consumer protection, privacy, and other class actions, and has been appointed to leadership roles in numerous MDLs and other class actions.  He has been a partner with LCHB since 1999, since 2002 has served as the head of LCHB's Consumer Protection practice group, and since 2016 has served as the head of LCHB's Cybersecurity and Data Privacy practice group.

7.	Nicole D. Sugnet graduated from University of California, Hastings College of the Law in 2006.  Prior to her departure from LCHB in February 2017, she was a partner in LCHB's San Francisco office and represented consumers in cases involving false advertising, bait-and-switch schemes, and bad faith conduct, as well as multiple privacy cases.  Prior to joining LCHB, she was an associate attorney at Green Welling, P.C. in San Francisco.

8.	Philippe Benoit graduated from Boston College Law School in 2007 and received his B.A. from University of California, Los Angeles in 2001.   Mr. Benoit is a Staff Attorney at LCHB, and was previously a contract attorney.

9.	Daniel E. Seltz graduated from New York University School of Law in 2003, where he was Managing Editor of the *Review of Law and Social Change*. From 2003 to 2004, he served as a law clerk to the Honorable John T. Nixon of the Middle District of Tennessee. He joined LCHB in 2004 and has been a partner since 2010. He has represented consumers, investors, municipalities, and businesses in a variety of class actions, including cases involving pharmaceutical marketing, natural gas royalties, foreign exchange fees, and other matters.

10.	Avery S. Halfon graduated *cum laude* from Harvard Law School in 2015, where he was the Editor-in-Chief of the *Harvard Law & Policy Review*.  From 2015 to 2016 he represented plaintiffs in consumer protection actions and other cases at Cohen Milstein Sellers & Toll.  From 2016 to 2017 he served as a Law Clerk to the Honorable Judge Jane Stranch on the U.S. Court of Appeals for the Sixth Circuit. In 2017 he joined LCHB, and since then he has worked as an associate at LCHB on numerous consumer class actions and other plaintiff-side litigation.

**Procedural History of the Case**

11.     Plaintiffs filed this case on July 24, 2015, asserting claims on behalf of themselves and a proposed nationwide class and California subclass.  Plaintiffs alleged, generally, that AT&T advertised wireless data plans as providing "unlimited" data, but applied undisclosed or inadequately disclosed limitations, after which customers' data usage was subject to throttling.  Dkt. 1.  On August 6, 2015, this case was related, pursuant to Civil Local Rule 3-12, to *FTC v. AT&T Mobility LLC*, N.D. Cal., Case No. 14-cv-04785-EMC (the "FTC Action"), and reassigned to this Court.  Dkt. 7.  On September 3, 2015, Plaintiffs filed a First Amended Complaint, adding additional allegations, one additional plaintiff, James Krenn, and a claim on behalf of a proposed Alabama subclass.  Dkt. 11.

12.     On November 2, 2015, AT&T moved to compel arbitration.  Dkt. 25.  The parties conducted arbitration-related discovery and briefed AT&T's motion.  On February 29, 2016, the Court granted AT&T's arbitration motion.  Dkt. 50.  After Plaintiffs moved for leave to seek reconsideration, on April 27, 2016, the Court issued an amended order granting AT&T's arbitration motion.  Dkt. 60 ("Arbitration Order").  On June 27, 2016, the Court granted Plaintiffs' request to certify the Arbitration Order for interlocutory review pursuant to 28 U.S.C. § 1292(b).  Dkt. 69.  On October 20, 2016, the Ninth Circuit granted Plaintiffs permission to appeal the Arbitration Order.  Following full briefing on this first appeal, on December 11, 2017, the Ninth Circuit affirmed the Court's Arbitration Order.  Dkt. 83.

13.     After the mandate issued, on remand Plaintiffs moved for leave to seek reconsideration of the Arbitration Order in light of the California Supreme Court's intervening decision in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).  Following briefing, on March 14, 2018, the Court granted Plaintiffs' motion for reconsideration, denied AT&T's motion to compel arbitration as to the California Plaintiffs (Marcus A. Roberts, Kenneth A. Chewey, and Ashley M. Chewey), and granted AT&T's motion to compel arbitration as to Alabama plaintiff James Krenn.  Dkt. 103 ("Reconsideration Order").

14.     On April 6, 2018, AT&T noticed an appeal of the Reconsideration Order.  On June 22, 2018, the Court granted in part and denied in part AT&T's motion to stay proceedings,

1  permitting the parties to conduct certain discovery while AT&T's appeal was pending. Dkt. 119.

2  The parties engaged in the permitted discovery. Following briefing on AT&T's appeal, on

3  February 18, 2020, the Ninth Circuit affirmed the Court's Reconsideration Order. Dkt. 160.

4      15.    In the meantime, in the FTC Action, AT&T and the FTC notified the Court that

5  they had reached a settlement. Plaintiffs' counsel in this case appeared in the FTC Action to

6  ensure that the settlement and judgment there would not operate to release any of the Plaintiffs' or

7  putative class members' claims in this case, which AT&T confirmed.

8      16.    After the mandate issued following AT&T's appeal, on May 14, 2020, AT&T filed

9  a motion to partially dismiss Plaintiffs' First Amended Complaint. Dkt. 169. Plaintiffs opposed

10  AT&T's motion (Dkt. 182), and AT&T replied (Dkt. 184). On July 2, 2020, the Court held a

11  hearing and granted in part and denied in part AT&T's motion. Dkt. 188. On August 3, 2020,

12  Plaintiffs filed their operative Second Amended Complaint, asserting claims on behalf of

13  themselves and a California class and adding additional allegations including regarding the CAT

14  iteration of AT&T's data management practice. Dkt. 190.

## Settlement Class Counsel's Work in This Case

16      17.    Prior to filing suit in 2015, Settlement Class Counsel conducted an extensive

17  investigation into the factual and legal issues involved. These investigative efforts—which

18  continued through the course of the litigation and are reflected in, *inter alia*, Plaintiffs' initial and

19  amended complaints—have included speaking with numerous AT&T wireless customers about

20  their experiences, thoroughly investigating and analyzing AT&T's advertising, data management

21  policies, and disclosures, and investigating customer complaints and other pertinent public

22  information. Settlement Class Counsel also extensively researched and analyzed the legal issues

23  regarding the claims pled and AT&T's defenses and potential defenses.

24      18.    AT&T vigorously defended the case from the outset. Shortly after this case was

25  filed, in 2015, AT&T moved to compel arbitration. That set off a years' long effort (ultimately

26  successful) to keep Plaintiffs' claims in court and to maintain the possibility of obtaining class

27  relief. The lengthy arbitration-related phase of the case required substantial commitments of time

28  and resources by Settlement Class Counsel, including with respect to: AT&T's motion to compel

1  arbitration; conducting arbitration-related discovery; Plaintiffs' motion for reconsideration of the
2  Court's initial order compelling arbitration; Plaintiffs' Rule 1292(b) petition for interlocutory
3  review; briefing and arguing the first appeal to the Ninth Circuit; moving for reconsideration of
4  the arbitration order following remand after the first appeal based on the intervening *McGill*
5  decision; and briefing AT&T's appeal of this Court's reconsideration order.  In furtherance of
6  these efforts, Settlement Class Counsel conducted extensive legal research and analysis, prepared
7  multiple briefs in this Court and on the two appeals to the Ninth Circuit, and prepared for
8  arguments addressing complex legal issues such as FAA preemption, the applicability of the
9  Petition Clause of the First Amendment, the application of the California Supreme Court's
10 *McGill* decision to the circumstances here, and the interplay between *McGill* and the FAA.

11      19.     Settlement Class Counsel also opposed AT&T's motion to stay this case pending
12 AT&T's appeal.  The Court ultimately denied that motion in part, permitting certain discovery
13 while AT&T's appeal was pending, and thus putting Settlement Class Counsel in a better position
14 to effectively litigate the case once it returned to this Court following that appeal.

15      20.     After the Court permitted Plaintiffs to engage in some discovery while AT&T's
16 appeal was pending, Settlement Class Counsel engaged in negotiations with AT&T's counsel
17 regarding the scope of AT&T's document production.  Pursuant to an agreement reached through
18 those negotiations, AT&T produced more than 700,000 pages of pertinent documents and
19 deposition testimony from the FTC Action.  Settlement Class Counsel began reviewing and
20 analyzing those materials while AT&T's appeal was pending.

21      21.     After the Ninth Circuit affirmed this Court's reconsideration order, thus returning
22 the case to this Court, Settlement Class Counsel continued to thoroughly review and analyze the
23 materials AT&T had produced.  In all, they have reviewed hundreds of thousands of pages of
24 materials produced by AT&T.

25      22.     The litigation also continued following remand to this Court, with AT&T moving
26 for partial dismissal of Plaintiffs' First Amended Complaint.  Briefing that motion, and preparing
27 for the argument, required a substantial effort by Settlement Class Counsel.  After the Court
28 granted in part and denied in part AT&T's motion to dismiss, Plaintiffs filed their Second

Amended Complaint, in which Settlement Class Counsel added additional allegations regarding AT&T's throttling under CAT and other information Settlement Class Counsel learned from, *inter alia*, their review of the AT&T-produced materials.

23. In the meantime, in November 2019 in the FTC Action, AT&T and the FTC notified the Court that they had reached a settlement. Settlement Class Counsel appeared in the FTC Action to ensure that the settlement there would not operate to release any of the Plaintiffs' or putative class members' claims in this case, which AT&T confirmed.

24. On the settlement negotiation front, there were two full-day mediation sessions in this case. Settlement Class Counsel and AT&T participated in an initial, full-day mediation with Cathy Yanni, Esq. of JAMS on November 6, 2019, while AT&T's appeal was pending. That first session did not result in a settlement. On September 15, 2020, the parties engaged in a second full-day session with Ms. Yanni, after the resolution of both AT&T's appeal and AT&T's motion to dismiss. Preparing for these sessions involved a substantial effort by Settlement Class Counsel, including reviewing and analyzing data produced by AT&T regarding the number of affected customers. At the conclusion of the second session, the parties reached an agreement in principle to resolve this case. The parties did not discuss the issue of Settlement Class Counsel's fees and expenses as part of the negotiations (other than that any amount awarded would be paid from the common settlement fund). After reaching an agreement in principle, the parties worked diligently to draft the written settlement agreement, notices, and other settlement exhibits, and to select the Settlement Administrator through a competitive bidding process.

25. Settlement Class Counsel then prepared, and argued, the motion for preliminary settlement approval. During the hearing on that motion, the Court directed the parties to make certain modifications to the forms of class notice and to add an option for Settlement Class Members to opt-out via email. The Court and the parties also discussed possibly adding additional methods of supplemental notice. Following the preliminary approval hearing, Settlement Class Counsel worked hard—together with AT&T's counsel and the Settlement Administrator—to make the modifications directed by the Court and to add to the class notice program: (a) reminder email and SMS notices; and (b) a targeted social media notice campaign.

1  Settlement Class Counsel worked on the various forms and revised forms of the notices, and in
2  preparing the Amended Settlement Agreement and exhibits incorporating the
3  modifications/additions.
4       26.    After the Settlement was filed, Settlement Class Counsel have continued to
5  commit substantial time and effort to notice and other implementation efforts, including with
6  respect to the final forms of notices, the online claim process, and the Settlement Website and
7  Toll-Free Number content; ensuring that notices were timely disseminated in accordance with the
8  Court's Preliminary Approval Order; and, following dissemination of notice, speaking with
9  numerous Settlement Class Members who have contacted Settlement Class Counsel.  Settlement
10 Class Counsel also prepared a motion for final settlement approval (filed herewith), and will
11 appear at the upcoming Fairness Hearing.
12       27.    Moreover, Settlement Class Counsel's work will continue past the Fairness
13 Hearing should the Settlement be approved, and will not conclude until all payments are made,
14 former customer checks are negotiated, and the Settlement is fully consummated.

### **LCHB's Work in This Case**

16       28.    LCHB has played an active and central role in virtually all aspects of this case
17 since it was first filed, including, *inter alia*:  coordinating class counsel's efforts and serving as
18 the primary liaison with defense counsel; conducting pre-filing and ongoing factual investigation
19 and legal research; briefing and helping to brief the various motions in this Court and appellate
20 briefs; drafting pleadings; arguing Plaintiffs' second motion for reconsideration, AT&T's motion
21 to stay, and AT&T's motion to dismiss; appearing at several case management conferences;
22 participating in proceedings in the FTC Action to help protect the interests of Plaintiffs and the
23 class members in this case; conducting negotiations regarding the scope of discovery pending
24 AT&T's appeal; engaging in meet and confer conferences; drafting written discovery requests;
25 reviewing documents and data; conducting arbitration-related discovery; preparing for and
26 participating in the mediation sessions; drafting settlement papers; arguing the motion for
27 preliminary approval, and ongoing work on settlement approval and notice and other
28 implementation efforts in coordination with the Settlement Administrator and AT&T.

2238486.4        - 10 -        DECLARATION OF ROGER N. HELLER
CASE NO. 3:15-cv-03418-EMC

29. The following chart breaks down, by task category, the number of hours that LCHB has spent on this litigation for which LCHB seeks compensation (as of May 20, 2021):[1]

| Task Category | Hours |
|---|---|
| Factual Investigation/Legal Research | 13.80 |
| Complaints | 48.30 |
| Arbitration/Reconsideration Motions (District Court) | 222.10 |
| First Appeal | 65.50 |
| Second Appeal | 119.10 |
| Motion to Dismiss | 111.70 |
| Other Motions/Filings | 187.40 |
| Document Review | 2,165.80 |
| Discovery (Other Than Document Review) | 56.40 |
| Court Appearances and Preparation | 164.40 |
| Case Strategy | 21.10 |
| Plaintiff and Class Member Communications | 12.60 |
| Experts/Consultants | 0.70 |
| FTC Case Proceedings | 52.10 |
| Mediation/Settlement | 265.50 |
| Miscellaneous | 27.50 |
| **Total Hours** | **3,534.00** |

30. With respect to the tasks performed by Settlement Class Counsel in this litigation, reasonable efforts were taken to avoid inefficiencies or duplication of work. Appropriate attorneys and staff were assigned to specific tasks based on their respective experience levels and skills, and work was allocated with clear instruction provided regarding who was responsible for each task.

31. The primary LCHB attorneys who have worked on this case over its more than five year history are myself, Michael W. Sobol, Nicole D. Sugnet, Philippe Benoit, Daniel E. Seltz, and Avery S. Halfon.

32. My primary tasks in this case have included drafting and editing briefs in this Court and on appeal; arguing Plaintiffs' motion for reconsideration following remand after the first appeal; arguing in opposition to AT&T's motion to stay the case pending its appeal; representing Plaintiffs at case management conferences; drafting papers in connection with, and appearing in, the related FTC action; coordinating Settlement Class Counsel's litigation and

---

[1] A breakdown by LCHB timekeeper is attached hereto as **Exhibit A.**

discovery efforts; serving as the primary liaison for Plaintiffs in communicating with AT&T's counsel; mediation and settlement negotiations; preparing settlement papers and exhibits; arguing Plaintiffs' motion for preliminary settlement approval; and working on notice and other settlement implementation efforts.

33. Mr. Sobol's primary tasks in this case have included editing briefs; developing litigation strategy; coordinating Settlement Class Counsel's litigation efforts; and mediation and settlement negotiations.

34. Ms. Sugnet's primary tasks in this case included drafting complaints and drafting briefs and working on argument preparation in connection with AT&T's efforts to compel arbitration and on the related motions and first appeal.

35. Mr. Benoit's primary tasks in this case have included reviewing and analyzing documents, preparing summaries and commentary regarding documents produced by AT&T, and identifying potential deponents.

36. Mr. Seltz's primary tasks in this case have included working on Plaintiffs' opposition to AT&T's motion to dismiss and on settlement negotiations.

37. Mr. Halfon's primary tasks in this case have included researching and working on the opposition to AT&T's appeal and the opposition to AT&T's motion to dismiss, drafting settlement papers and exhibits, drafting settlement approval papers, and working on settlement implementation efforts.

38. In addition, LCHB paralegals Jennifer Rudnick and Eileen Beltran have worked on this case. Their tasks in this case have included assisting with filings and checking the factual and legal materials cited in briefs; speaking with class members; assisting with service of case documents; managing LCHB's case file; and preparing case materials including for argument preparation.

39. LCHB litigation support specialists Margie Calangian and Anthony Grant also worked on this case. Their primary tasks included maintaining Plaintiff's electronic document database for this case and assisting co-counsel in conducting searches of the database.

2238486.4                                  - 12 -                   DECLARATION OF ROGER N. HELLER
                                                                 CASE NO. 3:15-cv-03418-EMC

**LCHB's Time and Expenses**

40. During the time that this litigation has been pending, LCHB has spent considerable time working on this litigation that could have been spent on other matters. Throughout the litigation, the active prosecution of this matter has consumed a significant percentage of my billable time that could otherwise have been spent on other fee-generating work. In addition to a substantial percentage of my time, this litigation has also required considerable work by other lawyers, paralegals, and staff at LCHB that could have otherwise been spent on other fee-generating work.

41. The time that LCHB has spent on this litigation has been completely contingent on the outcome. LCHB has not been paid for any of its time spent on this litigation, nor has it been reimbursed for any of its expenses incurred in this litigation.

42. In connection with this litigation, the attorney and staff timekeepers at LCHB have billed more than **3,534** hours (through May 20, 2021), for a total lodestar of more than **$1,843,035.50** during that period. This information is derived directly from LCHB's time records, which are prepared contemporaneously and maintained by LCHB in the ordinary course of business. In reviewing its time records, LCHB exercised billing discretion to remove all timekeepers who worked fewer than 10 hours on this matter and several other entries. None of this excluded time is included in the above numbers, nor is the additional time that LCHB will have to spend working on this matter, including in connection with seeking final approval of the Settlement or on implementation efforts should the Settlement be approved.

43. Attached hereto as **Exhibit A** is a summary listing each timekeeper for which LCHB is seeking compensation for legal services in connection with this litigation, the hours each individual has expended as of May 20, 2021, and the hourly rate at which compensation is sought for each individual. For any individuals who have left the employ of LCHB, the hourly rate at the time when their employment concluded is used. For individuals who are still employed by LCHB, their current hourly rate is used.

44. LCHB's customary rates, which were used for purposes of calculating the lodestar here, have repeatedly been approved by federal courts in this District and throughout the country.

1  *See, e.g.*, *Campbell et al. v. Facebook, Inc.*, No. 13-05996, Dkt. No. 253 (N.D. Cal. Aug, 18,
2  2017) (approving LCHB rates); *Allagas v. BP Solar Int'l, Inc.*, 2016 WL 9114162, at *2 (N.D.
3  Cal. Dec. 22, 2016) (awarding requested fees after lodestar crosscheck, and concluding that the
4  firm's "hourly rates, used to calculate the lodestar here, are in line with prevailing rates in this
5  District and have recently been approved by federal and state courts"); *Perkins v. LinkedIn Corp.*,
6  2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (approving LCHB rates); *In re High-Tech*
7  *Employee Antitrust Litig.*, No. 11-02509, Dkt. No. 1112 (N.D. Cal. Sept. 2, 2015) (approving
8  LCHB rates); *Nwabueze v. AT&T Inc.*, 2014 WL 324262, at *2 (N.D. Cal. Jan. 29, 2014) ("[T]he
9  Court also finds that the rates requested are within the range of reasonable hourly rates for
10 contingency litigation approved in this District."); *Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS
11 47986 (N.D. Cal. Apr. 4, 2012); *In re Bank of America Credit Protection Marketing & Sales*
12 *Practices Litig.*, No. 11-md-2269 THE (Dkt. 96) (N.D. Cal. Jan. 16, 2013); *Walsh v. Kindred*
13 *Healthcare*, 2013 U.S. Dist. LEXIS 176319, at *9 (N.D. Cal. Dec. 16, 2013) ("The Court
14 concludes Plaintiffs have shown that the requested rates are reasonable"); *Steinfeld v. Discover*
15 *Financial Services*, No. 3:12-cv-01118-JSW, Dkt. No. 98 (N.D. Cal. Mar. 31, 2014); *Holloway v.*
16 *Best Buy Co., Inc.*, No. C-05-5056 PJH (MEJ), Dkt. 382 (N.D. Cal. Nov. 9, 2011) (Hamilton, J.)
17 ("The rates used by Class Counsel are reasonable."); *In re: Toyota Motor Corp. Unintended*
18 *Acceleration Marketing, Sales Practices, and Products Liability Litig.*, No. 10-ml-02151, Dkt.
19 No. 3933 (C.D. Cal. June 24, 2013) (awarding requested fees and finding that "[c]lass counsel's
20 experience, reputation, and skill, as well as the complexity of the case" justified billing rates);
21 *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *13-14 (S.D. Ill. Dec.
22 16, 2018); *In re: Whirlpool Corp. Front–loading Washer Prods. Liab. Litig.*, No. 08-65000, 2016
23 WL 5338012, at *25 (N.D. Ohio Sept. 23, 2016); *Composite Co, Inc. v. Am. Int'l Grp., Inc.*, No.
24 1:13-cv-10491, Dkt. 157, at 7 (D. Mass Apr. 21, 2016); *In re Bank of N.Y. Mellon Corp. Forex*
25 *Transactions Litig.*, No. 1:14-cv-05496, Dkt. 98 (S.D.N.Y. Sept. 24, 2015); *In re Ocwen Federal*
26 *Bank FSB Mortgage Serv. Litig.*, No. 04-C-2714, Dkt. No. 476 (N.D. Ill. July 1, 2011); *Yarger v.*
27 *Capital One, N.A.*, No. 11-154, Dkt. No. 259 (D. Del. Oct. 7, 2014); *Lonardo v. Travelers Indem.*
28 *Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio Mar. 31, 2010).

45. LCHB also has incurred **$41,877.34** in un-reimbursed expenses that were necessarily incurred in connection with the prosecution and resolution of this litigation. Attached hereto as **Exhibit B** is a breakdown of the expenses for which LCHB seeks reimbursement in this matter.

46. The foregoing expenses were incurred solely in connection with this litigation and are reflected in LCHB's books and records as maintained in the ordinary course of business. These books and records are prepared from invoices, receipts, expense vouchers, check records and other records, and are an accurate record of the expenses incurred in this case.

47. The above expense numbers do not include certain internal costs that LCHB incurred but for which LCHB does not seek reimbursement, including costs for telephone, in-house printing, and copies.

### The Settlement is Fair, Reasonable, and Adequate

48. Based on my experience and knowledge about the facts and issues in this case, I believe that the Settlement reached in this litigation represents a fair, reasonable, and adequate result for, and is in the best interests of, the Settlement Class Members.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Rafael, California, this 27th day of May, 2021.

Exhibit A

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

From Inception
To 05/20/2021

**Matter Number: 3737-0001 ROBERTS V AT&T MOBILITY**

**ATTORNEYS**

| NAME | HOURS | RATE | TOTAL |
|---|---:|---:|---:|
| MICHAEL SOBOL | 153.40 | 1,000.00 | 153,400.00 |
| ROGER HELLER | 674.80 | 775.00 | 522,970.00 |
| DANIEL SELTZ | 37.90 | 730.00 | 27,667.00 |
| NICOLE DIANE SUGNET | 158.80 | 510.00 | 80,988.00 |
| AVERY HALFON | 258.00 | 485.00 | 125,130.00 |
| PHILIPPE BENOIT | 2,131.70 | 415.00 | 884,655.50 |
| | **3,414.60** | | **1,794,810.50** |

**PARALEGALS**

| NAME | HOURS | RATE | TOTAL |
|---|---:|---:|---:|
| EILEEN BELTRAN | 18.40 | 375.00 | 6,900.00 |
| JENNIFER RUDNICK | 73.00 | 405.00 | 29,565.00 |
| | **91.40** | | **36,465.00** |

**LITIGATION SUPPORT SPECIALISTS**

| NAME | HOURS | RATE | TOTAL |
|---|---:|---:|---:|
| MARGIE CALANGIAN | 16.10 | 420.00 | 6,762.00 |
| ANTHONY GRANT | 11.90 | 420.00 | 4,998.00 |
| | **28.00** | | **11,760.00** |

| | | | |
|---|---:|---:|---:|
| **MATTER TOTALS** | **3,534.00** | | **1,843,035.50** |

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

|  | From | Inception |
|---|---|---|
|  | To | 05/20/21 |

**3737-0001     ROBERTS V. AT&T MOBILITY - General Matter**

TASK CODES   From Inception to 05/20/21

|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | TOTALS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | Cur. Hrs | Rate | Cur. Lod |
| MICHAEL SOBOL | 1.60 | 7.00 | 34.40 | 10.30 | 6.00 | 5.90 | 15.30 | 0.30 | 5.10 | 9.90 | 7.30 |  |  | 9.20 | 39.60 | 1.50 | 153.40 | 1,000.00 | 153,400.00 |
| EILEEN BELTRAN |  |  |  | 14.50 |  |  |  |  |  |  |  | 0.40 |  |  |  | 3.50 | 18.40 | 375.00 | 6,900.00 |
| PHILIPPE BENOIT |  |  |  |  |  |  |  | 2,131.70 |  |  |  |  |  |  |  |  | 2,131.70 | 415.00 | 884,655.50 |
| MARGIE CALANGIAN |  |  |  |  |  |  |  | 16.10 |  |  |  |  |  |  |  |  | 16.10 | 420.00 | 6,762.00 |
| ANTHONY GRANT |  |  |  |  |  |  |  | 11.90 |  |  |  |  |  |  |  |  | 11.90 | 420.00 | 4,998.00 |
| AVERY HALFON | 4.40 | 0.30 | 56.10 |  | 69.10 | 39.50 | 68.60 |  | 3.70 | 0.90 | 0.70 |  |  | 0.40 | 14.20 | 0.10 | 258.00 | 485.00 | 125,130.00 |
| ROGER HELLER | 2.20 | 27.80 | 38.50 | 21.80 | 39.40 | 45.50 | 83.70 | 5.60 | 38.00 | 128.60 | 8.00 | 1.20 |  | 36.60 | 197.90 |  | 674.80 | 775.00 | 522,970.00 |
| JENNIFER RUDNICK | 0.30 | 2.80 | 3.90 | 15.60 | 4.60 | 4.50 | 3.80 | 0.20 | 2.10 |  | 11.00 |  |  |  | 1.80 | 22.40 | 73.00 | 405.00 | 29,565.00 |
| DANIEL SELTZ |  |  |  |  |  | 16.30 | 2.40 |  | 3.10 | 3.00 |  |  |  | 1.10 | 12.00 |  | 37.90 | 730.00 | 27,667.00 |
| NICOLE DIANE SUGNET | 5.30 | 10.40 | 89.20 | 3.30 |  |  | 13.60 |  | 4.40 | 22.00 | 5.10 |  | 0.70 | 4.80 |  |  | 158.80 | 510.00 | 80,988.00 |
| TOTALS: | 13.80 | 48.30 | 222.10 | 65.50 | 119.10 | 111.70 | 187.40 | 2,165.80 | 56.40 | 164.40 | 21.10 | 12.60 | 0.70 | 52.10 | 265.50 | 27.50 | 3,534.00 |  | 1,843,035.50 |

| | |
|---|---|
| 1 | Factual Investigation & Legal Research |
| 2 | Complaints |
| 3 | Arbitration/Reconsideration Motions (District Court) |
| 4 | First Appeal |
| 5 | Second Appeal |
| 6 | Motion to Dismiss |
| 7 | Other Motions/Filings |
| 8 | Document Review |
| 9 | Discovery (Other Than Document Review) |
| 10 | Court Appearances and Preparation |
| 11 | Case Strategy |
| 12 | Plaintff and Class Member Communications |
| 13 | Experts/Consultants |
| 14 | FTC Case Proceedings |
| 15 | Mediation/Settlement |
| 16 | Miscellaneous |

Exhibit B

# LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

From inception to 05/20/21

**ROBERTS V. AT&T MOBILITY - General Matter 3737-0001**

**COSTS INCURRED**

| | **Amount** |
|---|---:|
| Computer Research | $2,108.48 |
| Deposition/Transcripts | $81.70 |
| Electronic Database | $23,490.00 |
| Federal Express/Messenger | $506.06 |
| Filing Fees | $1,141.92 |
| Mediation Expenses | $12,262.50 |
| Outside Copy Service | $64.12 |
| Postage | $15.08 |
| Process Service | $235.47 |
| Travel | $1,972.01 |
| **Total Matter Costs:** | **$41,877.34** |